# EXHIBIT A



**Proskauer>**    Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

July 22, 2022

*By Email*

Shane Seppinni, Esq.
Seppinni LLP
43 West 43rd St., Ste 256
New York, NY 10036

Lloyd B. Chinn
Member of the Firm
d +1.212.969.3341
f 212.969.2900
lchinn@proskauer.com
www.proskauer.com

Re: <u>Everyrealm/Gatsby Frimpong, Kevin Virgil, Kathy Yost, and Teyo Johnson</u>

Dear Mr. Seppinni:

My firm has been retained by Everyrealm ("the Company") in connection with the above-referenced matter. Please direct all future correspondence to my attention.

In response to your July 11, 2022 letter, I first write to inform you that your clients are subject to a binding arbitration agreement, which designates, to the extent permitted by law, the American Arbitration Association as the exclusive forum for resolution of their claims. Accordingly, the reference in your letter to jury awards is misplaced. I have attached the agreements and a recent, published opinion addressing a situation in which a party to an arbitration agreement ignored those obligations.

Second, based upon certain assertions made in your letter, it appears that your clients misappropriated certain confidential business records following their separation from the Company. Everyrealm demands the return of any of its records that were taken by your clients.

Those documents are the Company's property, and neither you nor your clients had or have any right to remove, possess, or retain them. The fact that your clients have asserted claims against the Company and disclosed the documents to their attorney does not excuse their behavior.  *See, e.g.*, *Lipin v. Bender*, 84 N.Y.2d 562, 620 N.Y.S.2d 744 (N.Y. 1994) (affirming dismissal of complaint where plaintiff improperly took adversary's attorney work product to assist in prosecution of her action); *see also JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 697, 702-05 (E.D. Va. 2007) ("[b]y no means can [public] policy fairly be said to authorize a disgruntled employee to pilfer a wheelbarrow full of an employer's proprietary documents in violation of their contract merely because it might help them blow the whistle on an employer's violations of law, real or imagined"); *Haught v. Louis Berkman, LLC*, 417 F. Supp. 2d 777, 780-84 (N.D. W. Va. 2006) (plaintiff's misappropriation of company documents, and dissemination of such items to her attorneys, was not protected activity); *Watkins v. Ford Motor Co.*, 2005 WL 3448036, at *6-9 (S.D. Ohio Dec. 15, 2005) (plaintiff's illegal possession and disclosure of confidential personnel information to counsel was not protected, such protection would open the floodgates to document theft by disgruntled employees, and "[t]he fact that plaintiff purportedly obtained the documents for use in a lawsuit does not excuse his conduct, particularly since plaintiff could have sought that information by securing counsel and going through the proper legal channels"). Moreover, courts nationwide have recognized that conduct is sanctionable where a claimant misappropriates



Shane Seppinni
July 22, 2022
Page 2

privileged documents outside of the context of discovery. *See Xyngular v. Schenkel*, 890 F.3d 868, 872 (10th Cir. 2018) (upholding sanctions where "there was no evidence that Swan had authority to remove the documents, possess them, or give them to third parties."); *Spencer v. Pottstown Sch. Dist.*, 292 F. Supp. 3d 635, 644 (E.D. Pa. 2018) (sanctions warranted where plaintiff copied multiple privileged documents, noting that "even if [defendant] had waived any privilege or protection—which I very much doubt—Plaintiff's remedy was to contest before me [defendant's] privilege or protection claim, not to resort to 'self help' and pilfer the documents themselves."); *Bell v. Lockheed Martin Corp.*, No. CV 08-6292 (RBK/AMD), 2010 WL 11450407, at *5 (D.N.J. June 30, 2010) (granting sanctions where plaintiff took documents from former employer).

Accordingly, your clients have an affirmative duty to return those materials and data to the Company or face sanctions for their conduct. *See, e.g.*, *Herrera v. Clipper Group*, No. 97-cv-560, 1998 U.S. Dist. LEXIS 6454, at *5 (S.D.N.Y. May 6, 1998) (courts "have the power to sanction parties who attempt to use in litigation material improperly obtained outside the discovery process"); *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 324-25 (S.D.N.Y. 1997) (precluding use of wrongfully obtained information as sanction for taking confidential documents without supervisor's permission and later attempting to use information during course of subsequent litigation); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 915 (4th Cir. 1997) ("Zahodnick retained confidential materials belonging to IBM after termination of his employment and forwarded those documents to his counsel without IBM's consent. Under such circumstances, the district court did not err in enjoining Zahodnick from disclosing Lockheed's confidential materials to third parties or in ordering Zahodnick to return all confidential materials to Lockheed. Accordingly, we affirm the district court's order.").

