# EXHIBIT A



# Contractor Agreement

This Contractor Agreement (the "**Agreement**") is entered into as of December 16, 2021 (the "**Effective Date**") by and between Republic Realm Inc. ("**Realm**" or the "**Company**") and Katherine Yost whose address is set forth in the signature here below ("**Contractor**").  Realm and Contractor are and individually referred to herein as a "**Party**" and collectively, the "**Parties**". In consideration of the mutual promises and covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.  **Services and Personnel**.
    1.1. General.  All services to be performed by Contractor pursuant to this Agreement shall be set forth in one or more statements of work (collectively, the "**Services**"), substantially in the form attached as Schedule No. 1 hereto (each, a "**SOW**"), which shall be signed by each Party prior to the performance of the Services set forth therein.  Each SOW shall set forth a description of (i) Services to be performed, including a project timeline (if applicable), (ii) all fees, costs and expenses to be paid to Contractor in connection with such Services and (iii) any work product or deliverables to be delivered by Contractor in connection with such Services, including a timeline for delivery thereof (if applicable).  Each SOW that is duly executed by both Parties shall become a binding obligation of each Party, enforceable against such Party, and shall be deemed incorporated into, and made an integral part of, this Agreement.  All Services to be performed by Contractor shall be subject to the terms and conditions of this Agreement and in the event of a conflict or inconsistency between a provision of this Agreement and a provision in a SOW, the terms and conditions of this Agreement shall prevail unless such SOW expressly provides otherwise.
    1.2. Change Orders.  In the event that Contractor is requested or required to perform services that are outside the scope of an SOW, such services and a compensation schedule therefore must be set forth in a written change order ("**Change Order**"), which shall be signed by each Party prior to the provision of said services.  The Change Order shall constitute an amendment to the applicable SOW and the services set forth therein shall be deemed to be Services under such SOW.
    1.3. Independent Contractor. Contractor understands and acknowledges that Contractor's relationship with Realm will be that of an independent contractor and nothing contained herein shall be construed to constitute Realm and Contractor as an employer and an employee, partners, joint venturers, co-owners or otherwise as participants in a joint or common undertaking.  Neither Contractor nor, when applicable, any of Contractor's Representatives (as defined in Section 2) has authority to enter into contracts that bind Realm or create obligations on the part of Realm without the prior written authorization of Realm.  Contractor shall not hold himself, herself or itself out as having such authority.



1.4. <u>Contractor Personnel</u>. Any of Contractor's Representatives that perform Services under this Agreement are Representatives solely of Contractor and not of Realm during the Term (as defined below) of this Agreement and shall at all times be directed solely by Contractor.  Contractor will be solely responsible for (i) payment to Contractor's Representatives of all salaries, wages, benefits, fees and other compensation, as well as any reimbursement amounts in respect of travel, lodging or other expenses, to which such Representatives may be entitled in connection with the performance of the Services, (ii) payment of all obligations under applicable federal, state and local tax laws for payment of income tax, and, if applicable, self-employment taxes and other taxes, contributions, payments or premiums required by law in respect of all compensation paid to Contractor, or Contractor's Representatives, under this Agreement and (iii) compliance with all applicable labor and employment requirements with respect to Contractor and Contractor's Representatives, including state worker's compensation insurance coverage requirements and any U.S. immigration visa requirements.  Realm will not train Contractor or Contractor's Representatives or otherwise support the Services Contractor is obligated to provide under this Agreement; <u>provided</u>, <u>however</u>, Realm may provide Contractor or Contractor's Representatives with an opportunity to participate in training programs or other Company activities. Contractor agrees to be solely responsible for providing Contractor's own supplies and goods necessary to fulfill Contractor's role, but Realm may in its sole discretion waive this requirement and provide Contractor with certain supplies and goods.

