**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KATHERINE YOST,

               Plaintiff,

    v.

EVERYREALM INC., COMPOUND ASSET
MANAGEMENT LLC, REALM METAVERSE
REAL ESTATE INC., REPUBLIC, REPUBLIC
CRYPTO LLC, REPUBLIC REALM MANAGER
LLC, REPUBLIC REALM INC., REPUBLIC
OPERATIONS LLC, OPENDEAL INC.,
OPENDEAL PORTAL LLC, JANINE YORIO, in
her individual and professional capacities, WILLIAM
KERR, in his individual and professional capacities,
and ZACH HUNGATE, in his individual and
professional capacities,

               Defendants.

Index No.: 1:22-cv-06549(PAE)

## PLAINTIFF'S OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIM FOR
## SEXUAL HARASSMENT

**SEPPINNI LLP**
Shane Seppinni
43 W. 43rd St., Suite 256
New York, NY 10036

*Counsel for Plaintiff*

**CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

LEGAL STANDARD............................................................................................. 2

ARGUMENT ....................................................................................................... 3

**I.    KATHY PLAUSIBLY PLED CLAIMS FOR SEXUAL HARASSMENT UNDER NYCHRL, NYSHRL, TITLE VII, AND COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS .................................................. 3**

    A. The Second Amended Complaint Plausibly Alleges Sexual Harassment Under NYCHRL and NYSHRL ........................................................................ 3

        1.    The Sexual Harassment had its Impact in New York City and State ............ 3

        2.    Kathy Adequately Plead a Sexual Harassment Dispute under NYCHRL and NYSHRL.............................................................................................. 9

    B. The Second Amended Complaint Plausibly Alleges Severe and Pervasive Sexual Harassment Under Title VII................................................................ 15

    C. The Second Amended Complaint Plausibly Alleges Intentional Infliction of Emotional Distress ....................................................................................... 17

**II.   KATHY'S CLAIMS ARE NON-CONTRADICTORY AND MUST BE ACCEPTED AS TRUE................................................................................................... 19**

CONCLUSION ..................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*McCall v. Pataki*,
    232 F.3d 321 (2d Cir. 2000)..................................................................................... 2

*Ragin v. New York Times Co.*,
    923 F.2d 995 (2d Cir. 1991)..................................................................................... 2

*N.C. ex rel. M.C. v. Bedford Cent. Sch. Dist.*,
    348 F. Supp. 2d 32 (S.D.N.Y. 2004)...................................................................... 2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................. 2

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012)..................................................................................... 2

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)..................................................................................... 2

*Fowler v. Scores Holding Co.*,
    677 F. Supp. 2d 673 (S.D.N.Y. 2009)................................................................... 2

*Linar v. EL Valle 794 Rest., Corp.*,
    22-CV-3102 (JMF) (S.D.N.Y. June 21, 2022) ................................................... 2

*Chen-Oster v. Goldman, Sachs & Co.*,
    251 F. Supp. 3d 579 (S.D.N.Y. 2017).................................................................. 3

*McLeod v. Jewish Guild for the Blind*,
    864 F.3d 154 (2d Cir. 2017)..................................................................................... 4

*Hoffman v. Parade Publ'ns*,
    15 N.Y.3d 285; 907 N.Y.S.2d 145; 933 N.E.2d 744 (2010) ........................... 4, 7

*Kraiem v. Jonestrading Institutional Servs.*,
    492 F. Supp. 3d 184 (S.D.N.Y. 2020).............................................................. 4, 6, 7

*Lambui v. Collins*,
    No. 14-CV-6457, 2015 WL 5821589 (E.D.N.Y, Sept. 30, 2015) ........................ 8

*Germano v. Cornell Univ., No. 03 Civ. 9766*,
    2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005)...................................................... 8

*Salvatore v. KLM Royal Dutch Airlines, No. 98- CV-2450 (LAP)*,
   1999 U.S. Dist. LEXIS 15551 (S.D.N.Y. Sept. 30, 1999).....................................................8

*Brandenburg v. Greek Orthodox Archdiocese of N. Am.*,
   20-CV-3809 (JMF) (S.D.N.Y. June 1, 2021) ...........................................................................8

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
   715 F.3d 102 (2d Cir. 2013)...................................................................................................9

*Hernandez v. Kaisman*,
   957 N.Y.S.2d 53 (N.Y. App. Div. 2012) ..........................................................................9, 11

Williams v. N.Y. City Hous. Auth.,
   61 A.D.3d 62 (1st Dep't 2009) ........................................................................................9, 10

*Erasmus v. Deutsche Bank Americas Holding Corp., No. 15 Civ. 1398*,
   2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015)...............................................................10, 13

*Gallagher v. AEG Mgmt. Brooklyn, LLC , No. 16 Civ. 4779*,
   2017 WL 2345658 (E.D.N.Y. May 30, 2017) .......................................................................10

*McHenry v. Fox News Network, LLC*,
   510 F. Supp. 3d 51 (S.D.N.Y. 2020)........................................................................10, 12, 13

*Redd v. N.Y. Div. of Parole*,
   678 F.3d 166 (2d Cir. 2012)..................................................................................................11

*Alfano v. Costello*,
   294 F.3d 365 (2d Cir. 2002)..................................................................................................11

*Flieger v. E. Suffolk BOCES*,
   693 F. App'x 14 (2d Cir. 2017)..............................................................................................11

*Campbell v. N.Y. City Transit Auth.*,
   662 F. App'x 57 (2d Cir. 2016)..............................................................................................12

