UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
KATHERINE YOST,                                       :
                                                      :
                          Plaintiff,                  :
                                                      :
        -against-                                     :     Case No. 1:22-cv-06549(PAE)(SLC)
                                                      :
EVERYREALM INC., COMPOUND ASSET                       :
MANAGEMENT LLC, REALM METAVERSE                       :     **ORAL ARGUMENT REQUESTED**
REAL ESTATE INC., REPUBLIC, REPUBLIC                  :
CRYPTO LLC, REPUBLIC REALM MANAGER                    :
LLC, REPUBLIC REALM INC., REPUBLIC                    :
OPERATIONS LLC, OPENDEAL INC.,                        :
OPENDEAL PORTAL LLC, JANINE YORIO in                  :
her individual and professional capacities,           :
WILLIAM KERR in his individual and                    :
professional capacities, and ZACH HUNGATE in          :
his individual and professional capacities.           :
                                                      :
                          Defendants.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### REPLY MEMORANDUM IN SUPPORT OF EVERYREALM INC., JANINE YORIO, WILLIAM KERR, AND ZACH HUNGATE'S MOTION TO DISMISS PLAINTIFF'S CLAIM FOR SEXUAL HARASSMENT

PROSKAUER ROSE LLP

Lloyd B. Chinn, Esq.
Eleven Times Square
New York, NY 10036
(212) 969-3000
(212) 969-2900 (Fax)
lchinn@proskauer.com
*Attorneys for Everyrealm Inc. (f/k/a
Republic Realm Inc.), Janine Yorio,
William Kerr, and Zach Hungate*

## **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT.......................................................................................... 1

ARGUMENT ....................................................................................................................... 3

    A.    Yost Does Not Assert That She Was Harassed "Because Of" Sex............................ 3

    B.    Yost's Harassment Allegations Constitute, At Most, Petty Slights And Trivial Inconveniences .......................................................................................................... 4

    C.    The Alleged "Harassment" Had No Impact In New York........................................ 8

    D.    The Court Should Reject Yost's Contradictory Assertions. .................................... 10

ARGUMENTS RAISED BY PUBLIC JUSTICE *ET AL.* ...................................................... 13

    A.    The *Amici*'s Tardy, Misguided Arguments Should Be Rejected As A Matter Of Course. ....................................................................................... 14

    B.    The EFA Was Designed To Encompass "Claims" Of Sexual Harassment, And, Should Any Claim Subject To The Legislation Survive A Rule 12 Motion, All Unrelated Claims Should Be Severed And Compelled To Arbitration. ............... 15

    C.    A "Sexual Harassment Dispute" Does Not Encompass Every Claim Based On Gender Or Sex. ................................................................................................... 16

    D.    Once The Sexual Harassment Claim Is Dismissed, The Action Should Be Compelled To Arbitration. ...................................................................................... 18

    E.    The Court Should Consider Any Materials Admissible Under Rule 12 Of The Federal Rules Of Civil Procedure When Addressing The Adequacy Of A Sexual Harassment Claim Under the EFA........................................................................... 19

CONCLUSION.................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Bonner v. Guccione,*
 916 F. Supp. 271 (S.D.N.Y. 1996)......................................................................................3

*Brandenberg v. Greek Orthodox Archdiocese of N. Am.*,
 No. 20-CV-3809 (JMF), 2021 U.S. Dist. LEXIS 102800 (S.D.N.Y. June 1, 2021)..................8

*Brennan v. Metro. Opera Ass'n*,
 192 F.3d 310 (2d Cir. 1999)...............................................................................................15

*Cano v. SEIU Local 32BJ,*
 No. 19 Civ. 8810 (PAE)(KHP), 2021 U.S. Dist. LEXIS 188634
 (S.D.N.Y. Sept. 30, 2021) ........................................................................................5, 6, 13

*Corradino v. Liquidnet Holdings Inc.*,
 No. 19 Civ. 10434 (LGS), 2021 U.S. Dist. LEXIS 127469
 (S.D.N.Y. July 8, 2021)........................................................................................................6, 7

*Dellefave v. Access Temps., Inc.,*
 No. 99 CIV. 6098 RWS, 2001 U.S. Dist. LEXIS 97 (S.D.N.Y. Jan. 10, 2001) ........................4

*Dos Santos v. Assurant, Inc.*,
 No. 21 Civ. 6368 (PAE)(RWL), 2022 U.S. Dist. LEXIS 158484
 (S.D.N.Y. Sept. 1, 2022) ......................................................................................................19

*Erasmus v. Deutsche Bank Ams. Holding Corp.*,
 No. 15 CIV. 1398, 2015 U.S. Dist. LEXIS 160351 (S.D.N.Y. Nov. 30, 2015)..................3, 5, 6

*Germano v. Cornell Univ.*,
 No. 03 Civ. 9766, 2005 U.S. Dist. LEXIS 17759 (S.D.N.Y. Aug. 17, 2005)..................8, 9, 10

*Hernandez v. Coca Cola Refreshments USA, Inc.*,
 No. 12 Civ. 234 (BMC), 2013 U.S. Dist. LEXIS 172400 (E.D.N.Y. Dec. 6, 2013) .............8, 9

*Hernandez v. Kaisman*,
 103 A.D.3d 106 (1st Dep't. 2012)..........................................................................................6

*Howley v. Town of Stratford*,
 217 F.3d 141 (2d. Cir. 2000)..................................................................................................7

*Iowa Pub. Emps.' Ret. Sys. V. MF Global, Ltd.*,
 620 F.3d 137 (2d Cir. 2010)..................................................................................................20

*Kirk v. Heppt*,
    532 F. Supp. 2d 586 (S.D.N.Y. 2008) ....................................................................................8

*Kraiem v. Jonestrading Inst. Svcs. LLC*,
    492 F. Supp. 3d 184 (S.D.N.Y. 2020) ..........................................................................8, 9, 10

*Lambui v. Collins*,
    No. 14-CV-6457, 2015 U.S. Dist. LEXIS 136329 (E.D.N.Y., Sept. 30, 2015) ...................9, 10

*Marcus v. AT&T Corp.*,
    138 F.3d 46 (2d Cir. 1998) ..................................................................................................19

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ..................................................................................................6