In addition to the foregoing, your clients are contractually prohibited from disclosing and/or disseminating confidential materials outside the scope of their employment. As prescribed in each of your clients' attached employment agreements:

Confidential Information.

(a) Protection of Information. I agree, at all times during the term of the Relationship and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company to the extent necessary to perform my obligations to the Company under the Relationship, and not to disclose to any person, firm, corporation or other entity, without written authorization from the

Company in each instance, any Confidential Information (as defined below) that I obtain, access or create during the term of the Relationship, whether or not during working hours, until such Confidential Information becomes publicly and widely known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved. I further agree not to make copies or disseminate



Shane Seppinni
July 22, 2022
Page 3

copies of such Confidential Information except as authorized by the Company. I agree that I obtain no title to any Confidential Information, and that as between the Company and myself, the Company retains all Confidential Information as the sole property of the Company. I understand that my unauthorized use or disclosure of Confidential Information during the

Relationship may lead to disciplinary action, up to and including immediate termination and legal action by the Company. I understand that my obligations under this Section 3 shall continue after termination of my employment.

(b) Confidential Information. I understand that "Confidential Information" means information and physical material not generally known or available outside the Company or recognized as standard industry practice, and information and physical material entrusted to the Company in confidence by third parties. Confidential Information includes, without limitation: (i) Company Inventions (as defined below); (ii) data, trade secrets, know-how, ideas, concepts, research, reports, interpretations, technology, compositions, devices, designs, software codes, algorithms, developments, inventions, methods or processes, whether or not patented or patentable, strategies, studies, formulas, techniques, engineering designs and drawings, hardware configuration information, lists of, or information relating to, Clients, employees and consultants of the Company (including, but not limited to, the names, contact information, jobs, compensation, and expertise of such employees and consultants), lists of, or information relating to, Clients, suppliers and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the Relationship), the substance of agreements with Clients, suppliers and others, product or service ideas or plans, price lists, pricing methodologies, cost data, market share data, marketing plans and arrangements, strategic partnerships and the existence of the discussions between the parties thereto, licenses, contract information, business plans, financial records and forecasts, historical financial data, budgets, the terms of any investment or financial transaction between the Company and any third party, such other information normally understood to be confidential or otherwise designated as such in writing by the Company, as well as other business information disclosed to me by the Company either directly or indirectly, whether in writing, electronically, orally, or by observation. Confidential Information shall also include any document or information of any Client, supplier or customer of the



Shane Seppinni
July 22, 2022
Page 4

> Company or other person or entity with whom or which the Company has an agreement concerning the confidentiality of information, which comes into my possession as a result of my Relationship with the Company. I understand that nothing in this Agreement is intended to limit employees' rights to discuss the terms, wages, and working conditions of their employment, as protected by applicable law.
>
> (c) Other Rights. This Agreement is intended to supplement, and not to supersede, any rights the Company may have in law or equity with respect to the protection of trade secrets or confidential or proprietary information.

These terms undoubtedly prohibit the disclosure of work-related emails and documents taken during the course of your clients' employment, and mandate an expeditious return of all of the Company's materials.

You also have a duty to return all of the Company's materials and data you received from your clients. *See, e.g.*, *Furnish v. Merlo*, 1994 WL 574137, at *9-10 (D. Or. Aug. 29, 1994) (plaintiff's counsel "should have returned the memo, requested production and an order to compel to challenge the assertion of privilege").

Accordingly, we demand that you and your clients return to the Company, through me, all documents and data in your possession that belong to the Company, **no later than July 29, 2022**.

Of course, merely returning the documents that are improperly in your and your clients' possession will not completely rectify this matter. In addition to returning all of the Company's documents to me, electronic versions of any such documents need to be permanently deleted from any computers or storage devices where they reside. To this end, the Company expressly reserves its right to demand a forensic examination of any computers and storage devices on which its records have been copied sufficient to protect its interests.

Upon completion of these tasks, you and your clients should furnish us with affidavits certifying the return and/or destruction of all such documents and data in your possession.

You will be contacted separately by an investigator retained to examine certain of the assertions advanced in your letter.

Nothing stated herein is intended to be or should be construed as a waiver of any rights or remedies, all of which are hereby expressly reserved.