2. **Certain Definitions**.  As used in this Agreement, the term (i) "***Representatives***" means, with respect to a specified Person, such specified Person's Affiliates and its and their respective directors, partners, officers, employees, consultants, subcontractors, agents and advisors; (ii) "***Person***" shall be broadly interpreted to include, without limitation, any individual, corporation, company, group, partnership, limited liability company or other entity; (iii) "***Affiliate***" means, with respect to a specified Person, any Person that, directly or indirectly through one or more intermediaries, Controls, is Controlled by or is under common Control with such specified Person; (iv) "***Control***" means the possession, direct or indirect, of the power to vote 50% or more of the voting securities of a Person; and (v) "***Applicable Laws***" means all applicable U.S. (whether federal, state or local) or foreign laws, regulations, rules, decrees, orders, actions, policies, standards, requirements and guidelines as in effect from time to time, including, without limitation, those of the Internal Revenue Service (IRS), the Securities Exchange Commission (SEC), the Financial Industry Regulatory Authority (FINRA), the Office of Foreign Assets Control of the U.S. Department of the Treasury, any other relevant U.S. or foreign regulatory or governmental authority and any policies implemented by Realm and its Affiliates to ensure compliance with such.

3. **Compensation**: All fees, costs and expenses to be paid to Contractor in connection with any Services shall be set forth in the relevant SOW.  Contractor shall not incur



any costs or expenses in excess of those set forth in the relevant SOW without Realm's prior written consent.  Contractor shall not be entitled to any mark-up on costs or expenses billed to Realm.  The compensation provided for in the SOWs shall be Contractor's sole form of compensation provided by Realm unless covered by a separate written agreement, and Contractor waives any right to royalties, additional fees or any other form of compensation or reimbursement whatsoever from Realm.  The Parties hereto agree that all compensation to be paid hereunder shall be determined through good faith and arms-length negotiation and shall reflect the fair market value of the Services rendered.  Unless otherwise expressly set forth in the relevant SOW, (i) all invoices and payments hereunder shall be in U.S. Dollars, (ii) invoices shall be submitted by Contractor to Realm on a monthly basis and (iii) except with respect to amounts subject to a bona fide dispute, payment of amounts invoiced will be made by Realm within thirty (30) days after Realm's receipt of the relevant invoice.  Contractor shall promptly provide to Realm all back-up documentation for invoices requested by Realm.

4. **Taxes**.  All income taxes (and, if applicable, self-employment taxes and other taxes, contributions, payments or premiums required by Applicable Laws), value added tax (VAT), levies, surcharges or other similar charges and any penalties levied thereon that relate to any amounts paid to Contractor hereunder shall be the responsibility of and paid by Contractor.

5. **Location and Hours**.  The relevant SOW will set forth the number of hours Contractor, and Representatives when applicable, is expected to work, and if applicable, the location where the Services are to be performed.

6. **Use of Name and Image, Publicity and Marketing**. During the term of this Agreement, Realm shall have permission to use the Contractor's name and image in the marketing and promotion of the Realm Academy virtual educational institution and courses. Furthermore, the Contractor agrees to work with Republic in good faith to develop and implement co-marketing activities to promote the Realm Academy virtual educational institution and courses.

7. **Representations and Warranties**.

    7.1. <u>Formation/Power and Authority/No Conflicts</u>.  Contractor, if not an individual, is duly formed, validly existing and in good standing under the laws of its jurisdiction of formation and has all requisite power and authority to execute and deliver this Agreement and to perform its obligations hereunder.  This Agreement has been duly authorized, executed and delivered by Contractor and constitutes a legal, valid and binding obligation of Contractor, enforceable against Contractor in accordance with its terms.  The execution and delivery of this Agreement by Contractor and the performance of its obligations hereunder will not conflict with, directly or indirectly, or result in any breach or default under, any other agreement to which Contractor is subject, including but not limited to non-competition agreements, non-solicitation of customer agreements, non-solicitation of employee agreements, confidentiality agreements, invention assignment agreements. If Contractor is subject

Doc ID: 4a7be627f31e095d2f845ee630b5a1fa971a3817



to any restrictive agreements, with a current or former client, employer, or any other person or entity, that (i) may restrict Contractor's ability to provide services to Realm or any Affiliate of Realm (ii) may restrict Contractor's ability to recruit or engage customers or service providers on behalf of Realm or an Affiliate of Realm, or (iii) may restrict Contractor's ability to perform Contractor's duties for Realm or any Affiliate of Realm, then Contractor will make timely disclosure to Realm of such restrictive agreements.  Contractor agrees not to enter into any written or oral agreement that conflicts with the provisions of this Agreement.