*Morrison v. United Parcel Service, Inc., 17 Civ. 2885*,
   2019 WL 109401 (S.D.N.Y. Jan. 4, 2019) ...........................................................................12

*Iannone v. Frederic R. Harris, Inc.*,
   941 F. Supp. 403 (S.D.N.Y. 1996) ........................................................................................15

*Howley v. Town of Stratford*,
   217 F.3d 141 (2d Cir. 2000)..................................................................................................15

*Ruiz v. City of New York*,
    No. 14-CV-5231, 2015 WL 5146629 (S.D.N.Y. Sept. 2, 2015)..........................................15

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007)..........................................................................................16

*Schwapp v. Town of Avon*,
    118 F.3d 106 (2d Cir. 1997)..........................................................................................16

*Whidbee v. Garzarelli Food Specialties, Inc.*,
    223 F.3d 62 (2d Cir. 2000)............................................................................................16

*Terry v. Ashcroft*,
    336 F.3d 128 (2d Cir. 2003)..........................................................................................16

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015)..........................................................................................16

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17; 114 S.Ct. 367; 126 L.Ed.2d 295 (1993)..................................................16

*Doe v. Doe*,
    2017 WL 3025885 (S.D.N.Y. July 14, 2017)..............................................................18

*Bonner v. Guccione*,
    916 F. Supp. 271 (S.D.N.Y. 1996) .......................................................................18, 19

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)..........................................................................................19

*Faulkner v. Beer*,
    463 F.3d 130 (2d Cir. 2006)..........................................................................................20

*Krijn v. Pogue Simone Real Estate Co.*,
    896 F.2d 687 (2d Cir. 1990)..........................................................................................20

**STATUTES**

New York
    N.Y. Exec. Law § 300...................................................................................................10
    Code § 8........................................................................................................................10
    N.Y. Exec. Law § 292...................................................................................................10
    N.Y. Exec. Law § 296...................................................................................................11

**FEDERAL RULES**

Federal Rules of Civil Procedure
     Rule 12....................................................................................................................... 20
     Rule 15....................................................................................................................... 20

Plaintiff Kathy Yost submits this brief in opposition to Defendants' Motion to Dismiss Plaintiff's Claim of Sexual Harassment (dkt. no. 37).

## PRELIMINARY STATEMENT

Defendants have not moved to dismiss Kathy's sexual harassment-based retaliation claims. Therefore, this brief does not address retaliation based on sexual harassment. Defendants' concession by omission moots whether Kathy has pled a Sexual Harassment Dispute under the EFA. It is well-settled that sexual harassment-based retaliation claims are non-derivative and stand as a separate cause of action in New York. Still, a Sexual Harassment Dispute has also been affirmatively plead via hostile work environment sexual harassment.

Defendants do not dispute that Kathy Yost was present in Everyrealm's New York City office when nearly all the sexual harassment against her occurred. Therefore, the sexual harassment she endured had its impact in New York City under both the New York City and New York State Human Rights Laws ("NYCHRL" and "NYSHRL").

Instead, Defendants muddy the waters by improperly relying on evidence outside of the pleadings. Specifically, Defendants rely on self-serving statements (scrounged from a one-sided discovery process) that lack context and were neither incorporated into nor relied on in the Second Amended Complaint ("SAC"). Tellingly, Defendants do not try to justify their inclusion of documents outside of the pleadings.

Having failed to support their motion on the merits, Defendants attack Kathy's credibility without adding the context that CEO Yorio lied to her repeatedly and that Kathy was afraid to say or do anything to oppose CEO Yorio for fear she would be terminated, which she was. Defendants now have twice divulged Plaintiff counsel's confidential settlement demand, which was made upon Defendants' request, in their bad faith attempt to discredit Kathy. Whether Kathy

has plausibly alleged sexual harassment on a motion to dismiss does not turn on defendants'

disputed evidence nor the parties' settlement negotiations.

The Court should deny Defendants' motion to dismiss, and this Sexual Harassment

Dispute should proceed to discovery in the Southern District of New York as required by the

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFA").

## LEGAL STANDARD

The party moving for dismissal must show that no claim has been stated. *McCall v.

Pataki*, 232 F.3d 321, 322 (2d Cir. 2000); *Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2d

Cir. 1991); *N.C. ex rel. M.C. v. Bedford Cent. Sch. Dist.*, 348 F. Supp. 2d 32, 4 (S.D.N.Y. 2004).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). When determining if a claim is plausible, the Court must assume all

well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch

v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court, "is limited to 'the facts

alleged in the complaint, documents attached to the complaint as exhibits, and documents

incorporated by reference in the complaint,' as well as any documents which the complaint relies

upon so heavily that they are 'integral to the complaint.'" *Linar v. EL Valle 794 Rest., Corp.*, 22-

CV-3102 (JMF), at *1 (S.D.N.Y. June 21, 2022) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622

F.3d 104, 111 (2d Cir. 2010)). Employment claims on a motion to dismiss "need not contain

specific facts establishing a prima facie case of employment discrimination," rather, the

complaint must only be "facially plausible, and must give fair notice to the defendants of the

basis of the claim." *Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009).

2

**ARGUMENT**

The Court should deny Defendants' motion to dismiss Kathy's sexual harassment claims. Defendants have failed to meet their burden because Kathy plausibly plead that:

1.  The gravamen of the sexual harassment alleged occurred with the Parties in NYC;

2.  The harassment Kathy suffered is self-evidently based on her sexual identity, gender, and sex; and

3.  The constant sexual harassment that occurred during just 12 weeks at Everyrealm is severe and pervasive.

I.      **KATHY PLAUSIBLY PLED CLAIMS FOR SEXUAL HARASSMENT UNDER NYCHRL, NYSHRL, TITLE VII, AND COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Everyrealm has not met its burden of showing that no sexual harassment claim has been pled. Kathy's 46-page SAC sets forth numerous facts plausibly pleading legally sufficient claims for a Sexual Harassment Dispute. *See*, *e.g.*, AC ¶¶ 4, 59-90.