*Olaechea v. City of N.Y.*,
    No. 17-CV-4797 (RA), 2019 U.S. Dist. LEXIS 169760 (S.D.N.Y. Sept. 30, 2019) ...........4

*Orrego v. Knipfing*,
    564 F. Supp. 3d 273 (E.D.N.Y. 2021) ..................................................................................8

*Pedroza v. Ralph Lauren Corp.*,
    No. 19-cv-08639 (ER), 2020 U.S. Dist. LEXIS 131504 (S.D.N.Y. July 24, 2020) ...............8

*Ramirez v. Temin & Co.*,
    No. 20 Civ. 6258 (ER), 2021 U.S. Dist. LEXIS 183760 (S.D.N.Y. Sept. 24, 2021) .................1

*Ruiz v. City of N.Y.*,
    No. 14-CV-5231 (VEC), 2015 U.S. Dist. LEXIS 117947 (S.D.N.Y. Sept. 2, 2015) .............7, 8

*Salvatore v. KLM Royal Dutch Airlines*,
    No. 98-CV2450 (LAP), 1999 U.S. Dist. LEXIS 15551 (S.D.N.Y. Sept. 30, 1999) .............8, 10

*SEC v. Ripple Labs, Inc.*,
    No. 20 Civ. 10832 (AT), 2021 U.S. Dist. LEXIS 190855 (S.D.N.Y. Oct. 4, 2021) ...............15

*Soliman v. Deutsche Bank AG*,
    No. 03 Civ. 104 (CBM), 2004 U.S. Dist. LEXIS 9087 (S.D.N.Y. May 19, 2004) ....................1

*Strasser v. Doorley*,
    432 F.2d 567 (1st Cir. 1970) ..............................................................................................15

*Vails v. Police Dep't*,
    54 F. Supp. 2d 367 (S.D.N.Y. 1999) ....................................................................................17

*Vangas v. Montefiore Med. Ctr.*,
    823 F.3d 174 (2d Cir. 2016) ................................................................................................10

iii

*Williams v. N.Y.C. Hous. Auth.*,
  61 A.D.3d 62 (1st Dep't 2009) ...........................................................................17

*Wolff v. Rare Medium, Inc.*,
  210 F. Supp. 2d 490 (S.D.N.Y. 2002) .................................................................4

**STATUTES**

9 U.S.C. § 401(4) ...................................................................................................17

18 U.S.C. § 1621(2) ...............................................................................................12

28 U.S.C. § 1746 ....................................................................................................12

Carrie's Law, H.R. 2906, 117th Cong. § 402(b)(2)(A)(Apr. 30, 2021) ........................18

EFASASH Act .............................................................................................. passim

FAIR Act ................................................................................................................18

NYCHRL ...................................................................................................... passim

NYSHRL ....................................................................................................... passim

**OTHER AUTHORITIES**

2 Moore's Federal Practice – Civil § 12.34 ...............................................................8

168 Cong. Rec. S625 (daily ed. Feb. 10, 2022) .......................................................16

168 Cong. Rec. S626 (daily ed. Feb. 10, 2022) (statement of Sen. Richard Durbin)....17

168 Cong. Rec. S626 (daily ed. Feb. 10, 2022) (statement of Sen. Joni Ernst)............18

168 Cong. Rec. S626-S627 (daily ed. Feb. 10, 2022) (statement of Sen. Richard Durbin) .....16, 19

Fed. R. Civ. P. 11 ...................................................................................................19

Fed. R. Civ. P. 12 .......................................................................................... passim

## **PRELIMINARY STATEMENT**

In July 2022, Plaintiff Katherine Yost ("Yost") joined three other former employees in a coordinated effort to shake down Everyrealm for a multimillion dollar settlement; making a demand of $1.9 million (the aggregate demand of the four being $7.4 million). While all of Yost's claims are premised on outright fabrications, her purported "sexual harassment" claim is particularly galling. Upon realizing that she would be forced to arbitrate all of her claims unless she presents a claim for sexual harassment, Yost has set about to invent a claim out of whole cloth to fit this purpose. But as set forth in the Everyrealm Defendants' Motion to Dismiss and below, that effort falls flat for several reasons.

Yost fundamentally has not and cannot overcome the overwhelming legal authority mandating the dismissal of her claim. Indeed, Yost cites only to readily distinguishable cases, or instances in which hostile work environment claims were dismissed for the same reasons that they should be dismissed here.

Yost fails to state a claim of sexual harassment under state, city, or federal law. Her restatement of the allegations in her Second Amended Complaint side-steps the unavoidable conclusion – her allegations, even if true, amount to nothing more than petty slights or trivial inconveniences. The few cases cited scattered throughout the Opposition lead to no different conclusion. And, Yost's latest concoction, that she was subjected to "sexual harassment-based retaliation" is pleaded nowhere in her Second Amended Complaint and should be ignored by the Court.[1] As Yost's Second Amended

---

[1] Yost merely - and falsely - claims "[r]etaliation . . . when they terminated her the day after she informed her superiors . . . that she could not to [sic] comply with their plainly illegal, retaliatory, and discriminatory personnel policies . . . .", and when Ms. Yorio "yelled" at her in relation to Yost's purported objection to Mrs. Yorio's alleged non-sexual remark regarding "a Black applicant", and for "Taking Sick Leave and Family Leave." (Id. at 35 at ¶¶ 22, 109–114, Section X). Nowhere does Yost assert that she complained about (or objected to) purported sexual harassment. Nor does she claim she was retaliated against in response to such protected activity. Yost herself understandably cannot cite to a single reference in her Second Amended Complaint to any such assertion. To the extent Yost rests her argument on vague or ambiguous references in the Second Amended Complaint, they do not suffice. *See Ramirez v. Temin & Co.*, No. 20 Civ. 6258 (ER), 2021 U.S. Dist. LEXIS 183760, at *31 (S.D.N.Y. Sept. 24, 2021) ("Where a plaintiff's complaint is 'vague or ambiguous

Complaint was her final opportunity to amend any assertions of sexual harassment, her unpleaded "sexual harassment-based retaliation" claim should be disregarded.

Yost fares no better in addressing whether she has asserted a causal relationship between the purported harassment and her sex. Indeed, Yost's allegations that she was subjected to facially-neutral discussions regarding certain co-workers' sex lives are mirrored in her counter-part Teyo Johnson's First Amended Complaint. If Mrs. Yorio made these same facially-neutral remarks to both men and women, there can be no inference that these comments were "because of" their sex. Merely asserting that her own sex is somehow implied is insufficient.