Shane Seppinni
July 22, 2022
Page 5

Very truly yours,

*/s/ Lloyd B. Chinn*

Lloyd B. Chinn

Attachments

 **Republic Realm**

Date: January 21, 2022

Re: <u>Employment Offer</u>

Dear Katherine Yost,

We have enjoyed getting to know you, and I am pleased to extend to you this offer to join Republic Realm Inc. ("Republic Realm"). You will be reporting to James Goede and be responsible for collaborating with senior leadership to understand the organizations goals and strategy related to staffing, recruiting, and retention; plans, leads, develops, coordinates, and implements policies, processes, training, initiatives, and surveys to support Republic Realm's human resource compliance and strategy needs; oversees the administration of human resource programs including, but not limited to, compensation, benefits, and leave, disciplinary matters, performance and talent management, productivity, recognition, and morale; and such other projects as may be assigned to you from time to time.  Below are additional details regarding your position:

        <u>Title</u>:   Director, Human Resources
        <u>Starting Date</u>: January 31, 2022

Subject to terms described in the enclosed employment agreement letter including vesting and other contingencies, your compensation will be:

        <u>Base Salary</u>:   $140,000 per year
        <u>Additional Compensation</u>:     discretionary year-end minimum bonus of $25,000, right to partake in our employee revenue sharing plan and to receive Republic Realm tokens when issued from time to time
        <u>Benefits</u>:     Standard company benefits
        <u>Offer Expires</u>: 2 weeks from the date of this letter.

We are thrilled that you are considering joining us. If you have any questions I can answer, please do not hesitate to contact me. You may indicate your agreement with the attached terms and accept this offer by reviewing and executing the enclosed employment agreement.

Regards,

/s/Janine Yorio
Janine Yorio, CEO

Version 2022.1

Doc ID: 36ffd7080bb97479df2800fbc66afddd33652bd5



**EMPLOYMENT LETTER AGREEMENT**

January 21, 2022

Dear Katherine Yost:

Republic Realm Inc., a Delaware corporation (the "***Company***"), is pleased to offer you employment with the Company on the terms described below. Please execute this letter agreement (the "***Agreement***"), which includes and incorporates all exhibits hereto to confirm the terms set forth herein and to commence your employment.

1. **Position.**    You will be employed as **Director, Human Resources** on a full-time basis, effective as of January 31, 2022. You agree to devote full-time efforts as an employee of the Company to the responsibilities this Agreement contemplates. You will be reporting to James Goede. By signing this Agreement, you confirm with the Company that you are under no contractual or other legal obligations that would prohibit you from performing your duties with the Company.

2. **Compensation.** Until and unless adjusted in the Company's discretion with advance notice to you, you will receive an annual salary of $140,000 payable in accordance with the Company's standard payroll practices for salaried employees. In addition, you may qualify for a discretionary year-end minimum bonus of $25,000 and shall have the right to partake in our employee revenue sharing plan and to receive Republic Realm tokens when issued.

3. **Benefits.**    You will be entitled to medical, dental, vision, and other benefits standard to Company employees, which are subject to change from time to time at the discretion of the Company.

4. **Employment Relationship**.    Employment with the Company is for no specific period of time.  Your employment with the Company will be "**at will**," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause.  Any contrary representations which may have been made to you are superseded by this Agreement.  This Agreement is the full and complete agreement between you and the Company regarding your Relationship with the Company.  Although your job duties, title, compensation, and benefits, as well as the Company's personnel policies and procedures, may change from time to time, the "at will" nature of your employment may only be changed in an express written agreement signed by you and the Company's Board of Directors.  Once notice of termination has been given, you and the Company agree to continue to execute responsibilities under this Agreement diligently and in good faith. "***Relationship***" is defined as any employment pursuant hereto and consulting or other contracting relationship between the Company and you, whether commenced prior to, upon or after the date of the Agreement.

5. **Primary Place of Work**.    Your primary place of work will be remote or at such other location as the Company may designate by written notice from time to time.

-2-

Doc ID: 36ffd7080bb97479df2800fbc66afddd33652bd5

6.      **Outside Activities**. During the term of your employment, you will not participate in any other business activities without prior written consent from an executive officer of the Company.  While you render services to the Company, you agree to be bound by restrictions on investment, advisory, brokerage and any other outside activities contained in the Company's Confidentiality and Invention Assignment Addendum and such other policies that the Company may adopt in the future. Per the Company's standard employment practices, you will promptly disclose any potential conflicts of interest, outside business activities and private market investments made to the Company.

7.      **Withholding Taxes**. All forms of compensation referred to in this letter are subject to applicable withholdings and payroll taxes.

8.      **Solicitation of Employees, Consultants and Other Parties**.

(a)      *Employees, Consultants*. You agree that during the term of the Relationship and for a period of twelve (12) months immediately following the termination of the Relationship for any reason, whether with or without cause, you shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's or its affiliates' employees or consultants to terminate their relationship with the Company, or attempt to solicit, induce, recruit, encourage or take away employees or consultants of the Company, either for yourself or for any other person or entity.