7.2.    <u>Performance/Timeliness</u>.  Contractor, and Contractor's Representatives performing Services hereunder, are duly licensed and certified (as applicable) and have the knowledge, experience and skill to perform, and will perform, the Services in a professional and timely manner in accordance with the specifications therefor set forth in the relevant SOW.  Contractor and Contractor's Representatives will perform all Services in accordance with this Agreement, all Applicable Laws, all applicable industry standards, any and all applicable protocols or work plans agreed by the Parties, the applicable standard operating procedures of Realm and the reasonable instructions of Realm.  Contractor and Contractor's Representatives will maintain on a current basis all licenses, certifications, accreditations, approvals, reviews, permits and authorizations required by all Applicable Laws.  Contractor shall ensure that each of Contractor's Representatives performing Services hereunder complies with the terms of this Agreement.  Contractor shall be responsible for any breach of the terms of this Agreement by any such Representative. The Parties understand and agree that the engagement is expected to be short term and will be re-evaluated on a periodic basis.

7.3.    <u>Records/Reports</u>.  Contractor shall keep, and provide to Realm promptly upon request, reasonably detailed records regarding the Services and of the time and expenses incurred in performance of the Services, including, to the extent Contractor is compensated based on an hourly rate, records showing the number of hours spent performing Services.  Contractor shall also provide to Realm promptly upon request, in the format provided by Realm, reports of all fees and items of value, including meals, travel reimbursements, and accommodations, received from or reimbursed by Realm as well as the identity of and reporting information (including all applicable license numbers) for any of Contractor's Representatives or other third parties who are healthcare professionals or healthcare organizations receiving fees or items of value from Contractor or Contractor's Representatives relating to the Services performed pursuant to this Agreement

8.  **Representations and Covenants.**

8.1.    <u>Facilitation of Agreement</u>.  Upon Realm's written request to do so, Contractor agrees to both during the Term of this Agreement and after the termination of <u>this</u> Agreement, promptly (i) execute any proper documentation or oath reasonably required to carry out the terms of this Agreement, and (ii) provide any documentation or other information reasonably required to carry out the terms of this Agreement.

8.2.    <u>Conflicts of Interest</u>. Contractor agrees that, during the period of time of

Doc ID: 4a7be627f31e095d2f845ee630b5a1fa971a3817



Contractor's engagement with Realm, Contractor will (a) not engage in any activities that conflict with Contractor's obligations to Realm, and (b) diligently avoid all material conflicts of interest with Realm. This provision shall not be interpreted as an exclusion in Contractor's ability to provide services to other entities, so long as they do not violate (a) and (b) of this Section 8.2.

8.3. Voluntary Execution. Contractor certifies and acknowledges that Contractor has carefully read all of the provisions of this Agreement, that Contractor understands and has voluntarily accepted such provisions, and that Contractor will fully and faithfully comply with such provisions.

8.4. Advice of Counsel. CONTRACTOR ACKNOWLEDGES THAT, IN EXECUTING THIS AGREEMENT, CONTRACTOR HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND CONTRACTOR HAS READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

9. **Covenants**.

9.1. Solicitation of Employees. Contractor agrees that for a period of twelve (12) months immediately following the termination of this Agreement for any reason, whether with or without cause, Contractor shall not (and shall cause Contractor's Representatives not to) either directly or indirectly solicit, induce, recruit or encourage any employees or contractors of Realm or Realm's Affiliates to leave their employment, or take away such employees or contractors , or attempt to solicit, induce, recruit, encourage or take away employees or contractors of Realm, either for Contractor or for any other person without Realm's consent.

9.2. Non-Disparagement. Without limitation of time, Contractor shall not (and shall not cause any of Contractor's Representatives to) make any disparaging statements concerning the Company, its Affiliates, their officers, directors, employees, contractors, agents, investors, clients, customers, investors, marketing partners, finders, products or services that could injure, impair or damage relationships involving Realm, its Affiliates or their officers, directors, employees, contractors, agents, investors, clients, customers, marketing partners, finders or other business associates.