A.      **The Second Amended Complaint Plausibly Alleges Sexual Harassment Under NYCHRL and NYSHRL**

Defendants wrongly argue that Kathy failed to state claims under the NYCHRL and NYSHRL. First, the discrimination described in the AC had its impact in New York City and state. Second, the misconduct described in the AC does plausibly allege sexual harassment based on unwanted gender-based conduct under NYCHRL and NYSHRL.

1.      **The Sexual Harassment had its Impact in New York City and State**

"To succeed on a motion to dismiss, a defendant must show that there is no possibility that there was an impact in New York. [Defendants] have not." *Chen-Oster v. Goldman, Sachs & Co.*, 251 F. Supp. 3d 579, 594 (S.D.N.Y. 2017) (internal citations and quotations omitted).

3

"[T]he NYSHRL and NYCHRL [] afford protections unavailable under federal law to discrimination plaintiffs who can 'plead and prove that the alleged discriminatory conduct had an impact' within the state and city respectively." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017) (citing *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 289, 907 N.Y.S.2d 145, 933 N.E.2d 744 (2010)). "New York State courts lack subject matter jurisdiction over claims brought under the NYCHRL and the NYSHRL by a non-resident plaintiff, when the alleged discriminatory conduct did not have an 'impact' on the plaintiff within New York City (regarding the NYCHRL) and within New York State (regarding the NYSHRL)." *Hoffman,* 15 N.Y.3d 285 at 289, 907 N.Y.S.2d 145, 933 N.E.2d 744. However, where some of a non-resident's harassment claims occurred while plaintiff and defendants were in New York City, as here, the "discriminatory conduct had an impact" in New York, at least regarding the misconduct that occurred in New York City or state. *See Kraiem v. Jonestrading Institutional Servs.*, 492 F. Supp. 3d 184, 195 (S.D.N.Y. 2020).

### a. *Overwhelming Sexual Harassment Occurred in NYC*

Defendants outright ignore or downplay that the vast majority, of the sexual harassment pled in the AC occurred while the Parties were in NYC. The AC alleges copious sexual harassment in NYC. AC ¶ 2 ("Sexual harassment of Ms. Yost, including compelling her to listen to and participate in discussions of employees and others' alleged sexual orientations, sexual activity and behavior, and menstruation details; Sexually harassing slurs in conversations with Everyrealm employees by Ms. Yorio . . . Creating a hostile work environment for . . . women, when, inter alia, Ms. Yorio and others openly disparaged women for their appearances, including Everyrealm investor Randi Zuckerberg . . .."; *id.* ¶ 59 ("[W]as subject to sexually explicit rants and tirades at work"); *id.* ¶ 61-64 ("Ms. Yorio frequently discussed her theories about the

4

sexuality of other Everyrealm employees **in the office** with Ms. Yost. Ms. Yorio's sexually

explicit soliloquies were unwelcomed by Ms. Yost. Ms. Yorio sexually harassed Ms. Yost

because she is openly bisexual, and Ms. Yorio prejudicially thought that this attribute made Ms.

Yost an expert on others' sexual orientations. For example, unprompted, Ms. Yorio **cornered**

Ms. Yost and told her that she believed a senior executive at Everyrealm was 'in the closet,' and

implied that she was interested in Ms. Yost's opinion on the matter."); *id*. ¶ 66-67 ("In another

cruel and disturbing instance, Ms. Yorio repeated to Ms. Yost that an employee she 'think[s] is

in the closet' told her **during a company celebration in New York** the night before that another

employee's "balls will be in [his or her] mouth by the end of the night.' Ms. Yost did not initiate

this conversation and was so appalled and dismayed when Ms. Yorio used this sexually explicit

language with her **at work** that she was physically stunned into silence."); *id*. ¶¶ 68-70 ("On

another occasion, **Ms. Yorio again cornered Ms. Yost** and sexually harassed her by discussing

another employee's sex life at work. Ms. Yorio was insistent that a cofounder of the company is

a 'virgin,' and that she was 'not sure' if he or she was aware that he or she is 'an asexual or

bisexual.' Ms. Yorio told Ms. Yost that she developed these sexual theories about this cofounder

after trying to set him or her up with 'pretty girls all the time [but] [he or she] doesn't seem

interested.'"); *id*. ¶¶ 73-75 ("In yet another instance of **sexual harassment, while Ms. Yost was**

**in the New York office** in either May or June 2022, Ms. Yorio, out of the blue and in no way

related to Ms. Yost's duties, told Ms. Yost that there was a rumor that employees named Rachel

and Michael were 'sleeping together.' . . . Ms. Yorio did not claim that the rumored relationship

was preventing these employees from carrying out their duties. The only reason Ms. Yorio

shared this rumor with Ms. Yost was to engage in sexually harassing and inappropriate gossip at

work.);" and, finally, *id*. ¶¶ 76-81, ("In another instance of sexual harassment, that occurred after