Yost's only "argument" that the alleged harassment somehow "impacted" her in New York is restating and contorting the allegations in her Second Amended Complaint. Contrary to Yost's mischaracterization, much of the purported harassment occurred while Yost worked remotely from Maryland, and these allegations must be excluded from the impact analysis. The law requires that the purported harassment be felt in New York City, and Yost fails to plausibly make such assertions. Indeed, the Everyrealm Defendants cited to numerous cases where harassment of greater alleged severity occurred in New York City, and courts held those assertions amounted to only a "tangential" connection to the forum, insufficient for jurisdiction.

Finally, Yost tries to avoid any consequence for her multiple contradictory filings and writings – many of which are referenced in her Second Amended Complaint and/or are otherwise on record with this Court. However, she does not provide any legal argument on point.

The Court should dismiss Yost's sexual harassment claim, and compel the remainder of this

---

and does not sufficiently articulate the nature of the harassment, courts hold that a plaintiff has not engaged in protected activity.'") (quoting *Soliman v. Deutsche Bank AG*, No. 03 Civ. 104 (CBM), 2004 U.S. Dist. LEXIS 9087, at *13 (S.D.N.Y. May 19, 2004)).

Action to Arbitration.[2]

## ARGUMENT

The Court should grant the Everyrealm Defendants' Motion to Dismiss.  First, Yost now attempts to establish that she was purportedly harassed based on her sex by seeking to recast the facially neutral allegations in her Complaint and by citation to a single conclusory assertion, which are plainly insufficient in the face of the substantial legal authority squarely on point. Second, of the overwhelming weight of legal authority set out in the Everyrealm Defendants' Motion to Dismiss on the petty slights and trivial inconveniences point, Yost addresses only the *Erasmus* case (and even there, her analysis is faulty). Yost has instead oddly sought to rely heavily on cases granting motions to dismiss under circumstances involving far more substantial allegations of "harassment" than present here.  Third, relying on a single case, Yost argues that the alleged harassment had an impact in New York where the plaintiff there claimed she had endured overt sexual overtures, and retaliation for objecting to the harassment in New York City – none of which is present here, while disregarding all of the legal authority on all fours with this case holding that there was no "impact" in New York.

**A.**     **Yost Does Not Assert That She Was Harassed "Because Of" Sex.**

Yost does not plausibly raise any inference that the purported harassment was "because of" her sex. Indeed, Yost's Second Amended Complaint does not include a single non-conclusory allegation of harassment "because of" her gender or sex.

---

[2] In their Motion to Dismiss, the Everyrealm Defendants addressed Yost's Intentional Infliction of Emotional Distress claim only as it pertained to purported sexual harassment. She falls well short of establishing "extreme and outrageous" conduct in that regard (and all others). (See doc. 41 at n. 6). Yost mischaracterizes the purportedly analogous claim (*Bonner v. Guccione*) by referencing only three comments cited in the court's opinion. (See doc. 58 at pp. 25). *Bonner* also included allegations that plaintiff's supervisor twice referred to her as unintelligent because she was a woman, the supervisor was also similarly demeaning to "other female staff," and embarrassed plaintiff by stating she could not "write for shit" in front of her peers. 916 F. Supp. 271, 276 (S.D.N.Y. 1996). Notwithstanding her mischaracterization, she does not allege Yorio made demeaning comments to her, cursed at her, or embarrassed her in front her peers. Yost's reliance on allegations unrelated to sexual harassment have not been addressed given this Court's October 14 Order. (See doc. 34).

As described in the Everyrealm Defendants' Motion to Dismiss, there is not a single factual allegation that would connect the alleged comments by Mrs. Yorio to Yost's gender or sex. Indeed, as described by Yost the comments were both about women and men. Amongst a litany of legal authority, the Everyrealm Defendants cited two cases particularly on point wherein hostile work environment claims were dismissed on these grounds. (See doc. 34 at p. 14) (citing *Olaechea v. City of N.Y.*, No. 17-CV-4797 (RA), 2019 U.S. Dist. LEXIS 169760, at \*17 (S.D.N.Y. Sept. 30, 2019); *Dellefave v. Access Temps., Inc.*, No. 99 CIV. 6098 RWS, 2001 U.S. Dist. LEXIS 97, at \*20 (S.D.N.Y. Jan. 10, 2001)). Yost does not address either of these cases, or any of the other authority cited on point.

Instead, Yost merely claims without any supporting factual allegations that "all of her sexual harassment allegations at the least contain 'an implicit reference to gender.'" (See doc. 55 at p. 18). She then claims Mrs. Yorio discussed other employees' sexuality with her because she is bisexual (Id.), but such an assertion is both speculative and conclusory. Yost does not cite to a single case supporting her position, and mere conclusory allegations "characterizing the state of mind of another person" do not satisfy Rule 12's standards. *See Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 360 (S.D.N.Y. 2002).

The Court should dismiss Yost's sexual harassment claim on this ground alone.

**B.** **Yost's Harassment Allegations Constitute, At Most, Petty Slights And Trivial Inconveniences.**

To try to stave off dismissal, Yost has merely copied and pasted the allegations from her Second Amended Complaint into the Opposition, and cited a handful of easily distinguishable cases (as well as several cases supportive of Everyrealm's position, as the motions to dismiss in those cases were granted).

The Everyrealm Defendants addressed each of Yost's assertions of purported sexual harassment in their Motion to Dismiss, and provided nineteen cites wherein far more egregious allegations of

4

sexual harassment were dismissed under state, city and federal law. (See doc. 41 at pp. 16–20). Yost addressed only a single case relied upon for this point in the Motion to Dismiss, and her analysis of that case was fundamentally flawed.