(b)      *Other Parties*. You agree that during the term of the Relationship and for a period of twelve (12) months immediately following the termination of the Relationship for any reason, whether with or without cause, you shall not use any Confidential Information (as defined in the Confidentiality and Invention Assignment Addendum) of the Company to negatively influence any "***Clients***" from purchasing Company products or services or to solicit or influence or attempt to influence any Clients or other person either directly or indirectly, to direct any purchase of products and/or services to any person, firm, corporation, institution or other entity in competition with the business of the Company.  For purposes of this Agreement, the terms "***Client***" or "***Customer***" means any business, issuer or prospective issuer using the services of the Company or any affiliate of the company to raise capital or otherwise obtain funds, any prospective investor or purchaser of instruments offered by such business, issuer or prospective issuer, or any other vendor, customer or client of the Company or any affiliate of the Company.

(c)      *Use of Confidential Information.* You agree that during the term of the Relationship and for a period of twelve (12) months immediately following the termination of the Relationship for any reason, whether with or without cause, you shall not to use any Confidential Information in any manner not explicitly permitted by the Company.

(d)      *Notification to New Employer.*  In the event that you leave the employ of the Company, you agree that the Company may notify your new employer about your rights and obligations under this Agreement.

9.      **Disparaging Statements**.  Without limitation of time, you shall not make any disparaging statements concerning the Company, its affiliates, their officers, directors, employees, contractors, agents, investors, Clients, marketing partners, finders, products or services that could injure, impair or damage relationships involving the Company, its affiliates or

Doc ID: 36ffd7080bb97479df2800fbc66afddd33652bd5

their officers, directors, employees, contractors, agents, investors, Clients, marketing partners, finders or other business associates.

10.   **No Competition.**     You agree that from the date of this Agreement and during the term of the Relationship, you shall devote your best business efforts to the interests of the Company.

11.   **No Duty to Employ**. You understand that this Agreement does not obligate the Company to employ you or continue the Relationship for any stated period of time.

12.   **Representations and Covenants**.

(a)     *No Conflicts.*  You represent that your performance of all the terms of this Agreement does not and will not breach any agreement you have entered into, or will enter into, with any third party, including without limitation any agreement to keep in confidence proprietary information or materials acquired by you in confidence or in trust prior to or during the Relationship.  You will not disclose to the Company or an affiliate of the Company or use any inventions, confidential or non-public proprietary information or material belonging to any previous client, employer or any other party.  You will not induce the Company or any affiliate of the Company to use any inventions, confidential or non-public proprietary information, or material belonging to any previous client, employer or any other party.  You acknowledge and agree that you have listed on Exhibit C all agreements (*e.g.,* non-competition agreements, non-solicitation of customers agreements, non-solicitation of employees agreements, confidentiality agreements, inventions agreements, etc.), if any, with a current or former client, employer, or any other person or entity, that (i) may restrict your ability to accept employment with the Company or any affiliate of the Company (ii) may restrict your ability to recruit or engage customers or service providers on behalf of the Company or an affiliate of the company, or (iii) may restrict your ability to perform your duties for the Company or any obligation you may have to the Company.  You agree not to enter into any written or oral agreement that conflicts with the provisions of this Agreement.

(b)     *Voluntary Execution.*  You certify and acknowledge that you have carefully read all of the provisions of this Agreement, that you understand and have voluntarily accepted such provisions, and that you will fully and faithfully comply with such provisions.

(c)     *Advice of Counsel.*  YOU ACKNOWLEDGE THAT, IN EXECUTING THIS AGREEMENT, YOU HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT.  THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

(d)     *No Undisclosed Civil and Criminal History.*  YOU ACKNOWLEDGE THAT DUE TO THE COMPANY AND ITS AFFILIATES' REGULATED ACTIVITIES YOU HAVE CONSENTED TO THE COMPANY RUNNING A BACKGROUND CHECK AND IN EXECUTING THIS AGREEMENT, YOU HAVE FULLY AND FAIRLY DISCLOSED ANY CIVIL FINDINGS RELATED TO FRAUD AND ANY CRIMINAL CONVICTIONS YOU MAY HAVE AND AGREE THAT FAILURE TO MAKE SUCH FULL AND FAIR DISCLOSURE AFTER RECEIVING AN OFFER OF EMPLOYMENT BUT PRIOR TO OR CONTEMPORANEOUSLY WITH EXECUTING THIS AGREEMENT WILL CONSTITUTE A BREACH THEREOF.

Version 2022.1

Doc ID: 36ffd7080bb97479df2800fbc66afddd33652bd5

13.    **General Provisions**.

(a)    *Governing Law.*  This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law.

(b)    *Entire Agreement.*  This Agreement sets forth the entire agreement and understanding between the Company and you relating to its subject matter and merges all prior discussions between us.  No amendment to this Agreement will be effective unless in writing signed by both parties to this Agreement.  The Company shall not be deemed to have waived any rights or remedies it may have in law or equity, nor to have given any authorizations or waived any of its rights under this Agreement, unless, and only to the extent, it does so by a specific writing signed by a duly authorized officer of the Company, it being understood that, even if you are an officer of the Company, you will not have authority to give any such authorizations or waivers for the Company without specific approval by the Board of Directors of the Company.  Any subsequent change or changes in your duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.