10. **Material, Derivatives, Data, Inventions and Preexisting Technology.**

10.1. Ownership of Company Material, Derivatives, Data and Inventions. All (i) technology, drawings, codes, documentation, prototypes, designs, and materials provided by Realm to Contractor and Contractor's Representatives in connection with the Services, this Agreement or otherwise ("**Materials**"), (ii) improvements, derivatives and modifications of the Material ("**Derivatives**"), (iii) data, images, information, documents and records, in whatever form, obtained, developed, recorded or compiled in connection with, or otherwise arising out of, this Agreement, the Services, the Material, Derivatives or Realm's Confidential Information (as defined in Section 11) ("**Data**") and (iv) inventions, discoveries, results, products, compositions, innovations, methods, enhancements, improvements, derivatives, modifications,

5

Doc ID: 4a7be627f31e095d2f845ee630b5a1fa971a3817



developments, know how, trade secrets, concepts, protocols, processes, designs, suggestions, ideas, original works of authorship, studies, assessments, analyses and reports (whether or not patentable or registerable under copyright or similar laws) (x) arising out of or in connection with Contractor's use of the Material, Derivatives, Data or Realm's Confidential Information, (y) arising out of or in connection with this Agreement or the Services or (z) covering or embodying the Material, Derivatives, Data or Realm's Confidential Information (collectively, "**Inventions**") are and shall be the sole and exclusive property of Realm.  Contractor further acknowledges that all original works of authorship which are made by Contractor (solely or jointly with others) within the scope of and during the period of my engagement for Realm and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act.

10.2.   <u>Assignment of Inventions</u>.  Contractor agrees to promptly disclose Derivatives, Data and Inventions to Realm in writing, will hold in trust for the sole right and benefit of Realm, and hereby irrevocably assigns to Realm, or its designee, all of Contractor's rights, titles, and interests in and to any and all Derivatives, Data and Inventions and will execute and deliver to Realm all documents and take such actions as may be considered necessary by Realm to obtain and defend intellectual property rights in Derivatives, Data and Inventions and invest complete title to Derivatives, Data and Inventions in Realm.  Contractor agrees that Contractor will not file any patent, trademark or copyright applications or registrations with respect to any Material, Derivatives, Data or Inventions or using Realm's Confidential Information.  Contractor agrees that, in addition to any other remedies available to Realm, any such patent, trademark and copyright applications and registrations shall be owned solely by Realm, and Contractor hereby assigns to Realm all of Contractor's right, title, and interest to such applications and registrations. Nothing in this Agreement shall be construed as granting to Contractor any right or license to any patent, trade secret, copyright, trademark or other intellectual property or proprietary right of Realm. Contractor will cause Contractor's Representatives to comply with the provisions of this <u>Section 10</u>.

10.3.   <u>Maintenance of Records</u>. Contractor agrees to keep and maintain adequate and current written records of all Inventions made by Contractor (solely or jointly with others) during the Term of Contractor's engagement with Realm. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by Realm. The records will be available to and remain the sole property of Realm at all times.

10.4.   <u>Patent and Copyright Registrations</u>. Contractor agrees to assist Realm, or its designee, at Realm's expense, in every proper way to secure Realm's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to Realm of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which Realm shall deem

Doc ID: 4a7be627f31e095d2f845ee630b5a1fa971a3817



necessary in order to apply for and obtain such rights and in order to assign and convey to Realm, its successors, assigns and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto.  Contractor further agrees that Contractor's obligation to execute or cause to be executed, when it is within Contractor's power to do so, any such instrument or papers shall continue after the termination of this Agreement.  If Realm is unable because of Contractor's mental or physical incapacity or for any other reason to secure Contractor's signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to Realm as above, then Contractor hereby irrevocably designates and appoints Realm and its duly authorized officers and agents as Contractor's agent and attorney in fact, to act for and in Contractor's behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by Contractor.

10.5.     Preexisting Technology.  It is recognized and understood that the preexisting inventions and technologies of Realm and Contractor are their separate property, respectively, and are not affected by this Agreement.  Contractor has attached hereto, as Exhibit A, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by Contractor prior to Contractor's engagement with Realm (collectively referred to as "**Prior Inventions**"), which belong to Contractor, which relate to Realm's proposed business, products or research and development, and which are not assigned to Realm hereunder; or, if no such list is attached, Contractor represents that there are no such Prior Inventions.  If in the course of Contractor's engagement with Realm, Contractor incorporates into a Realm product, process or machine a Prior Invention owned by Contractor or in which Contractor has an interest, Realm is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or machine.