March 20, 2022, Ms. Yorio, unprompted by Kathy, recounted interactions she had with their coworker, Teyo Johnson. Ms. Yorio said to Ms. Yost that she asked Mr. Johnson if he was late because he had "hooked up" with a woman whom Ms. Yorio referred to as 'Dog in a Bag,' and that Mr. Johnson had responded 'No, she was on her period.' Ms. Yost asked in shock, 'Why did you ask him that?!' Ms. Yorio back-peddled and instead suggested that Mr. Johnson walked into the office and offered up this detail to her unprompted, and that she thought Mr. Johnson's girlfriend had lied about having an anxiety disorder. Ms. Yost did not welcome these sex-related conversations, nor the questioning of another person's disability status and, instead, repeatedly told Ms. Yorio that the only time it was appropriate for her to become aware of an employee's sex-life was if or when it began to impact their ability to do their job. And in those instances, any graphic details like the ones above were unnecessary. But Defendants' sexual harassment of Ms. Yost did not stop.") (Emphases added). These are just the sexual harassment that is alleged in NYC, let alone the remaining serious instance that occurred elsewhere in which CEO told Kathy that she could not earn more than men at the company repeatedly referring to Kathy's male coworkers' genatalia, or lack thereof. *See id.* ¶¶ 82-90.

This barrage of sexual harassment in NYC suffices to plausibly plead sexual misconduct that survives a motion to dismiss under the *Hoffman* impact test. *See Kraiem v. Jonestrading Institutional Servs.*, 492 F. Supp. 3d 184, 200 (S.D.N.Y. 2020).

Defendants state that Ms. Yost, "[visited] Everyrealm's office in New York City on three occasions and only suffered from purported harassment during two" of her trips. Defs.' Mot. at 17. Even accepting Defendants' version of the facts as true, even just one trip to New York City during which harassment occurs is sufficient under NYCHRL to state a claim. In *Kraiem*, the plaintiff was "admittedly a non-New York resident" and French citizen living in London "during

the relevant time" who successfully alleged sexual harassment under the NYCHRL and

NYSHRL despite only being in New York City for seven days, fewer than the number of days,

nine, Defendants claim Kathy was present in New York City. *Kraiem v. Jonestrading*

*Institutional Servs.*, 492 F. Supp. 3d 184, 200 (S.D.N.Y. 2020) 184, 199; Defs.' Mot. 17. Kathy

is also "admittedly a non-New York resident." *Id*. She lives in Maryland (AC ¶ 26) but worked

physically in New York City for part of the roughly five months she worked at Everyrealm. *See*

*id*. The plaintiff in *Kraiem* alleged sexual harassment, most of which occurred outside of New

York City and state, unlike here where most occurred in NYC. The offending conduct in *Kraiem*

that occurred in NYC consisted only of "two incidents at client dinners" during one trip

containing crude, sex-related commentary, and insults—not unlike the misconduct alleged by

Kathy—and did not consist of unwanted touching, as here. *Kraiem v. Jonestrading Institutional*

*Servs.*, 492 F. Supp. 3d 184, 200 (S.D.N.Y. 2020) 184, 191-2. Yet the court found that the

*Kraiem* plaintiff had rightly asserted wrongful termination and retaliation based on sexual

harassment under the NYCHRL and NYSHRL because "to the degree incidents of harassment or

retaliation occurred while [plaintiff] was in New York City, the Court sees no reason those

claims cannot proceed. At that time[,] [plaintiff] was 'within the state' and among 'those who

work in the city.'" *Id*. at 200 (quoting *Hoffman v. Parade Publ'ns*, 15 N.Y.3d at 291, 907

N.Y.S.2d 145, 933 N.E.2d 744.")). The Court should apply the same reasoning here.

The cases in which Defendants contend (incorrectly for *Brandenburg*) that courts found

that infrequent or sporadic allegations of harassment in New York City failed to show impact in

the city all involve less severe, numerous, and concentrated instances of harassment than Kathy's

case, or were decided prior to 2009, when the NYCHRL did away with the severe and pervasive

standard. In *Brandenburg*, the plaintiff filed an amended complaint that did not allege *any*

7

harassment in New York City; instead, the plaintiff amended his pleadings to allege that plaintiff

performed "tasks and duties" in New York city like "[t]raveling to Queens, New York, every

week to take lessons on liturgical music[,]" and that defendants had called plaintiff from their

NYC HQ and had one conversation there. Pltf.'s Am. Compl. at ¶¶ 20, 45, 47-48, 50,

*Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, 1:20-cv-3809, ECF no. 18. *These* were

the "allegations" that the *Brandenburg* court found insufficient to confer jurisdiction under

NYCHRL, *not* sexual harassment allegations in NYC, as Defendants wrongly imply (Defs.' Mot.

at 16). *See Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, 20-CV-3809 (JMF), at *12

(S.D.N.Y. June 1, 2021) ("And although the Amended Complaint does include a handful of

allegations regarding Plaintiffs' work-related trips to New York City, *see* [Pltf.'s Am. Compl.] ¶

20, and Defendants' conduct at the Archdiocese headquarters in New York City, *see id.* ¶¶ 45,

47-48, 50, these allegations, even taken together, show no more than a tangential relationship

between [NYC] and the actions of which [Plaintiffs] complain[].") (some internal citations and

quotations omitted for brevity). The remainder of Defendants' cases on this issue are

unpersuasive too. *See* Defs. Mot. at 14-17 (*e.g., Lambui v. Collins,* No. 14-CV-6457, 2015 WL

5821589, at *5 (E.D.N.Y, Sept. 30, 2015) (minimal sexual advances made in New York but

"vast majority of [] discriminatory and harassing conduct occurred on Long Island[]" unlike in

the instant case); *Germano v. Cornell Univ.*, No. 03 Civ. 9766, 2005 WL 2030355, at *5

(S.D.N.Y. Aug. 17, 2005) (Plaintiff who alleged he was "pressured to retire" from job in Long

Island at dinners and meetings in New York City, court skeptical that "such conduct constitutes

discrimination[,]" pressuring someone to retire art dinner is self-evidently less severe than here

and decided prior to 2009 when NYCHRL was under the out-of-date severe and pervasive

standard); *Salvatore v. KLM Royal Dutch Airlines*, No. 98- CV-2450 (LAP), 1999 U.S. Dist.