Yost attempts to distinguish this Court's decision in *Erasmus* by reference to *Cano v. SEIU Local 32BJ*, but that case is inapposite in the extreme.  In *Cano* the plaintiff alleged, among other claims, a national origin hostile work environment claim under Title VII, the NYSHRL (pre-2019) and the NYCHRL. No. 19 Civ. 8810 (PAE) (KHP), 2021 U.S. Dist. LEXIS 188634, at *7 (S.D.N.Y. Sept. 30, 2021). There, the plaintiff pleaded "facially discriminatory" comments by three individuals directed squarely at the plaintiff's own race and national origin; a co-worker (Ball), the plaintiff's supervisor (Mehmedovic) and his manager (Price).  Cano's coworker, Ball, allegedly called Cano a "fucking Columbian [sic], motherfucker, faggot, fucking Colombian, fucking Spanish." *Id* at *3.  Cano's supervisor, Mehmedovic, delivered Cano a suspension letter and stated, "you don't belong here, fucking Colombian, you don't even deserve[] to live in this country, and I will get you fired soon." *Id.* at **3–4. Mehmedovic also allegedly told Cano that he was a "slave for working in the building and had to take all verbal abuse from tenant[s]." *Id.* at *4.  Later, the property manager, Price, told Cano, "I don't like fucking Spanish people, you don't even deserve[] to work here and you should go looking for a new job as[s]hole, you should continue drug trafficking in Colombia and stop wasting my fucking time." *Id.* at *5.

The Court emphasized several aspects of the race and national origin harassment claims warranting denial of the Rule 12(b)(6) motion in *Cano* that are not present here.  First, the Court noted that Cano had alleged "severe remarks that are facially discriminatory" – indeed, Cano had asserted multiple discriminatory statements that had plainly been directed specifically at him and his own race and national origin.  There is not a single allegation directed at Yost's sex or gender, nor is there any

alleged discriminatory statement about gender or sex generally.  The Court also distinguished the allegations in *Cano* from *Erasmus* in part because the "comments and gestures made by the plaintiff's co-worker [in *Erasmus*] were 'crude,' but not as severe as the overtly racist ones Cano alleges here . . . ." *Id.* at \*16. The allegations present here are far more akin to those in *Erasmus* than *Cano* in terms of severity; there is simply no comparison between the allegations in *Cano* and those present here.  In addition, the Court noted that Cano was a *pro se* plaintiff – which was not the case in *Erasmus* nor here – requiring a liberal construction of his pleadings.

Yost's likening of her claims to those in *Corradino*, *Mihalik* and *Hernandez* is equally unpersuasive. In *Corradino*, the plaintiff alleged she was subjected to multiple, explicit sexual overtures by the defendant's CEO, the COO suggested that he and the plaintiff should engage in an affair, the Head of Member services asked plaintiff out and to come to his beach house, another supervisor repeatedly asked plaintiff out and propositioned her for sex, a second COO asked plaintiff to take him home, and others referred to plaintiff as "sexy" and told her she would "enjoy a nice big fat Cuban." *Corradino v. Liquidnet Holdings Inc.*, No. 19 Civ. 10434 (LGS), 2021 U.S. Dist. LEXIS 127469, at \*\*2–5 (S.D.N.Y. July 8, 2021). In *Mihalik*, the plaintiff's supervisor subjected her to sexual comments, twice propositioned her for sex, and retaliated against her by ultimately discharging her for refusing his sexual advances. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 105 (2d Cir. 2013).

*Hernandez* involved numerous instances of purportedly harassing conduct, both in writing and in person – and several of which plainly involved statements directed at the plaintiff's own gender or sex.  There, the defendant sent the plaintiffs five sexually explicit emails. *Hernandez v. Kaisman*, 103 A.D.3d 106, 108–109 (1st Dep't 2012).  In addition, *Hernandez* also included allegations, *inter alia*, that Kaisman allegedly referred to himself as "pimp Kaisman," on several occasions walked around the

office in his underwear, put photos on the office computer of patients dressed as playboy bunnies, took women into his office for an extended period of time, and left condoms in a publicly accessible office drawer. *Id.*

In contrast to her cited cases, Yost does not allege any inappropriate touching, comments regarding her own gender or sex, or explicit sexual overtures – let alone multiple aggressive sexual propositions.

Yost's arguments also fall short in the Title VII context. There, Yost likened her claims to *Corradino* (again), *Howley* and *Ruiz*.  Yost fares no better with these cases. In *Howley*, the plaintiff was a female firefighter and subjected to a tirade by her supervisor in front of the otherwise entirely male fire station when he declared that Howley had only been promoted to lieutenant because she "perform[ed] felatio." *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d. Cir. 2000). There, the Second Circuit premised its holding on the fact that plaintiff's job as a lieutenant firefighter required that her reports listen to her commands in life saving scenarios, and her supervisor's proclamation that she was only a lieutenant because she had "perform[ed] felatio" could have rendered her incapable of performing her job duties. *Id.* at 154-55. Moreover, there was evidence that her supervisor perpetrated "repeated acts of harassment" to further undermine her. *Id.* at 155. In *Ruiz*, the plaintiffs alleged that Ruiz's face was "photoshopped" onto a naked woman's body and circulated amongst her coworkers, and she was "approached and threatened." *Ruiz v. City of N.Y.*, No. 14-CV-5231 (VEC), 2015 U.S. Dist. LEXIS 117947, at *23 (S.D.N.Y. Sept. 2, 2015). Later, the plaintiffs were the subject of multiple instances of sexually-explicit graffiti using their names. *Id.* Yost was not subject to any – let alone multiple – overt sexual overtures like *Corradino*, harassed sufficiently to render her incapable of carrying out her job duties as in *Howley*, or made the sexual object of the entire workplace and

"approached and threatened" akin to *Ruiz*. Yost's attempt to legitimize her claims by reference to these cases fails.[3]

Yost has failed to plausibly allege she was subjected to anything more than petty slights and trivial inconveniences. The Court should dismiss her sexual harassment claim once more.

## C.   The Alleged "Harassment" Had No Impact In New York.

The burden to establish subject matter jurisdiction under the NYCHRL and NYSHRL lies with the plaintiff, and Yost's argument falls well short.[4]  *See Brandenberg v. Greek Orthodox Archdiocese of N. Am.*, No. 20-CV-3809 (JMF), 2021 U.S. Dist. LEXIS 102800, at **21–22 (S.D.N.Y. June 1, 2021). Indeed, in each instance where Yost failed to allege that an act of purported harassment occurred in New York City, the Court should consider it as having occurred elsewhere.[5] The Everyrealm Defendants cited three cases where far more serious misconduct allegedly occurred in New York, and the courts nonetheless found that the alleged harassment was only tangentially related to the jurisdiction and thus dismissed the claims. Yost cites to one inapplicable case.[6]  As such, the Court should dismiss Yost's city and state sexual harassment claim.