(c)    *Severability.*  If one or more of the provisions in this Agreement are deemed void or unenforceable to any extent in any context, such provisions shall nevertheless be enforced to the fullest extent allowed by law in that and other contexts, and the validity and force of the remainder of this Agreement shall not be affected.  If any term or provision set forth in Section 8, Section 9, Section 10 or this Section 13 is ruled by a tribunal of competent jurisdiction to be excessively broad as to time, duration, geographical scope, activity or subject, the other provisions of this Agreement shall nevertheless stand and the construction and interpretation of such term or provision shall be deemed to be the longest period and/or greatest size permissible by law under the circumstances, and the parties hereto agree that such court shall reduce the time period and/or geographic scope to permissible duration or size.

(d)    *Successors and Assigns.*  This Agreement will be binding upon your heirs, executors, administrators and other legal representatives, and your successors and assigns, and will be for the benefit of the Company, its successors, and its assigns.  You may not assign your rights or obligations pursuant to this Agreement, except to the extent required by law.

(e)    *Arbitration & Equitable Relief.*

(i)    Arbitration. Except as provided in Section 13(e)(ii) below, you agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in the State of New York, in accordance with the rules then in effect of the American Arbitration Association. The arbitrator shall be final, conclusive, and binding on both the Company and you. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The Company and you shall each pay one-half of the costs and expenses of such arbitration, and each of the Company and you shall separately pay counsel fees and expenses.

(ii)    Equitable Remedies. You agree that it would be impossible or inadequate to measure and calculate the damages from any breach of the covenants set forth in Section 6, Section 8, Section 9 and Section 10 herein. Accordingly, you agree that if you breach

Version 2022.1

Doc ID: 36ffd7080bb97479df2800fbc66afddd33652bd5

any such Sections, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement. You further agree that no bond or security shall be required in obtained such equitable relief and you hereby consent to the issuance of such injunction and to the ordering of specific performance.

(f)     *Counterparts.*   This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and all of which together shall constitute one and the same agreement.  Execution of a facsimile copy will have the same force and effect as execution of an original, and a facsimile signature will be deemed an original and valid signature.

(g)     *Survival.*  Upon the termination of Relationship, the provisions of Section 8, Section 9 and Section 13 and the Confidentiality and Invention Assignment Addendum shall survive.

(h)     *Notices.*  Any notice required or permitted under this Agreement shall be in writing and shall be deemed given upon personal delivery, confirmed facsimile, or confirmed e-mail transmission, one day after being deposited with a nationally recognized carrier assuring overnight delivery, five days after being sent by registered or certified mail, return receipt requested, postage prepaid, and if addressed to the party at the address listed on the signature pages hereto, or to such other address as may from time to time be designated by notice in the manner provided herein.

If you wish to accept this offer, please sign and date the enclosed duplicate original of this Agreement and return it to my attention.  By accepting this offer, you agree to all of the terms of this Agreement including the terms of the Confidentiality and Invention Assignment Addendum.

Very truly yours,

REPUBLIC REALM INC.

By: _____
        Janine Yorio, CEO

ACCEPTED AND AGREED:

_____
Katherine Yost

Version 2022.1

Doc ID: 36ffd7080bb97479df2800fbc66afddd33652bd5

Dated as of the date set forth above

Exhibit A:  Confidentiality and Invention Assignment Addendum

Exhibit B:  List of Prior Developments, Inventions and Original Works of Authorship

Exhibit C:  List of Restrictions

Exhibit D:  Acknowledgements

Version 2022.1

Doc ID: 36ffd7080bb97479df2800fbc66afddd33652bd5

**Exhibit A**

**REPUBLIC REALM INC.**

**CONFIDENTIALITY AND INVENTION ASSIGNMENT ADDENDUM**

Reference is made to the Employment Agreement Letter to which this Confidentiality and Invention Assignment Addendum is attached as <u>Exhibit A</u> (the "***Addendum***" and collectively with the Employment Agreement Letter and all Exhibits thereto, the "***Agreement***"). All terms used but not defined in this Addendum shall have the meaning provided in the Employment Agreement Letter.  The term "I" (and other first-person pronouns such as "me" or "my") as used in this Addendum shall refer to Katherine Yost. As a condition of my becoming retained (or my employment relationship being continued) by Republic Realm Inc., or any of its current or future subsidiaries, affiliates, successors or assigns (collectively, the "***Company***"), and in consideration of my employment relationship with the Company and any future compensation to be paid to me by the Company, I agree to the following:

1.      **Relationship**.