10.6.     Former Employer or Client Information. Contractor agrees that Contractor will not, during Contractor's engagement with Realm, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer, customer or other person or entity and that Contractor will not bring onto the premises of Realm any unpublished documents or proprietary information belonging to any such employer, customer, person, or entity unless consented to in writing by such employer, customer, person, or entity.

11. **Confidentiality.**

11.1.     Confidential Information.  For purposes of this Agreement, "**Confidential Information**" means any oral, written, graphic, electronic or machine readable information, including, but not limited to, that which relates to financial information,

7



compensation information, organizational charts, employment information, employee benefit information, marketing materials, intellectual property, computer software, hardware configuration information, source code, object code, databases, trade secrets, patents, patent applications, research, product plans, products, developments, inventions, know how, descriptions, processes, protocols, technology, designs, drawings, engineering, formulae, markets, regulatory information, studies, policies, reports, data and analysis, business or strategic plans and forecasts related thereto, agreements with third parties, services, customer lists, customers (including but not limited to, customers of Realm on whom Contractor contacted on behalf of Realm or with whom Contractor became acquainted during the period of time Contractor is engaged with Realm), pricing, marketing or finances of Realm, whether furnished before or after the Effective Date, and regardless of whether such information is specifically identified as "confidential".  Confidential Information of Realm also includes (i) any analyses, compilations, studies or other documents or data prepared by Contractor or any of Contractor's Representatives that contain, reflect or are based on, in whole or in part, any such information and (ii) all information (including, without limitation, Derivatives, Data, Inventions and other work product or deliverables) arising out of or in connection with any such information, the Services or this Agreement.  In addition, if Realm provides samples, prototypes or materials to Contractor, Contractor agrees that such samples, prototypes or materials, together with all results obtained from any testing and evaluation thereof, shall be Confidential Information of Realm and Contractor will promptly disclose to Realm all results obtained from its testing or evaluation of such samples, prototypes and materials.  Information about the Services, the terms and conditions thereof and any other facts relating thereto, including, without limitation, the existence of this Agreement, shall also be deemed to be Confidential Information of Realm.  Confidential Information does not include information that Contractor can prove:  (i) was generally available to the public at the time of disclosure by Realm or becomes generally available to the public through no fault of, or act or omission on the part of, Contractor or any of Contractor's Representatives; (ii) was known to Contractor or any of Contractor's Representatives, without restriction, at the time of disclosure by Realm, as demonstrated by files in existence at the time of disclosure; (iii) was independently developed by Contractor or any of Contractor's Representatives without the aid, application or use of any Confidential Information of Realm, as demonstrated by files created at the time of such independent development; or (iv) becomes known to Contractor or any of Contractor's Representatives, without restriction, from a Person (other than Realm or any of Contractor's Representatives) that is lawfully in possession of such information and not in violation of any confidentiality or other contractual or legal obligation to Realm with respect to such information.

11.2.    <u>Prohibited Use and Disclosure of Confidential Information</u>.  Contractor agrees not to use any Confidential Information of Realm for its own use or for any purpose other than the performance of the Services under this Agreement.  Contractor

Doc ID: 4a7be627f31e095d2f845ee630b5a1fa971a3817



shall not, at any time, disclose or permit disclosure of any of Realm's Confidential Information to any Person, other than Contractor's Representatives who are required to have such Confidential Information in order to carry out the Services.  Contractor will cause Contractor's Representatives who have access to Confidential Information of Realm to comply with the terms of this Agreement and acknowledges and agrees that Contractor shall be responsible for any breach of the terms of this Agreement by Contractor or any such Representatives.  Contractor agrees that Contractor shall take, at Contractor's sole expense, all reasonable measures to keep confidential and protect the secrecy of, and restrain Contractor's Representatives from prohibited or unauthorized disclosure or use of, Confidential Information of Realm.  Such measures shall include, but not be limited to, the highest degree of care that Contractor utilizes to protect its own confidential information of a similar nature, which shall be no less than reasonable care.  Contractor further agrees to notify Realm in writing of any actual or suspected misuse, misappropriation or unauthorized disclosure of Realm's Confidential Information which may come to Contractor's attention.