8

LEXIS 15551, at **52-53 (S.D.N.Y. Sept. 30, 1999) (23-year-old decision where the "substantial" vast majority of allegations occurred outside NYC, unlike here, and were assessed under the severe and pervasive standard under Title VII, not the current NYCHRL).

Therefore, at a minimum, the sexual harassment that occurred in New York City had an impact on Kathy within NYC and state respectively.

### 2.   Kathy Adequately Plead a Sexual Harassment Dispute under NYCHRL and NYSHRL

Prior to this dispute, Defendants agreed that all the conduct described in the SAC constitutes sexual harassment. *See* AC ¶ 52 (Defendants' employee handbook sexual harassment definition). The New York City Commission on Human Rights' Notice of Employee Rights under NYCHRL poster concurs. *See* Ex. A ("sexual harassment, a form of gender-based discrimination, is unwelcome verbal or physical behavior based on a person's gender."). Now, facing liability for their misconduct, Defendants argue that the conduct herein is petty and trivial. "As with most affirmative defenses, the employer has the burden of proving the conduct's triviality under the NYCHRL." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 111 (2d Cir. 2013). And in weighing both "the plaintiff's claim and the defendant's affirmative defense, courts must consider the 'totality of the circumstances'" without ignoring the "overall context in which [the challenged conduct occurs]." *Id.* (alteration in original) (quoting *Hernandez v. Kaisman*, 957 N.Y.S.2d 53, 59 (N.Y. App. Div. 2012)). Indeed, under the NYCHRL "even a single comment may be actionable in the proper context." Id. at 113 (citing *Williams*, 872 N.Y.S.2d at 41 & n. 30).

As this Court wrote in *McHenry v. Fox News Network, LLC*, "The NYCHRL's standards for liability for sexual harassment are more permissive than those of . . . Title VII. Unlike Title

VII . . ., the NYCHRL does not require a plaintiff claiming sexual harassment to prove that the conduct was severe and pervasive, requiring only that the plaintiff demonstrate she was subjected to "unwanted gender-based conduct." *Erasmus v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 1398, 2015 WL 7736554, at *7 (S.D.N.Y. Nov. 30, 2015) (Engelmayer, J.) (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 76, 872 N.Y.S.2d 27 (1st Dep't 2009)); *see Gallagher v. AEG Mgmt. Brooklyn, LLC*, No. 16 Civ. 4779, 2017 WL 2345658, at *7 (E.D.N.Y. May 30, 2017) (at the motion to dismiss stage, a plaintiff need only proffer evidence of unwanted gender-based conduct). The plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender. However, district courts must be mindful that the NYCHRL is not a general civility code. *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 65-66 (S.D.N.Y. 2020) (some internal citations and quotations omitted for brevity). "In August 2019, the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.' *Id*. (quoting N.Y. Exec. Law § 300). at 68. So, this opposition analyzes the NYCHRL and NYSHRL claims at once.

The text of the NYCHRL specifically protects against discrimination based on 'perceived' sexual orientation. N.Y.C. Code § 8-107(1)(a). The NYSHRL similarly protects against discrimination based on an employee's perceived sexual orientation. *See* N.Y. Exec. Law § 292(27) (defining "sexual orientation" to mean "heterosexuality, homosexuality, bisexuality or asexuality, whether actual or perceived."). The legislative findings and intent that accompanied the 2002 amendment adding discrimination based on sexual orientation to the NYSHRL also

10

makes clear that the NYSHRL is intended to address discrimination directed at individuals that are perceived to be homosexual or bisexual. N.Y. Exec. Law § 296(1)(a), L 2002, ch. 2, § 1 ("The legislature further recognizes that this prejudice [based on sexual orientation] has fostered a general climate of hostility and distrust, leading in some instances to physical violence against those perceived to be homosexual or bisexual.")

Other hostile work environment claims based on less severe conduct than alleged here have been held to meet the pleadings standard not only of the NYCHRL and NYSHRL, but in some instances, the more demanding Title VII. *See Corradino v. Liquidnet Holdings, Inc.*, 19 Civ. 10434 (LGS), at *10 (S.D.N.Y. July 8, 2021) ("The Complaint alleges more than a few isolated, off-color comments," including asking plaintiff to engage in sex and/or a relationship despite Plaintiff's repeated refusals to do so, looking at Plaintiff in a sexual manner, and during corporate lunches and parties he **discussed his sex life** and used lewd language in front of Plaintiff . . ." and other similar interactions with other employees) (emphasis added); *see also, Hernandez v. Kaisman*, 957 N.Y.S.2d 53, 59 (N.Y. App. Div. 2012) (isolated mildly offensive emails deemed sufficient under NYCHRL: dissemination of mildly offensive emails within context of demeaning and embarrassing women employees found actionable).