---

[3] Yost's *non sequitur* argument that she suffers from insomnia, *inter alia*, has no relevance in this analysis.

[4] More recent cases have rejected the approach taken in the cases cited by Yost. *Pedroza v. Ralph Lauren Corp.*, No. 19-cv-08639 (ER), 2020 U.S. Dist. LEXIS 131504, at *3 (S.D.N.Y. July 24, 2020). Indeed a case relied upon heavily by Yost, albeit in a slightly different context, makes this clear. *Kraiem*, 492 F. Supp. 3d at 195 ("[A] plaintiff must 'plead and prove that the alleged discriminatory conduct had an impact' within the state and city respectively to receive the protections of the NYSHRL and NYCHRL.").

[5] The Court should not write the words "in New York" into Yost's Second Amended Complaint where she used ambiguous references to purported harassment that occurred "at work" (See doc. 35 at ¶ 59) – when she worked remotely from Maryland, or entirely failed to allege where the incident occurred (Id. at ¶¶ 76–81). *See Kirk v. Heppt*, 532 F. Supp. 2d 586, 590 (S.D.N.Y. 2008) ("The 'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'") (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12-61) (alterations in original).

[6] Yost argues two of the three cases cited by the Everyrealm Defendants are dated, bad law. However, *Salvatore* and *Germano* have been cited multiple times since the amendment to the NYCHRL for the very propositions utilized by the Everyrealm Defendants. *Salvatore v. KLM Royal Dutch Airlines*, No. 98-CV2450 (LAP), 1999 U.S. Dist. LEXIS 15551 (S.D.N.Y. Sept. 30, 1999); *Germano v. Cornell Univ.*, No. 03 Civ. 9766, 2005 U.S. Dist. LEXIS 17759 (S.D.N.Y. Aug. 17, 2005). *See, e.g., Orrego v. Knipfing*, 564 F. Supp. 3d 273, 283 (E.D.N.Y. 2021) (citing *Salvatore*); *Brandenberg v. Greek Orthodox Archdiocese of N. Am.*, No. 20-CV-3809 (JMF), 2021 U.S. Dist. LEXIS 102800, at *20 (S.D.N.Y. June 1, 2021) (citing *Salvatore*); *Hernandez v. Coca Cola Refreshments USA, Inc.*, No. 12 Civ. 234 (BMC), 2013 U.S. Dist. LEXIS

*Kraiem v. Jonestrading Institutional Services LLC*, the sole case cited affirmatively by Yost on this point is readily distinguishable and offers no support for her position. In *Kraiem*, the plaintiff alleged that she had been subject to allegedly harassing conduct in London, England; Dallas, Texas; Greenwich, Connecticut and New York City.  As to the alleged conduct in New York City, the plaintiff alleged far more occurring in New York than does Yost. 492 F. Supp. 3d 184, 190–192 (S.D.N.Y. 2020).  Kraiem alleged she was ostracized and gossiped about while in New York by co-workers because of her prior-relationship with a coworker (*Id.* at 191), and that: (i) co-workers "ogled photos of her"; (ii) her supervisor invited her to a client dinner only to retract the invitation because "the dress code was 'cool and sexy.' So you better not come", and when she attended the dinner her boss introduced her as the head of fashion, asked her if her dress was lingerie, told her he didn't know how she could "wear underwear under that [dress]", and he took a photo of plaintiff with the client to suggest the client would change accounts because of how she looked; (iii) she complained to her supervisor that he had made her look bad in front of clients, picked on her and used her as a punching bag, and the supervisor apologized; (iv) shortly after the dinner, the plaintiff agreed to have drinks with a client and another supervisor, where the client propositioned the plaintiff by saying "come with me to the toilet and I'll go down on you", and when plaintiff reported the statement to her supervisor – he apologized but made light of the situation by suggesting he would request a big check from the client the following Monday; and, (v) then, the next day, the supervisor joked about the client's remark at the office and took no further steps. *Id.* at 191–192.  Based on that alleged conduct within New York City, the court permitted the plaintiff to proceed with NYSHRL and NYCHRL claims.  The court "dismisse[d] the NYSHRL and NYCHRL claims based on conduct outside of New York." *Id.*  Here, no

---

172400, at *3 (E.D.N.Y. Dec. 6, 2013) (citing *Germano*). And, *Lambui v. Collins*, relied on by the Everyrealm Defendants, is indisputably both recent and on point. No. 14-CV-6457, U.S. Dist. LEXIS 136329 (E.D.N.Y., Sept. 30, 2015).

one allegedly propositioned Yost for sexual encounters, made light of such conduct in the workplace, "ogled" her, or made sexually inappropriate commentary regarding her clothing/appearance.  Moreover, under *Kraiem*, Yost cannot rely on the false allegations of harassing conduct that allegedly occurred outside New York to support her NYSHRL or NYCHRL claims.

Yost's recitation of her Second Amended Complaint does not alter the analysis. As the Second Circuit has held, the impact must actually be "felt by the plaintiff" within the geographic boundaries of New York City or State. *See Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016). Additionally, the claims arising outside of New York must be dismissed as a matter of course, leaving only the minimal allegations within New York that fall squarely within the analysis in *Salvatore*, and Yost's claim must be dismissed. (See doc. 41 at p. 24).

Indeed, Yost attempts to dispel the directly applicable holdings in *Lambui*, *Germano*, and *Salvatore* with mischaracterizations. Although she asserts that "substantial" portions of the harassment in those cases occurred outside of New York, that does not change their collective holding that isolated incidents of purported harassment in New York, like those here, are insufficient to invoke the NYSHRL and NYCHRL.

**D.      The Court Should Reject Yost's Contradictory Assertions.**

Yost unsurprisingly urges the Court to ignore what is plain for all to see; that she has manufactured a sex harassment claim solely in response to the Everyrealm Defendants' assertion of their rights to proceed in an arbitral forum.  In this regard, her assertions have dribbled out over a series of filings – presenting a constantly shifting moving target – all with the aim of avoiding arbitration.