(a)      This Addendum will apply to my employment relationship with the Company and any preceding or subsequent contractual relationship under which I provide services to the Company.  If that relationship ends and the Company, within a year thereafter, either reemploys me or engages me as a consultant or other contractor, I agree that this Agreement will also apply to such later employment or contracting relationship, unless the Company and I otherwise agree in writing.

(b)      The Company and I acknowledge that I may have been engaged to provide services by or on behalf of the Company for a period of time prior to the date of this Agreement (the "***Prior Engagement Period***").  Accordingly, I agree that if and to the extent that, during the Prior Engagement Period: (i) I received access to any information from or on behalf of the Company that would have been "Confidential Information" (as defined below) if I received access to such information during the period of my employment under this Agreement; or (ii) I conceived, created, authored, invented, developed or reduced to practice any item, including any intellectual property rights with respect thereto, that would have been an "Invention" (as defined below) if conceived, created, authored, invented, developed or reduced to practice during the period of my employment under this Agreement; then any such information shall be deemed "Confidential Information" hereunder and any such item shall be deemed an "Invention" hereunder, and this Agreement shall apply to such information or item as if conceived, created, authored, invented, developed or reduced to practice under this Agreement.

2.      **Duties**.  I will perform for the Company such duties as may be designated by the Company from time to time or that are otherwise within the scope of the Relationship and not contrary to instructions from the Company.

3.      **Confidential Information**.

(a)      *Protection of Information*.  I agree, at all times during the term of the Relationship and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company to the extent necessary to perform my obligations to the Company under the

Version 2022.1

Doc ID: 36ffd7080bb97479df2800fbc66afddd33652bd5

Relationship, and not to disclose to any person, firm, corporation or other entity, without written authorization from the Company in each instance, any Confidential Information (as defined below) that I obtain, access or create during the term of the Relationship, whether or not during working hours, until such Confidential Information becomes publicly and widely known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.  I further agree not to make copies or disseminate copies of such Confidential Information except as authorized by the Company.  I agree that I obtain no title to any Confidential Information, and that as between the Company and myself, the Company retains all Confidential Information as the sole property of the Company.  I understand that my unauthorized use or disclosure of Confidential Information during the Relationship may lead to disciplinary action, up to and including immediate termination and legal action by the Company. I understand that my obligations under this <u>Section 3</u> shall continue after termination of my employment.

(b) *Confidential Information.*  I understand that "**Confidential Information**" means information and physical material not generally known or available outside the Company or recognized as standard industry practice, and information and physical material entrusted to the Company in confidence by third parties.  Confidential Information includes, without limitation: (i) Company Inventions (as defined below); (ii) data, trade secrets, know-how, ideas, concepts, research, reports, interpretations, technology, compositions, devices, designs, software codes, algorithms, developments, inventions, methods or processes, whether or not patented or patentable, strategies, studies, formulas, techniques, engineering designs and drawings, hardware configuration information, lists of, or information relating to, Clients, employees and consultants of the Company (including, but not limited to, the names, contact information, jobs, compensation, and expertise of such employees and consultants), lists of, or information relating to, Clients, suppliers and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the Relationship), the substance of agreements with Clients, suppliers and others, product or service ideas or plans, price lists, pricing methodologies, cost data, market share data, marketing plans and arrangements, strategic partnerships and the existence of the discussions between the parties thereto, licenses, contract information, business plans, financial records and forecasts, historical financial data, budgets, the terms of any investment or financial transaction between the Company and any third party, such other information normally understood to be confidential or otherwise designated as such in writing by the Company, as well as other business information disclosed to me by the Company either directly or indirectly, whether in writing, electronically, orally, or by observation. Confidential Information shall also include any document or information of any Client, supplier or customer of the Company or other person or entity with whom or which the Company has an agreement concerning the confidentiality of information, which comes into my possession as a result of my Relationship with the Company.  I understand that nothing in this Agreement is intended to limit employees' rights to discuss the terms, wages, and working conditions of their employment, as protected by applicable law.

(c) *Other Rights.*  This Agreement is intended to supplement, and not to supersede, any rights the Company may have in law or equity with respect to the protection of trade secrets or confidential or proprietary information.

4. **Ownership of Intellectual Property Rights**.

Version 2022.1

Doc ID: 36ffd7080bb97479df2800fbc66afddd33652bd5

(a)      *Inventions Retained and Licensed.* I have attached hereto, as <u>Exhibit B</u>, a complete list describing with particularity all Inventions (as defined below) that, as of the effective date, belong solely to me or belong to me jointly with others, and that relate in any way to any of the Company's proposed businesses, products, or research and development, and which are not assigned to the Company hereunder; or, if no such list is attached, I represent that there are no such Inventions at the time of signing this Agreement.