11.3.   Compelled Disclosure.  Notwithstanding the foregoing, Contractor shall not have liability to Realm with regard to any disclosure of Confidential Information that Contractor can prove (i) is disclosed with the prior written approval of Realm; or (ii) is required to be disclosed pursuant to Applicable Law, rule or regulation or the order of a court, regulatory authority or other governmental body; provided, however, that Contractor shall, unless prohibited by Applicable Law, rule or regulation or such order (a) provide prompt notice of such requirement to Realm and (b) cooperate fully with Realm in taking legally available steps to prevent or narrow such disclosure, including, without limitation, by seeking a protective order or confidential treatment.  For the avoidance of doubt, neither Contractor nor any of Contractor's Representatives shall have any right to publish any Confidential Information of Realm.

11.4.   Third Party Information. Contractor recognizes that Realm has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on Realm's part to maintain the confidentiality of such information and to use it only for certain limited purposes. Contractor agrees to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out Contractor's work for Realm consistent with Realm's agreement with such third party.

12. **Term and Termination**.

12.1.   Term.  The term (the "**Term**") of this Agreement shall begin on the Effective Date and expire one (1) year thereafter, and shall renew automatically for additional one (1) year terms unless terminated earlier by either Party as provided in this Agreement.

12.2.   Termination.  Notwithstanding anything contained herein to the contrary, an SOW or this Agreement may be terminated (i) by Realm at any time in the exercise of its sole discretion upon three (3) days' prior written notice to Contractor, (ii) by

9



either Party upon the material breach of this Agreement by the other Party, which material breach continues unremedied for thirty (30) days after delivery to the breaching Party by the nonbreaching Party of notice of the material breach, (iii) by either Party immediately in the event of the bankruptcy (voluntary or otherwise), insolvency or other similar financial distress of the other Party (iv) by Realm, immediately in the event Contractor is found to have violated the terms of this Agreement materially in a manner that cannot be remedied under Applicable Law, or (v) by either Party or both Parties pursuant to Section 13.9.  Termination of this Agreement shall include all SOWs then in effect, unless the Party requesting termination specifically states otherwise in the written notice of termination.  In the event that any SOW(s) survives, this Agreement shall continue to govern such SOW(s) until they are terminated or performance has been completed.  Termination of a single SOW under this Agreement shall not terminate any other SOW(s) then in effect, unless the Party requesting termination specifically states otherwise in the written notice of termination.

    12.3.    Returning Company Documents. Contractor agrees that, upon termination of this Agreement, Contractor will deliver to Realm (and will not keep in Contractor's possession, recreate or deliver to anyone else) any and all Realm-provided devices, records, data, notes reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by Contractor pursuant to Contractor's engagement with Realm or otherwise belonging to Realm, its successors or assigns.  Contractor will cause Contractor's Representatives to comply with the provisions of this Section 12.3 and will provide a certificate evidencing such, if reasonably requested by Realm.

13.    **General Provisions**.

    13.1.    Governing Law.  This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law.

    13.2.    Entire Agreement; Modifications.  This Agreement, together with its schedules and exhibits attached hereto and thereto, sets forth the entire agreement and understanding between Realm and Contractor relating to its subject matter and merges all prior discussions between the Parties.  No amendment to this Agreement will be effective unless in writing signed by both Parties to this Agreement.  Realm shall not be deemed to have waived any rights or remedies it may have in law or equity, nor to have given any authorizations or waived any of its rights under this Agreement, unless, and only to the extent, it does so by a specific writing signed by a duly authorized officer of Realm, it being understood that, even if Contractor is (or any of Contractor's Representatives is) an officer of Realm, he/she will not have authority to give any such authorizations or waivers for Realm without specific approval by its board of directors (or similar governance body in the case that Realm



is not a corporation).  Any subsequent change or changes in Contractor's duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.