Similarly, Kathy's allegations are pled with enough specificity, numerosity, and clarity to plausibly plead hostile work environment under NYCHRL where other plaintiffs have fallen short. *See Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175-76 (2d Cir. 2012) ("Isolated incidents usually will not suffice to establish a hostile work environment.") (internal quotation marks omitted); *Alfano v. Costello*, 294 F.3d 365, 378-79 (2d Cir. 2002) (five incidents of harassment over four years were insufficient to support a hostile work environment claim); *Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 19 (2d Cir. 2017) (summary order) (holding that a "single

11

comment" was not so severe as to support a claim for hostile work environment); *Campbell v. N.Y. City Transit Auth*., 662 F. App'x 57, 60 (2d Cir. 2016) (summary order) (holding that two isolated incidents of harassment were insufficient to establish a hostile work environment); *Morrison v. United Parcel Service*, *Inc*., 17 Civ. 2885, 2019 WL 109401, at *3 (S.D.N.Y. Jan. 4, 2019) ("One or two isolated uses of racially insensitive language are rarely sufficient, but rather, the plaintiff must demonstrate a 'steady barrage of opprobrious racial comments.'") (Citations omitted).

Attempting to minimize their misconduct, Defendants argue that Kathy does not "make any attempt to link the alleged comments to her own sexuality." Defs.' Mot. at 7. But all of Kathy's NYC sexual harassment allegations at the least contain "an implicit reference to gender" or her sexuality. *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 70 (S.D.N.Y. 2020). And others contain explicit allegations that Ms. Yorio targeted Kathy for tirades about employees' sexuality in NYC because she was openly bisexual: "Ms. Yorio frequently discussed her theories about the sexuality of other Everyrealm employees in the office with Ms. Yost. Ms. Yorio's sexually explicit soliloquies were unwelcomed by Ms. Yost. Ms. Yorio sexually harassed Ms. Yost **because she is openly bisexual**, and Ms. Yorio prejudicially thought that this attribute made Ms. Yost an expert on others' sexual orientations. For example, unprompted, Ms. Yorio cornered Ms. Yost and told her that she believed a senior executive at Everyrealm was 'in the closet,' and implied that she was interested in Ms. Yost's opinion on the matter." AC ¶¶ 61-64 (emphasis added).

Next, Defendants state, "Nor does [Kathy] allege Mrs. Yorio or any other Everyrealm employee ever propositioned her for sexual or otherwise inappropriate encounters." Defs.' Mot. at 12. This is true, but of no consequence to the sufficiency of Kathy's pleadings. The NYCHRL

and NYSHRL "do not require that the defendant have had a romantic interest in the plaintiff, but only that [they] subjected her to 'unwanted gender-based conduct." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 70 (S.D.N.Y. 2020) (Engelmayer, J.) (quoting *Erasmus*, 2015 WL 7736554, at *7). The SAC makes clear that all the sexual harassment Kathy endured was unwanted and gender and/or sexuality based. Defendants "will be at liberty to defend against these claims at summary judgement and/or trial by demonstrating, if true, that [they]" cornered, harassed, and ". . . their [straight] colleagues [to the same extent as they did Kathy]. But neither the [Second] Amended Complaint nor the materials cognizable on [Defendants'] motion to dismiss so establish." *Id*. at 70-71. Ms. Yorio's regular, vulgar, unwanted, and persistent tirades in NYC regarding employees' sexuality that were explicitly not tied to Kathy's role in HR was clearly plead as unwanted and sexuality based.

Defendants also wrongly contend that this Court's decision in *Erasmus* is fatal to Kathy's claims of unwanted gender/sexuality-based misconduct. Defendants misrepresent and misapply the holding in *Erasmus*. This Court addressed a nearly identical misapplication of *Erasmus* by defendants in *Cano v. SEIU Local 32BJ*. 19 Civ. 8810 (S.D.N.Y. Sep. 30, 2021) (Engelmayer, J.). The "substantial doubts" this Court expressed in *Erasmus* over whether the "the Co-worker's behavior, as alleged, would qualify as 'unwanted gender-based conduct[]'" under the NYCHRL were not, as Defendants misrepresent, simply because the comments might have been insufficiently severe. *Erasmus v. Deutsche Bank Americas Holding Corp.*, 15 Civ. 1398, at *14 (S.D.N.Y. Nov. 30, 2015) (Engelmayer, J.). In "[*Erasmus*], comments and gestures made by the plaintiff's co-worker were 'crude,' but not as severe as the overtly racist ones Cano alleges here; the incidents were dispersed over a four-year period in contrast to the compact few-months period here; and the plaintiff failed to allege that the coworker's conduct was imputable to the

employer defendant. Here, by contrast, Cano alleges that his superiors both knew about his coworker's, and participated in their own, racially motivated harassment." *Cano v. SEIU Local 32BJ*, 19 Civ. 8810, at *12 (S.D.N.Y. Sep. 30, 2021) (Engelmayer, J.) (internal citations to the record omitted). Kathy's facts are more analogous to the facts in *Cano* than *Erasmus.* Here, Everyrealm's CEO repeatedly cornered Kathy to spread harmful rumors about employees' purported sexual preference and lewd sex acts (AC ¶¶ 66 ("In another cruel and disturbing instance, Ms. Yorio repeated to Ms. Yost that an employee she "think[s] is in the closet" told her during a company celebration in New York the night before that another employee's "balls will be in [his or her] mouth by the end of the night.")). And CEO Yorio did so over and over and over again despite Kathy repeatedly and clearly telling her to stop because "this rumor [was] none of her concern if it [was] 'not affecting their work[,]'" and in another instance, "that the only time it was appropriate for her to become aware of an employee's sex-life was if or when it began to impact their ability to do their job. And in those instances, any graphic details like the ones above were unnecessary. But Defendants' sexual harassment of Ms. Yost did not stop." (*Id.* ¶¶ 74, 80-81.) All of which is much more severe than the sporadic comments and gestures alleged in *Erasmus*. This is but a small sample of the harassment alleged in the AC. The harassment here occurred over a "compact few-months" (between March and June) like in *Cano* rather than "over [the] four-year period" in *Erasmus*. Kathy also alleges that the harassment was at the hands of the CEO, her superior, like the plaintiff in *Cano* rather than only by a co-worker like the plaintiff in *Erasmus*. And this Court explicitly did not analyze the facts of *Erasmus* using the NYCHRL standard. This Court makes clear in *Erasmus* that the plaintiff merely listed isolated "crude" incidents and made numerous other "conclusory an unspecific" allegations. *Erasmus v. Deutsche Bank Americas Holding Corp.*, 15 Civ. 1398, at *11-12 (S.D.N.Y. Nov. 30,