On June 20, 2022, Yost resigned from her employment with Everyrealm, some six months after commencing work as an independent contractor and then full-time employee. (See doc. 41 at p. 8). Yost harassed almost the entire staff with lurid details of her own sex life. Specifically holding herself

out as both an HR professional and also a "life coach," she encouraged employees to talk about their sex lives to her. (Id. at p. 9). She was reprimanded for this conduct but continued such behavior until her resignation to the noted discomfort of many employees including college-aged interns.

At no time during her employment or in her subsequent correspondence with the company or its executives did Yost ever allege sexual harassment, discrimination or any of the claims she now purports to be true. Specifically, she made no allegation of any discrimination by the company or its executives. Notably, plaintiff does not point to the existence of any documentary evidence (or witness declaration) – nothing – that would support any of her fabricated allegations.

On July 11, 2022, in his letter to Everyrealm, counsel for Plaintiffs referred to "roughly ten former and current employees interviewed in our ongoing investigation [who] have confirmed with data, screenshots, documents, and anecdotes that a toxic work environment exists at Everyrealm", yet he points to no documentary evidence that would support plaintiff's pleadings.

Moreover, in her post-termination letter to Everyrealm (via counsel), Yost failed to assert any purported sexual harassment allegations, contending only that Mrs. Yorio attempted to revise the company's unlimited paid time-off policy in the face of Ms. Yost's protests and ultimate resignation. (See doc. 38-2). In her draft Complaint, Complaint and Amended Complaint, Yost alleged no instances of sexual harassment or discrimination, offering only that Yorio deemed Ms. Yost, an alleged open-bisexual, an expert on others' sexual orientations. (See docs. 1 ¶¶ 95-104 & 4 ¶¶ 95-104).

Yost has manipulated her claims to such a degree that she cannot keep her story straight. Indeed, on September 6, 2022 Yost asserted that "Ms. Yorio's sexually harassing and discriminatory comments regarding male employees being 'castrated' and Ms. Yost's pay indicate a discriminatory motive towards all of Defendants' pay decisions, not just those made once Ms. Yost became a W-2 employee. These claims and others (e.g., state and local pay discrimination and aiding and abetting

11

claims) predate the [January 31, 2021] employment agreement." (See docs. 15 at p. 16; 18 at pp. 9–10). When confronted with the admission, Yost contradictorily declared under the penalty of perjury that "[n]one of the sexually harassing misconduct I allege occurred prior to March 3, 2022." (See doc. 25 at ¶ 3).[7]

On November 16, Yost changed her position once more, and stated that, "[t]hese are just the sexual harassment that is alleged in NYC, let alone the remaining serious instances [of sexual harassment] that occurred elsewhere in which CEO told Kathy that she could not earn more than men at the company repeatedly referring to Kathy's male coworkers' genatalia [sic], or lack thereof."[8] (See doc. 58 at p. 12).

Yost's newest allegations are glaringly absent from Yost's prior statements, initial pleading and other filings with this Court, as well as her Sworn Charge of Discrimination. When Defendants moved to compel arbitration, by opposition dated September 6, 2022, Yost's papers offered nothing to expand upon these paper-thin allegations other than to add that Mrs. Yorio stated that men in New York City are "castrated". (See doc. 15 at p. 16). Not until this Court provided Plaintiff's counsel the opportunity to further amend her pleadings, by her Second Amended Complaint dated October 14, 2022, did Plaintiff finally include allegations that she contends constitute sexually harassing and inappropriate gossip regarding employees' sex lives. (See doc. 35 at ¶¶ 61–71 & 73–80). The Court need not accept these allegations as true. (See doc. 41 at p. 24).

Moreover, as Yost relies exclusively on alleged communications between herself and Mrs. Yorio to support her sexual harassment claim, she cannot, in turn, assert that communications between

---

[7] Under 18 U.S.C. § 1621(2), a person commits perjury when "in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, [she] willfully subscribes as true any material matter which [she] does not believe to be true."

[8] These bogus allegations do not ring in sexual harassment. (See doc. 36 at FN 4).

them (as to which she raises no question of authenticity) demonstrating the falsity of her assertions are not "integral" to her claim.  While the Court need not refer to this factual record to decide this motion, it can certainly be informed by it.  *See Cano*, 2021 U.S. Dist. LEXIS 188634 at *2 n. 2.

The Court should reject Yost's contradictory assertions.

## ARGUMENTS RAISED BY PUBLIC JUSTICE *ET AL.*

The Court should reject the belated, misguided arguments raised by Public Justice *et al.* ("the *Amici*"). Their tardy assertions should not change this Court's prior decisions and directives to the parties, much less the text of the legislation. Indeed, the *Amici*'s central argument that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("the EFA Act") prohibits arbitration for once and for all the moment a plaintiff merely utters the phrase "sexual harassment" – regardless of whether such a claim is even plausible, much less capable of surviving summary judgment – is nowhere in the text of the legislation and bereft of any legal support (let alone common sense).[9]  Under the EFA, once there is no "sexual harassment dispute," all remaining arbitrable claims belong in arbitration. Any suggestion otherwise is absurd. And that is not the only completely unsupportable position advanced by the *amici*.  Although the EFA expressly preserves the definitions of sexual harassment under federal, tribal and state law, the *Amici* interpret the legislation to include disputes regarding gender/sex-based pay discrimination, denied promotions, and disparate treatment – regardless of whether these claims are tied to a claim of "sexual harassment." This preposterous assertion far exceeds the plain scope of the statute. And, the *Amici* omit any reference to the extensive legislative history indicating that the statute is to be narrowly construed, making it clear that it applies *only* to claims of sexual harassment and any related claims – and not to the entire "case."

---

[9] As this Court has previously noted, the Second Circuit addresses motions to compel arbitration under a summary judgment-like standard.

A.      **The _Amici_'s Tardy, Misguided Arguments Should Be Rejected As A Matter Of Course.**

On November 22, 2022, _Amicus_ Public Justice sought leave to file briefing in the context of the briefing of a Rule 12(b)(6) motion addressing Yost's sexual harassment claim. As the Court alluded to in its Order permitting the _Amicus_ filing, Public Justice's brief arrives after the issues that it stated it was going to address have already been examined at length by the Court.  Indeed, the arguments in their papers have been briefed extensively, and the Court should give no weight to their views at this late stage. (See doc. 18 at pp. 8–11).