(b)      *Inventions Defined.* As between the Company and myself, I agree that the Company owns all right, title and interest throughout the world in and to any and all ideas, discoveries, inventions, improvements, developments, concepts, modifications, original works of authorship, designs, product development, marketing and sales plans, Customer lists, research, computer programs and software (including, without limitation, source code and object code), know-how, trade secrets, proprietary information, e-mails, digital messages, documents, data, text, artwork, designs, technology, and any preliminary drafts, sketches, variations or designs thereof, and other information of possible technical or commercial importance, whether or not subject to patent or copyright protection, made, conceived, expressed, written, developed, or actually or constructively reduced to practice by me, solely or jointly with others, whether on or off the Company's premises, whether or not during regular working hours, provided they are developed during the term of the Relationship (including the Prior Engagement Period) and either (i) relate at the time of conception or development to the actual or demonstrably anticipated business or research and development activities of the Company; (ii) result from or relate to any work performed for the Company; or (iii) are developed through the use of Confidential Information and/or Company resources or in consultation with Company personnel (collectively referred to as "***Inventions***").  I understand this includes, but is not limited to, any new product, machine, article of manufacture, method, procedure, process, technique, use, equipment, device, apparatus, system, compound, formulation, composition of matter, design or configuration of any kind, or any improvement thereon.

(c)      *Rights to Inventions.*   I acknowledge that all Inventions that are copyrighted works are "works made for hire" under the U.S. Copyright Act, 17 U.S.C. §101 et seq., and are owned exclusively by the Company upon creation.  With respect to all Inventions, or any portion thereof, that are not construed as "work made for hire" under applicable law, I hereby assign to the Company all right, title and interest, including, without limitation, any copyright, patent or other intellectual property rights, in such Inventions, in perpetuity, in all forms and in all languages and territories throughout the world, effective as of, and from the moment of, its creation or invention without the necessity of any other action by, or consideration from, any of the parties.  I agree that this assignment includes a present conveyance to the Company of ownership of Inventions that are not yet in existence. To the extent that title to any Inventions may not, by operation of law, vest in the Company, I hereby grant to the Company an unrestricted, irrevocable, nonexclusive, worldwide, fully paid, perpetual license in and to the Inventions.  The Company has the exclusive right to use the Inventions, whether original or derivative, for all purposes, including all rights under copyright and the exclusive rights to print, publish and distribute Inventions in any form or medium, whether now known or hereafter created throughout the world, together with the right to make such changes to, and derivative works of, Inventions as the Company deems appropriate.  Any assignment or license of Inventions includes all rights of attribution, paternity, integrity, modification, disclosure and withdrawal, and any other rights throughout the world that may be known as or referred to as "moral rights," "artist's rights," "droit moral," or the like (collectively, "Moral Rights").  To the extent that Moral Rights cannot be

Version 2022.1

Doc ID: 36ffd7080bb97479df2800fbc66afddd33652bd5

assigned under applicable law, I hereby waive and agree not to enforce any and all Moral Rights, including, without limitation, any limitation on subsequent modification, to the extent permitted under applicable law.

(d)     *Cooperation.*  I agree to promptly make full written disclosure to the Company of any Inventions.  During the term of this Agreement and at all times thereafter, I shall, at the Company's expense, assist the Company in every proper way to protect, enforce and perfect the Company's rights and interests in Inventions throughout the world, and to execute all documents required for the protection of all such rights and interests, including, without limitation, patent, copyright, trademark and other applications and assignments relating to Inventions.  I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue during and at all times after the end of the Relationship and until the expiration of the last such intellectual property right to expire in any country of the world.  I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agents and attorneys-in-fact to execute and file any certificates, applications or documents and to do all other lawful acts necessary to obtain and protect the Company's rights in Inventions.  I expressly acknowledge that the foregoing power of attorney is coupled with an interest and is irrevocable and shall survive termination of this Agreement, my death or incompetency.  I hereby waive and irrevocably quitclaim to the Company any and all claims, of any nature whatsoever, that I now have or may hereafter have for infringement of any and all Inventions.

(e)     *Use or Incorporation of Inventions.*  If in the course of the Relationship, I use or incorporate into a product, process or machine any invention not covered by Section 4(a) of this Addendum in which I have an interest, I will promptly so inform the Company.  Whether or not I give such notice, I hereby irrevocably grant to the Company a nonexclusive, fully paid-up, royalty-free, assumable, perpetual, worldwide license, with right to transfer and to sublicense, to practice and exploit such Invention and to make, have made, copy, modify, make derivative works of, use, sell, import, and otherwise distribute under all applicable intellectual properties without restriction of any kind.