13.3.     Severability.  If one or more of the provisions in this Agreement is deemed **void** or unenforceable to any extent in any context, such provisions shall nevertheless be enforced to the fullest extent allowed by law in that and other contexts, and the validity and force of the remainder of this Agreement shall not be affected.  If any term or provision set forth in Section 9 is ruled by a tribunal of competent jurisdiction to be excessively broad as to time, duration, geographical scope, activity or subject, the other provisions of this Agreement shall nevertheless stand and the construction and interpretation of Section 9 shall be deemed to be the longest period and/or greatest size permissible by law under the circumstances, and the parties hereto agree that such court shall reduce the time period and/or geographic scope to permissible duration or size.

13.4.     Successors and Assigns.  This Agreement will be binding upon Contractor's heirs, executors, administrators and other legal representatives, and Contractor's successors and assigns, and will be for the benefit of Realm, its successors, and its assigns.  Contractor may not assign Contractor's rights or obligations pursuant to this Agreement, except to the extent required by law.

13.5.     Arbitration & Equitable Relief.

13.5.1.   Arbitration. Except as provided in Section 13.5.2 below, Contractor agrees that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in the State of New York, in accordance with the rules then in effect of the American Arbitration Association. The arbitrator shall be final, conclusive, and binding on both Realm and Contractor. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. Realm and Contractor shall each pay one-half of the costs and expenses of such arbitration, and each of Realm and Contractor shall separately pay counsel fees and expenses.

13.5.2.   Equitable Remedies. Contractor agrees that it would be impossible or inadequate to measure and calculate the damages from any breach of the covenants set forth in Section 8, Section 9 or Section 10.  Accordingly, Contractor agrees that if Contractor breaches any such provisions, Realm will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement.  Contractor further agrees that no bond or security shall be required in obtained such equitable relief and Contractor hereby consents to the issuance of such injunction and to the ordering of specific performance.

13.6.     Counterparts.  This Agreement may be executed in any number of **counterparts**, each of which when so executed and delivered shall be deemed an original, and all of which together shall constitute one and the same agreement. Execution of a facsimile copy will have the same force and effect as execution of an



original, and a facsimile signature will be deemed an original and valid signature.

13.7.     Survival.  Upon the termination of this Agreement, the provisions of Section 4, Section 8, Section 9, Section 10, Section 11 and Section 12 shall survive.

13.8.     Notices.  Any notice required or permitted under this Agreement shall be in writing and shall be deemed given upon personal delivery, confirmed facsimile, or confirmed e-mail transmission, one day after being deposited with a nationally recognized carrier assuring overnight delivery, five days after being sent by registered or certified mail, return receipt requested, postage prepaid, and if addressed to the party at the address listed on the signature pages hereto, or to such other address as may from time to time be designated by notice in the manner provided herein.

13.9.     Force Majeure.  If either Party shall be delayed or hindered in or prevented from the performance of any act required hereunder by reason of strike, lockout, riot, insurrection, war, act of God or other reason or cause reasonably beyond such Party's control (each a "**Force Majeure Event**"), then performance of such act shall be excused for the period of such Force Majeure Event.  The Party incurring the Force Majeure Event shall provide prompt notice to the other of the commencement and termination of the Force Majeure Event.  Should a Force Majeure Event continue for more than two (2) months, the Party unaffected by the Force Majeure Event may terminate this Agreement upon prior written notice to the affected Party.  Should the Force Majeure Event equally affect the performance of both Parties, then such termination shall only be by mutual written agreement.

*Signature Page Follows*

Doc ID: 4a7be627f31e095d2f845ee630b5a1fa971a3817



*Signature Page to Contractor Agreement*

**IN WITNESS WHEREOF**, the Parties hereto have caused this Contractor Agreement to be executed by their duly authorized representatives as of the Effective Date.

REPUBLIC REALM INC.

_____
Janine Yorio
CEO


**Accepted and Agreed**

_____
Katherine Yost
kyost731@gmail.com

13



# SCHEDULE No. 1
## to
## Contractor Agreement

## STATEMENT OF WORK #1

Pursuant to, and subject to the terms and conditions of, Contractor Agreement, dated as of December 16, 2021 (the "Agreement"), by and between Republic Realm Inc. ("**Realm**" or the "**Company**") and Katherine Yost (the "**Contractor**") and in consideration of the mutual promises contained therein and for other good and valuable consideration the receipt and adequacy of which each of the Parties does hereby acknowledge, the Parties hereby agree to this SOW, which is designated SOW # 1 (the "**SOW**"). Capitalized terms used but not defined herein shall have the respective meanings ascribed thereto in the Agreement. All Services to be performed by Contractor shall be subject to the terms and conditions of the Agreement and in the event of a conflict or inconsistency between a provision of this SOW and a provision in the Agreement, the terms and conditions of the Agreement shall prevail. This SOW is effective as of the SOW Effective Date (hereinafter defined) and shall be deemed incorporated into, and made an integral part of, the Agreement as of such date.