2015) (Engelmayer, J.). Kathy, by contrast, pleads many detailed instances of sexual harassment over just a 25-week period by CEO Yorio. The allegations in *Erasmus* therefore pale in comparison to the detailed instances of sexual harassment described in the AC.

Kathy has therefore plausibly pled claims of hostile work environment sexual harassment under the NYCHRL and the NYSHRL.

### B.  The Second Amended Complaint Plausibly Alleges Severe and Pervasive Sexual Harassment Under Title VII

Defendants would have this Court believe that short of a violent sexual assault, there is no basis for plausibly pleading a hostile work environment claim under Title VII's "severe and pervasive" standard. This ignores the longstanding law in this district. *See Iannone v. Frederic R. Harris, Inc.*, 941 F. Supp. 403, 410–11 (S.D.N.Y. 1996) ("[S]exual harassment is not limited to unwanted physical touching; it can also consist of the display of obscene visual representations or the communication of sexually offensive remarks."); *e.g. Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (finding a valid hostile-work-environment claim based on one incident in which the plaintiff's supervisor made a long, sexually explicit tirade against the plaintiff in front of a group); *Ruiz v. City of New York* , No. 14-CV-5231, 2015 WL 5146629, at *9 (S.D.N.Y. Sept. 2, 2015) (holding that hostile work environment claim survived motion to dismiss where the plaintiffs alleged that they were not allowed to speak Spanish, received more discipline than non-minority colleagues, and were the subject of an offensive text and graffiti").

To survive a Rule 12(b)(6) motion on a Title VII claim of Hostile Work Environment, a "plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse,' and 'we have repeatedly cautioned against setting the

bar too high' in this context. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citations

omitted). Notably, while a few isolated slurs may not suffice, *see Schwapp v. Town of Avon*, 118

F.3d 106, 110 (2d Cir. 1997), the repeated use of certain clearly offensive and abusive language

can create a hostile work environment, *see Whidbee v. Garzarelli Food Specialties, Inc.*, 223

F.3d 62, 69 (2d Cir. 2000). "The environment need not be unendurable or intolerable"" to be a

hostile work environment. *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (citation and

quotation marks omitted). "To establish a hostile work environment . . ., a plaintiff must show

that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment.' " *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir.

2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295

(1993)).

Defendants incorrectly claim that Kathy was subject to isolated incidents of sexual

harassment, but they downplay and elide their severity and numerosity. Kathy pleads that from

just March 2022 through early June 2022 when she was fired, she was cornered, emailed,

Slacked with sexually harassing tirades and diatribes from CEO Yorio continuously. *Supra* at 4-5

(discussion of harassment allegations in detail, and illustration of pervasiveness by sheer

volume). The idea that a full page of serious harassment allegations is not pervasive is

preposterous. And, again, this all occurred, not over the 25 weeks Kathy worked at Everyrealm,

but in about 12 weeks, which indicates the concentrated severity of the misconduct. Cases with

less severe and less numerous allegations have survived a motion to dismiss. *See, e.g., Corradino

v. Liquidnet Holdings, Inc.*, 19 Civ. 10434 (LGS), at *10 (S.D.N.Y. July 8, 2021) (analyzed

*supra* at 16-17); *see also Cano v. SEIU Local 32BJ*, 19 Civ. 8810 (PAE) (KHP) (S.D.N.Y. Sep.

16

30, 2021; *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (finding a valid hostile-work-environment claim based on one incident in which the plaintiff's supervisor made a long, sexually explicit tirade against the plaintiff in front of a group); *Ruiz v. City of New York* , No. 14-CV-5231, 2015 WL 5146629, at *9 (S.D.N.Y. Sept. 2, 2015) (holding that hostile work environment claim survived motion to dismiss where the plaintiffs alleged that they were not allowed to speak Spanish, received more discipline than non-minority colleagues, and were the subject of an offensive text and graffiti"). Furthermore, Kathy has plausibly alleged that the harassment she endured had severe impacts on her mental and physical wellbeing in addition to being severe itself. AC ¶ 191 ("Ms. Yost has suffered from debilitating insomnia as a direct result of Defendants' misconduct, has been unable to eat or keep food down for days at a time, and has suffered severe bleeding and permanent damage to her hands and fingers due to the emotional distress that Defendants knowingly caused in this event and the others described herein."

For these reasons, Kathy has plausibly pled severe and pervasive sexual harassment under Title VII.

### C.  The Second Amended Complaint Plausibly Alleges Intentional Infliction of Emotional Distress

Defendants address Plaintiff's sexual harassment claim of Intentional Infliction of Emotional Distress in Footnote 6 of their brief. After a review of the record and Defendants' arguments, Kathy will pursue IIED claims only against Defendants CEO Yorio and Everyrealm. To prevail under the tort of intentional infliction of emotional distress ("IIED"), a plaintiff must prove four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between

the conduct and injury; and (iv) severe emotional distress." Doe v. Doe, 16-cv-0332, 2017 WL 3025885, at *4 (S.D.N.Y. July 14, 2017) (internal citations omitted). The conduct proscribed by IIED is "as limitless as the human capacity for cruelty." Id. at *4. A plaintiff can prevail on an IIED claim by showing she was "the target of a planned program of harassment or threats, accompanied by vindictiveness, taunting or derision." *Bonner v. Guccione*, 916 F. Supp. 271, 277 (S.D.N.Y. 1996) (internal quotations omitted).