Collectively six briefs have been filed by the parties in this matter alone on the propriety of arbitration, dating back five months ago to the August 12, 2022 Everyrealm Defendants' Order to Show Cause to Compel Arbitration. (See docs. 10, 15, 18 24, 29 & 33). The Court resolved to provide Yost a final opportunity to amend her Complaint regarding sexual harassment (which she has since done), and the Everyrealm Defendants a chance to move to dismiss Yost's sexual harassment claims under the _Iqbal/Twombly_ plausibility standard. And, if the Motion to Dismiss was granted, this Action would be compelled to arbitration – if not, the _status quo_ would remain.[10] The _Amici_ simply missed the boat.

Timing aside, although the _Amici_ sought leave only to brief issues limited to the EFA Act, [11] they instead also addressed whether sexual harassment claims have been asserted and mischaracterized the Everyrealm Defendants' position on that subject along the way.[12] The Court should not entertain

---

[10] The Court stated, "I think the next move . . . is for you to amend your complaint if you intend to try to augment those [sexual harassment] allegations. . . . If you have anything more to say in support of your sexual harassment claims, factually or legally, this is the time to amend to say it. And I would then propose to give the defense an opportunity to move against it, for you to oppose, and for the defense to reply, and I will then, once and for all, resolve, based on that set of submissions, whether your complaint plausibly pleads a sexual harassment dispute within the meaning of EFA and, on the basis of that determination, make a judgment about arbitrability." (See doc. 61).

[11] The _Amici_ sought briefing because, "this case raises consequential questions of first impression and because Public Justice and other organizations involved in advocating for EFASASHA can provide important context for answering those questions." (See doc. 62 at p. 2).

[12] The Everyrealm Defendants' argument is not (as suggested by _Amici_) that one plaintiff here is a man and one is a woman, but that facially neutral comments were made to both plaintiffs – one of whom is a man and the other a woman, and therefore neither plaintiff can establish they were purportedly harassed "because of" their sex. _See Brennan v. Metro. Opera_

the *Amici*'s arguments as to the merits of the sexual harassment claims. *See SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832 (AT), 2021 U.S. Dist. LEXIS 190855, at *15 (S.D.N.Y. Oct. 4, 2021) (quoting *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970) ("An amicus who argues facts should rarely be welcomed.")).

**B.**     **The EFA Was Designed To Encompass "Claims" Of Sexual Harassment, And, Should Any Claim Subject To The Legislation Survive A Rule 12 Motion, All Unrelated Claims Should Be Severed And Compelled To Arbitration.**

*Amici* selectively quote from the EFA's legislative history to support their assertion that once the words "sexual harassment" have been uttered by a plaintiff, the plaintiff's entire case must generally remain for all time in court (notwithstanding a binding arbitration provision).  But comments by certain Senators key to passing the EFA expressed the opposing view. For example, Senator Ernst stated, "[W]e agreed that harassment or assault claims should not be joined to an employment claim without a key nexus. Harassment and assault allegations are very serious and should stand on their own. The language of this bill should be narrowly interpreted. It should not be used as a mechanism to move employment claims that are unrelated to these important issues out of the current system . . . it is also very important to me that those claims stand separate from any other kind of claim."[13]  Senator Graham likewise stated, "We do not intend to take unrelated claims out of the contract" and warned lawyers of trying to game the system (as has been the case here), "if lawyers try to game the system, they are acting in bad faith. They could be subject to disciplinary proceedings by courts. What we are not going to do is take unrelated claims out of the arbitration contract. So if you have got an hour-and-wage dispute with the employer, you make a sexual harassment, sexual assault claim, the hour-and-

---

*Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999) ("A plaintiff must demonstrate that she was subjected to the hostility because of her membership in a protected class. In other words, an environment which is equally harsh for both men and women . . . does not constitute a hostile working environment under the civil rights statutes.")

[13] 168 Cong. Rec. S625 (daily ed. Feb. 10, 2022).

wage dispute stays under arbitration unless it is related." *Id.*  Important Democrats (Senators Durbin and Gillibrand) made it clear that they understood and agreed with these concerns. *Id.* at S626-627. Despite the appearance of the word "case" once in the statute, the legislation was very clearly meant to encompass only "claims" related to sexual harassment or sexual assault.[14] And as has been addressed previously, there are no "related" claims in this lawsuit. (See doc. 18 at pp. 8–11). Despite the *Amici*'s (and Yost's) conclusory statements that Yost was harassed because of her sex, sexuality and caregiver status, there is not a single factual assertion in her Second Amended Complaint to substantiate this outrageous allegation.

The *Amici*'s argument does not hold water, and should be rejected.

**C.    A "Sexual Harassment Dispute" Does Not Encompass Every Claim Based On Gender Or Sex.**

A "Sexual Harassment Dispute" does not include any claim for "unequal treatment on the basis of sex", or any claim "related" to such unequal treatment.[15] The Court should reject this overbroad assertion.

The EFA provides that, "[t]he term `sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4).  In discussing this sub-section, Senator Durbin stated, "[The EFA] will not change the law around what constitutes sexual harassment or assault." 168 Cong. Rec. S626 (daily ed. Feb. 10, 2022) (statement of Sen. Richard Durbin). Under New York City law, the most broadly and remedially

---

[14] While the Everyrealm Defendants acknowledge the Court's observations regarding the meaning of "case" during the October 6 conference, they do not concede that the use of the word "case" mandates the litigation of claims unrelated to sexual harassment in court in the face of an arbitration agreement.

[15] The *Amici* cite a number of paragraphs in Yost's Second Amended Complaint as evidence of "related" claims ("Both Plaintiffs allege they were terminated in part for opposing or reporting sexual harassment. . . . "), but such an argument fails for a number of reasons, including that the *Amici*'s assertions are simply wrong. Yost does not assert she complained regarding, or objected to, purported sexual harassment. Nor does she claim she was retaliated against in response to such protected activity.

purposed at issue in this litigation, "'[d]espite the popular notion that "sex discrimination" and "sexual harassment" are two distinct things, it is, of course, the case that the latter is one species of sex- or gender –based discrimination.'" *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 75 (1st Dep't 2009). The same is also true under federal law. *See Vails v. Police Dep't*, 54 F. Supp. 2d 367, 375 (S.D.N.Y. 1999) ("Sexual harassment is a form of gender discrimination . . . ."). All sexual harassment is sex discrimination, but not all sex discrimination is sexual harassment. Public Justice *et al.* falsely equate the two as identical.