(f)     *Exception.*  Subject to the requirements of applicable state law, if any, I understand that the Inventions will not include, and the provisions of Section 4 of this Addendum do not apply to, any invention that qualifies fully for exclusion under the provisions of applicable state law, if any.

(g)     *Maintenance of Records.*  I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of the Relationship.  The records may be in the form of notes, sketches, drawings, flow charts, e-mails, digital messages, electronic data or recordings, laboratory notebooks, or any other format.  The records will be available to and remain the sole property of the Company at all times.  I agree not to remove such records from the Company's place of business except as expressly permitted by Company policy which may, from time to time, be revised at the sole election of the Company for the purpose of furthering the Company's business.  I agree to deliver all such records (including any copies thereof) to the Company at the time of termination of the Relationship pursuant to Section 5 of this Addendum.

5.     **Company Property; Returning Company Documents.**  I acknowledge and agree that I have no expectation of privacy with respect to the Company's telecommunications,

Version 2022.1

Doc ID: 36ffd7080bb97479df2800fbc66afddd33652bd5

networking or information processing systems (including, without limitation, files, e-mail, other digital messages, and voice messages) and that my activity and any files or messages on or using any of those systems may be monitored at any time without notice. I further agree that any property situated on the Company's premises and owned by the Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice.  I agree that, at the time of termination of the Relationship, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, e-mails, digital messages, information, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, laboratory notebooks, materials, flow charts, equipment, other documents or property, or reproductions of any of the aforementioned items developed by me pursuant to the Relationship or otherwise belonging to the Company, its successors or assigns pursuant to such terms as the Company may provide

Version 2022.1

Doc ID: 36ffd7080bb97479df2800fbc66afddd33652bd5

**<u>EXHIBIT B</u>**

**LIST OF PRIOR DEVELOPMENTS, INVENTIONS
AND ORIGINAL WORKS OF AUTHORSHIP
EXCLUDED UNDER SECTION 4(a)**

| Title | Date | Identifying Number or Brief Description |
|-------|------|------------------------------------------|

None

Version 2022.1

Doc ID: 36ffd7080bb97479df2800fbc66afddd33652bd5

**<u>EXHIBIT C</u>**

**LIST OF RESTRICTIONS
(INCLUDING NON-COMPETE,
NON-SOLICIT, INVENTION ASSIGNMENT
AND CONFIDENTIALITY TERMS)**

None

Version 2022.1

Doc ID: 36ffd7080bb97479df2800fbc66afddd33652bd5

**<u>EXHIBIT D</u>**

**ACKNOWLEDGMENTS**


Your employment with the Company in the United States is also contingent upon your (a) acknowledging in writing your receipt and acceptance of the Company's Employee Handbook and the terms set forth therein, (b) acknowledging in writing your receipt and acceptance of the Company's policies and procedures (including Written Supervisory Procedures and equivalencies if applicable) and the terms set forth therein, (c) providing sufficient documentation establishing your employment eligibility in the United States, and (d) completing a background check satisfactory to the Company, such check may be run from time to time during your engagement. By executing this acknowledgement, you also agree to allow the Company to use your likeness in its general marketing material and provided the Company with a limited license to use any imagery you provide to the Company, or that is produced during your time with the Company, for such marketing materials.


ACCEPTED AND AGREED:

_____
Katherine Yost

Version 2022.1

Doc ID: 36ffd7080bb97479df2800fbc66afddd33652bd5

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | Republic Realm - Letter and Employment Agreement for... |
| **FILE NAME** | 2022.01.21_Letter...or Signature].pdf |
| **DOCUMENT ID** | 36ffd7080bb97479df2800fbc66afddd33652bd5 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Signed |

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 21 / 2022**<br>16:03:59 UTC-5 | Sent for signature to Janine Yorio (janine@republicrealm.com) and Katherine Yost (kyost731@gmail.com) from james.goede@republicrealm.com<br>IP: 76.180.153.208 |
| **VIEWED** | **01 / 21 / 2022**<br>16:04:10 UTC-5 | Viewed by Janine Yorio (janine@republicrealm.com)<br>IP: 71.235.159.138 |
| **SIGNED** | **01 / 21 / 2022**<br>16:04:18 UTC-5 | Signed by Janine Yorio (janine@republicrealm.com)<br>IP: 71.235.159.138 |
| **VIEWED** | **01 / 21 / 2022**<br>16:07:52 UTC-5 | Viewed by Katherine Yost (kyost731@gmail.com)<br>IP: 100.18.0.190 |
| **SIGNED** | **01 / 21 / 2022**<br>16:08:20 UTC-5 | Signed by Katherine Yost (kyost731@gmail.com)<br>IP: 100.18.0.190 |
| **COMPLETED** | **01 / 21 / 2022**<br>16:08:20 UTC-5 | The document has been completed. |