| **Project Purpose; Project Constituents** |
|---|
| **Effective Date:** the date above (the "**SOW Effective Date**") |
| **Supervisor Name(s)**: Janine Yorio, CEO |
| **Service Description** |
| Contractor undertakes to provide, and the Company undertakes to pay, for Contractor to undertake the role of **Director of Human Resources**, which includes the following Services (collectively, the "**Services**"):<br><br>● Employee recruiting;<br>● Employee onboarding and offboarding;<br>● Payroll management; and<br>● Benefits coordinating. |

14

Doc ID: 4a7be627f31e095d2f845ee630b5a1fa971a3817



| **Compensation & Payment Information** |
|---|
| **Term:** Monthly, commencing December 16, 2021 (the "Term"). <br><br> **Compensation:** $80.00/hour |
| **Contact Information:** <br> Address: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> Phone: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> Email: ▮▮▮▮▮▮▮▮ |
| **Payment Instructions - Bank Account Information for ACH Transfer:** <br> Bank Name: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> Routing Number: ▮▮▮▮▮▮▮▮ <br> Account Number: ▮▮▮▮▮▮▮▮ <br> Account Type (checking or savings): ▮▮▮▮▮▮▮▮ |

<u>Miscellaneous</u>.  This SOW is an integral part of the Agreement. In the event of conflict between this SOW and the Agreement and (or) additional agreements and (or) other appendices, the Agreement shall control.  This SOW does not cancel any additional agreements and (or) appendices to the Agreement and serves as a supplement to them.  This SOW may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and all of which together shall constitute one and the same agreement.  Execution of a facsimile copy will have the same force and effect as execution of an original, and a facsimile signature will be deemed an original and valid signature.

Doc ID: 4a7be627f31e095d2f845ee630b5a1fa971a3817



IN WITNESS WHEREOF, the Parties hereto have caused this SOW #1 to be executed by their duly authorized representatives as of the SOW Effective Date.

REPUBLIC REALM INC.                          CONTRACTOR

By: _____                   By: _____
Name: Janine Yorio                           Name: Katherine Yost
Title: CEO

16



## **Exhibit A**

LIST OF PRIOR INVENTIONS AND ORIGINAL WORKS OF AUTHORSHIP

| Title | Date | Identifying Number or Brief Description |
|---|---|---|
| | | |
| | | |
| | | |

Doc ID: 4a7be627f31e095d2f845ee630b5a1fa971a3817

 Audit Trail

| | |
|---|---|
| **TITLE** | Contractor Agreement |
| **FILE NAME** | Republic Realm In...herine Yost).docx |
| **DOCUMENT ID** | 4a7be627f31e095d2f845ee630b5a1fa971a3817 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

## Document History

**SENT**  **12 / 20 / 2021**  23:03:42 UTC-5
Sent for signature to Janine Yorio (janine@republicrealm.com) and Kathleen Yost (kyost731@gmail.com) from bill@republicrealm.com
IP: 66.65.168.248

**VIEWED**  **12 / 21 / 2021**  02:01:52 UTC-5
Viewed by Janine Yorio (janine@republicrealm.com)
IP: 71.235.159.138

**SIGNED**  **12 / 21 / 2021**  02:02:03 UTC-5
Signed by Janine Yorio (janine@republicrealm.com)
IP: 71.235.159.138

**VIEWED**  **12 / 21 / 2021**  10:51:23 UTC-5
Viewed by Kathleen Yost (kyost731@gmail.com)
IP: 50.205.218.74

**SIGNED**  **12 / 21 / 2021**  11:08:35 UTC-5
Signed by Kathleen Yost (kyost731@gmail.com)
IP: 50.205.218.74

**COMPLETED**  **12 / 21 / 2021**  11:08:35 UTC-5
The document has been completed.