Defendants only appear to dispute the first element of "extreme and outrageous conduct." Defs.' Mot. at FN 6. Kathy has sufficiently pled extreme and outrageous conduct sufficient to survive a motion to dismiss on her IIED claim. She alleges that Defendants subjected "her to unwanted sexually explicit discussions of Everyrealm employees' private parts and their sexual orientations, [] demand[ed] that Ms. Yost carry out Defendants' racist, sexist, and ableist schemes, by making fun of employees' disability diagnoses to Ms. Yost while knowing that Ms. Yost suffers from disabilities herself, yell[ed] sexually harassing and otherwise inappropriate words at Ms. Yost around others, and taunt[ed] Ms. Yost for suffering from alcohol use disorder." SAC ¶ 252. "Furthermore, 'when the actor's conduct is extraordinarily vindictive, it may be regarded as so extreme and so outrageous as to give rise to a cause of action for emotional distress.'" *Doe v. Doe*, No. 16 Civ. 0332 (NSR), at *9 (S.D.N.Y. July 14, 2017). While Kathy does believe her IIED claim pleads a sexual harassment dispute, it cannot be fully understood without examining the extreme and outrageous other misconduct alleged in the SAC. Defendants. CEO Yorio's taunting of Kathy, when CEO Yorio knew Kathy suffered from Alcohol Use Disorder, combined with the other misconduct described passes the threshold for IIED.

Moreover, contrary to Defendant's contention, sexual verbal harassment can meet the first element of an IIED claim. "There is no question that in New York sexual harassment can give rise to a claim for intentional infliction of emotional distress." *Bonner*, 916 F. Supp. at 276. In *Bonner*, the district court held that the plaintiff had stated an IIED claim sufficient to survive a motion to dismiss after she alleged Defendant berated her at the office including calling her "incompetent" and "weird," and referring to her work as "pieces of shit." *See id*. at 277-278. This conduct pales in comparison to CEO Yorio referring to Kathy's claims of repeated sexual harassment, mocking of her disabilities, and making Kathy the target of discriminatory remarks regarding other disabled and minority employees at the company.

Viewing all of Kathy's allegations together, Defendants Yorio and Everyrealm campaign to sexually harass, discriminate against, and then vindictively terminate Kathy are sufficient to survive the motion to dismiss stage as pled.

## II.      KATHY'S CLAIMS ARE NON-CONTRADICTORY AND MUST BE ACCEPTED AS TRUE

Everyrealm improperly relies on extrinsic materials throughout its brief. These extrinsic materials are not part of the complaint nor subject to judicial notice and therefore cannot be considered on a Rule 12(b)(6) motion. In deciding whether to dismiss a claim under Rule 12(b)(6), the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which the judge may take judicial notice. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 234 (2d Cir. 2016). This is not the first time that Defendants have ignored the rules and brought improper and untimely evidence or arguments before this Court. *See* dkt. no. 21 (requesting surreply to address new arguments Defendants raised on Reply). Factually disputed documents cannot be used in connection with a

19

Rule 12(b)(6) motion. A document that is referenced in the complaint but not attached to it may be considered on a motion to dismiss under Rule 12(b)(6) if the authenticity of the document is not disputed. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (explaining that materials outside complaint may be considered without converting motion to summary judgment if they are "integral" to complaint and it is clear on record that no dispute exists regarding authenticity or accuracy of materials). Defendants' reliance on disputed documents that were not integral to nor attached to the SAC is therefore improper and should be ignored.

A review of the complete record—the facts alleged in the complaint, the documents attached to the complaint, and the records subject to judicial notice—establishes that Kathy has stated plausible claims for relief.[1] These materials are all properly considered by the court on a Rule 12(b)(6) motion.

Finally, Defendant alleges that Kathy pleads contradictory facts but offers no support from the operative SAC to support this contention. While Defendants might disagree with this Court's decision to order leave for Kathy to amend her Complaint and with FRCP 15(a), they cannot pretend that anything besides the Second Amended Complaint is the operative complaint for their motion to dismiss. *See* dkt. no 34 (Order setting deadlines for amended sexual harassment allegations and this briefing).

---

[1] This motion can be decided without relying on Defendants improper extrinsic materials, but to the extent that the Court determines otherwise, when a court converts a Rule 12(b)(6) motion to dismiss into a motion for summary judgment, the court must make sure that all parties are given a reasonable opportunity to present materials that are pertinent to a summary judgment motion. Fed. R. Civ. P. 12(d); *Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir. 1990) (explaining that all parties must be provided a reasonable opportunity to provide facts outside of the pleadings when a Rule 12(b)(6) motion is converted to summary judgment). Kathy must therefore be provided notice, discovery, and a reasonable opportunity to respond to a summary judgment motion.

## **CONCLUSION**

The Court should therefore deny Defendants' motion to dismiss the sexual harassment claims and move promptly to begin discovery in this matter.

**Dated:** November 16, 2022
New York, New York

Respectfully submitted,

/s/ Shane Seppinni

Shane Seppinni
Seppinni LLP
43 W 43rd St., Suite 256
New York, NY 10036
212-849-7000
shane@seppinnilaw.com

*Counsel for Plaintiff*

22