Indeed, the *Amici* devoted almost three pages mischaracterizing the Everyrealm Defendants' argument in stating that "'Sexual Harassment' is Not Limited to Harassment Based on Sexual Desire." (See doc. 71 at p. 17).  It is true that Yost fails to state a claim for sexual harassment under state, city and federal law because she does not allege any sexual propositions or physical acts against the Everyrealm Defendants. But Yost's claims also fall short because she does not allege any, let alone legally sufficient, assertions regarding inappropriate comments or remarks concerning her own gender or sex. Even accepting her false allegations as true, Yost was subject to, at worst, petty slights and trivial inconveniences. The *Amici* would have it that any and all assertions of purported sex discrimination and claims stemming therefrom (or even in the same legal/factual stratosphere) constitute a "Sexual Harassment Dispute", but that is not the law.

The Court should reject this argument.

## D.   Once The Sexual Harassment Claim Is Dismissed, The Action Should Be Compelled To Arbitration.

As decided by the Court, once/if the sexual harassment claim is dismissed, this Action should be compelled to arbitration. Even ignoring this fatal flaw, the *Amici*'s argument that this case must stay with the Court notwithstanding the potential dismissal of the sexual harassment claim fails.

The *Amici*'s citation to Carrie's Law as evidence of legislative intent should be ignored. Carrie's Law was drafted only to encompass claims of sexual assault – not harassment – and it was introduced by a single Republican House Representative with no co-sponsors, never made it out of subcommittee, and was never introduced in the Senate. It is thus clearly distinguishable. Carrie's Law, H.R. 2906, 117th Cong. § 402(b)(2)(A) (Apr. 30, 2021). What it said (or didn't say) is of no consequence here. Nevertheless, had Congress intended the result urged by the *Amici*, it would have so written. Accepting the *Amici*'s interpretation *arguendo* – cases in which sexual harassment claims had long since been dismissed would have to proceed to trial – the EFA would thus be warped into the FAIR Act, and prohibit arbitration of any employment based dispute so long as the words "sexual harassment" appear on the complaint. Indeed, Senator Ernst expressly rejected the *Amici*'s position on the Senate floor: "If an employment agreement contains a predispute arbitration clause and a sexual assault or harassment claim is brought forward in conjunction with another employment claim and the assault or harassment claim is later dismissed, a court should remand the other claim back to the arbitration system under this bill." 168 Cong. Rec. S626 (daily ed. Feb. 10, 2022) (statement of Sen. Joni Ernst).  As discussed throughout, there are no "related" claims here, and once Yost's sexual harassment claim is dismissed – the remainder of this action is arbitrable. The only concrete example discussed in the legislative history of a related claim is retaliation following an employee's complaint about sexual assault. 168 Cong. Rec. S626-S627 (daily ed. Feb. 10, 2022) (statement of Sen. Richard Durbin). As set forth above, such a claim has not been pleaded here.

The *Amici*'s reliance on Rule 11 as a preventative measure for bad faith invocations of the EFA is hollow.  From the *Amici*'s perspective, even if a party violates Rule 11 in pleading frivolous sexual harassment claims, the entire case must remain in court, *unless* "[c]ourts . . . adopt a rule . . . that EFASASHA does not apply *only* if the purported sexual harassment allegations were 'immaterial and

made solely for the purpose of obtaining jurisdiction' or were 'wholly insubstantial and frivolous.'" (See doc. 8 at n. 4) (emphasis added). To be clear, the EFA specifies no such test. The *Amici* liken application of the EFA to federal question jurisdiction, however, they fail to acknowledge that in matters where federal jurisdiction is invoked on this ground, and the federal claims are dismissed, generally the case is either remanded to state court (here, arbitration) or dismissed entirely (i.e., the parties would then initiate arbitration).[16]

Once the Court dismisses Yost's sexual harassment claim, this Action should be compelled to arbitration.

**E.      The Court Should Consider Any Materials Admissible Under Rule 12 Of The Federal Rules Of Civil Procedure When Addressing The Adequacy Of A Sexual Harassment Claim Under The EFA.**

An argument that affirmative defenses and extrinsic evidence may not be considered at the Motion to Dismiss stage is not based in reality. Apparently concerned that Yost's claims are indeed nothing more than "petty slights and trivial inconveniences", Public Justice suggests that the Court is somehow precluded from relying upon this legal standard in deciding this motion.[17] This argument is faulty on a number of grounds.

First, as set forth in the Everyrealm Defendants' moving brief, courts in New York and within the Second Circuit routinely accept argument on the "petty slights and trivial inconveniences" point at the pleadings stage, even though the language is derived form an affirmative defense. (See doc. 34 at pp. 16–17). While Public Justice *et al.* suggest that the Court must only consider the "four corners" of the Complaint (and no affirmative defenses), courts regularly consider affirmative defenses asserted in

---

[16] *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

[17] Notably, Yost herself has not taken the position that the Everyrealm Defendants' "petty slights and trivial inconveniences" argument should not be considered at the Motion to Dismiss stage.

a Rule 12 Motion. *Iowa Pub. Emps.' Ret. Sys. V. MF Global, Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010) ("'An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint.'").

Second, as described thoroughly in the Everyrealm Defendants' Motion to Dismiss and *supra*, courts need not accept as true conflicting or incoherent pleadings. Despite the *Amici*'s wishes, the EFA did not amend the Federal Rules of Civil Procedure to allow a plaintiff to submit contradictory and false allegations, and merely by uttering the words "sexual harassment", avoid arbitration of their claims.

The Court should decline to adopt the *Amici*'s argument.

## CONCLUSION

The Court should dismiss Yost's sexual harassment claim, and compel the remainder of this Action to arbitration.

Dated:  New York, New York
          December 16, 2022

                                  PROSKAUER ROSE LLP

                          By:     */s/ Lloyd B. Chinn*

                                  Lloyd B. Chinn, Esq.
                                  Eleven Times Square
                                  New York, New York 10036-8299
                                  Ph. (212) 969-3000
                                  Fax (212) 969-2900
                                  lchinn@proskauer.com
                                  *Attorney for Everyrealm Inc. (f/k/a Republic Realm Inc.), Janine Yorio, William Kerr & Zach Hungate*