UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

KATHERINE YOST,                                          :
                                                         :
                              Plaintiff,                 :
                                                         :
          -against-                                      :    Case No. 1:22-cv-06549(PAE)(GWG)
                                                         :
EVERYREALM INC., COMPOUND ASSET                          :
MANAGEMENT LLC, REALM METAVERSE                          :
REAL ESTATE INC., REPUBLIC, REPUBLIC                     :
CRYPTO LLC, REPUBLIC REALM MANAGER                       :
LLC, REPUBLIC REALM INC., REPUBLIC                       :
OPERATIONS LLC, OPENDEAL INC.,                           :
OPENDEAL PORTAL LLC, JANINE YORIO in                     :
her individual and professional capacities,             :
WILLIAM KERR in his individual and                       :
professional capacities, and ZACH HUNGATE in            :
his individual and professional capacities.             :
                                                         :
                              Defendants.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS EVERYREALM INC., JANINE YORIO, WILLIAM KERR, AND ZACH HUNGATE'S RULE 11 MOTION FOR SANCTIONS AGAINST PLAINTIFF KATHERINE YOST AND SEPPINNI, LLP

February 14, 2023

Lloyd B. Chinn, Esq.
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
Tel. (212) 969-3000
Fax. (212) 969-2900
E-mail: lchinn@proskauer.com

*Attorneys for Defendants Everyrealm Inc.,*
*Janine Yorio, William Kerr, and*
*Zach Hungate*

## **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ...................................................................................................... 4

I.     Yost's Initial Demand Letter Setting Forth Her Claims Against The Everyrealm Defendants And Her Sworn Allegations Against Them Did Not Involve Sexual Harassment. ......................................................................... 4

II.    Yost's Claims Of Sexual Harassment First Appeared After The Everyrealm Defendants Notified Her Counsel Of Their Intent To Compel Arbitration. ........................ 6

III.   Yost's Claims Of Sexual Harassment Are Contradicted By Her Own Contemporaneous Writings. ...................................................................... 7

IV.    Yost's Counsel Publicized Frivolous Claims With TechCrunch. ...................................... 11

ARGUMENT ......................................................................................................... 11

I.     Yost's Claims Are Factually Frivolous. ....................................................... 12

II.    Yost's Claims Are Legally Frivolous. ......................................................... 15

III.   Yost And Her Counsel Asserted Her Claims For An Improper Purpose. ......................... 17

IV.    Dismissal And Monetary Sanctions Are Appropriate. ......................................... 20

CONCLUSION ...................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abner Realty, Inc. v. Adm'r of GSA*,
  No. 97 CIV. 3075 (RWS), 1998 WL 410958 (S.D.N.Y. July 22, 1998) ...........................17, 18

*Amorosa v. Ernst & Young LLP*,
  No. 03 Civ. 3902(CM), 2010 WL 245553 (S.D.N.Y. Jan. 20, 2010) ......................................13

*Brown v. Maxwell*,
  929 F.3d 41 (2d Cir. 2019) ...................................................................................................17

*Cameau v. Nat'l Recovery Agency*,
  No. 15-CV-2861, 2018 WL 4853050 (E.D.N.Y. Sept. 28, 2018) ...........................................13

*Carlton Grp., Ltd. v. Tobin*,
  No. 02-CV-5065 (SAS), 2003 WL 21782650 (S.D.N.Y. July 31, 2003) ...............................14

*Duff v. Pristine Servs., Inc.*,
  No. 19-CV-10423 (RA), 2021 WL 663981 (S.D.N.Y. Feb. 19, 2021) ...................................16

*Four Keys Leasing & Maint. Corp. v. Simithis*,
  849 F.2d 770 (2d Cir. 1988) ...................................................................................................15

*Galin v. Hamada*,
  283 F. Supp. 3d 189 (S.D.N.Y. 2017) .....................................................................................20

*Galonsky v. Williams*,
  No. 96 CIV. 6207 (JSM), 1997 WL 759445 (S.D.N.Y. Dec. 10, 1997) ...........................17, 19

*Gelfman Int'l Enters. v. Miami Sun Int'l Corp.*,
  No. 05-CV-3826, 2009 WL 2957849 (E.D.N.Y. Sept. 10, 2009) ...........................................13

*Gutierrez v. Fox*,
  141 F.3d 425 (2d Cir. 1998) ...................................................................................................13

*Healey v. Chelsea Res., Ltd.*,
  947 F.2d 611 (2d Cir. 1991) ...................................................................................................15

*LaVigna v. WABC Television, Inc.*,
  159 F.R.D. 432 (S.D.N.Y. 1995) ............................................................................................15

*Morley v. Ciba-Geigy Corp.*,
  66 F.3d 21 (2d Cir. 1995) ......................................................................................................17

*Murray v. Dominick Corp. of Can., Ltd.*,
117 F.R.D. 512 (S.D.N.Y. 1987) .........................................................20

*Pereira v. 3072541 Can. Inc.*,
No. 17-CV-6945, 2018 WL 5999636 (S.D.N.Y. Nov. 15, 2018)............................13

*Regents of the Univ. of Cal. ex rel. UC Davis Health Sys. v. Stidham Trucking Inc.*,
No. 16-cv-02835, 2017 WL 3840259 (E.D. Cal. Aug. 31, 2017)............................13

*Safe-Strap Co. v. Koala Corp.*,
270 F. Supp. 2d 407 (S.D.N.Y. 2003)...................................................20

*Salovaara v. Eckert*,
222 F.3d 19 (2d Cir. 2000)..............................................................13

*Sosa v. Medstaff, Inc.*,
No. 12 Civ. 8926 (NRB), 2013 WL 6569913 (S.D.N.Y. Dec. 13, 2013)..............................16

*Sussman ex rel. Guilden v. Bank of Isr.*,
56 F.3d 450 (2d Cir. 1995)..............................................................19

*Watkins v. Smith*,
No. 12 CIV. 4635 DLC, 2013 WL 655085 (S.D.N.Y. Feb. 22, 2013)....................................14

*Williams v. N.Y.C. Hous. Auth.*,
61 A.D.3d 62 (1st Dep't 2009) ..........................................................16

*Williamson v. Recovery L.P.*,
542 F.3d 43 (2d Cir. 2008)..............................................................12

## STATUTES

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act,
9 U.S.C. §§ 401, 402............................................................. passim

Fair Labor Standards Act, 29 U.S.C. §§ 201–09 ........................................15

New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ............................16

New York State Human Rights Law, N.Y. EXEC. LAW § 296....................................16

## OTHER AUTHORITIES

168 Cong. Rec. S627 (daily ed. Feb. 10, 2022) (statement of Sen. Kirsten Gillibrand)................................................................................4

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure, Civil Procedure* § 1337.1  (4th ed. 2018) ........................................................................14

Fed R. Civ. P. 11 ................................................................................... passim

Fed. R. Civ. P. 11(b) ................................................................12, 13, 15, 17

Fed. R. Civ. P. 11(c) ................................................................................14, 20

Fed. R. Civ. P. 12 .............................................................................................20

Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 17(A)(2)(a) (3d ed. 2000) ........................................................................................14

## PRELIMINARY STATEMENT

Plaintiff Katherine Yost's sexual harassment claim rests on a series of fabrications designed to coerce a multi-million-dollar settlement out of Everyrealm Inc. ("Everyrealm" or the "Company") and individually-named defendants Janine Yorio, William Kerr and Zach Hungate (collectively with Everyrealm, "the Everyrealm Defendants"), as well as a host of unrelated entities having no connection to her employment with Everyrealm.  To that end, she has now pressed demonstrably false charges of sexual harassment in her Second Amended Complaint (the "SAC") to inflict maximum damage on the reputation of a nascent company, heedless of the organizational and human cost.  Setting aside their gross insufficiency as a matter of law, her newest, contrived allegations of sexual harassment are demonstrably false and flatly contradicted by her own words, as documented in incontrovertible evidence.  Without question, Yost knew that her claims of sexual harassment were false at the time she made them, and her counsel either knew or should have known through the most basic investigation that such claims were false.

It defies the simplest of logic that the "sexual" harassment Yost experienced while at Everyrealm was somehow so hostile, but yet she (i) never complained of it while employed (even though she wrote Everyrealm's anti-harassment policies and reporting protocols), (ii) didn't refer to it in the notes she wrote to Everyrealm the day of and the week after she resigned and (iii) didn't mention it in her July 11 demand letter. The malicious intent behind Yost's sexual harassment allegations is manifest: it was only after the Everyrealm Defendants provided Yost with notice of her obligation to arbitrate that—out of whole cloth—she fabricated a new narrative involving allegations of sexual harassment and publicly filed those allegations before this Court. Indeed, despite having never raised any issue of sex harassment while employed and having failed to advance a single assertion of purported sexual harassment in her demand letter,

Yost's Action has morphed into one now focused predominately on sexual harassment. Notwithstanding this absurd deviation, the documentary evidence contradicts Yost's claims that she was offended by the slanderous assertions advanced regarding Mrs. Yorio and others.

Despite deeming it appropriate to sue thirteen defendants (and prematurely rushing to the courthouse to file this lawsuit before the exhaustion of her administrative remedies and her contractual obligation to arbitrate), Yost made no effort to serve any of the Non-Employer Defendants until October 26, 2022—eighty-five days after the inception of this lawsuit. Yost only named these entities in the hope that doing so would create pressure for Everyrealm to settle. Indeed, Plaintiff's counsel advised the Court on October 6, 2022 that "We'll serve [the Non-Employer Defendants] as soon as possible," but twenty additional days passed before some of the Non-Employer Defendants were served, with several still never having been served.[1] Strikingly, Plaintiff's counsel then sat for an interview with the publication TechCrunch to discuss Yost's new allegations of sexual harassment the *very same day* he filed the SAC – prior to serving any of the Non-Employer Defendants, and despite having advised the Court that he lacked the "energy" to hire a process server to serve the Non-Employer Defendants. (See doc. 61).[2]

On January 11, 2023, the Everyrealm Defendants notified Yost of their intent to seek Rule 11 sanctions for her actions and described for her the array of evidence showing the falsity

---

[1] Plaintiff's counsel determined to voluntarily dismiss the Non-Employer Defendants in *Johnson v. Everyrealm, et al.*, and he immediately provided a statement to Law360 on that subject.

[2] Yost falsely asserted to the Court on November 30, 2022 that she had, "amended her complaint upon this Court's Order solely on the issue of sexual harassment and was careful not to exceed this Court's prescribed scope." (See doc. 64 at pp. 22–23).  But in fact, she had sought to shoehorn additional arguments addressing arbitrability into her Second Amended Complaint. (See doc. 35 at ¶ 60 ("' . . . **the EEOC will issue a Right to Sue letter permitting the individual to file a complaint in federal court** . . . . **Federal courts may award remedies if discrimination is found to have occurred.**'" (emphasis in original)). Yost's counter-part, Teyo Johnson, also advanced this manipulated quote in opposition to Defendant Kerr's Motion to Join the Everyrealm Defendants' Motion to Compel Arbitration. (See doc. 51 in *Johnson v. Everyrealm, et al.*).

of her sexual harassment claim and her fraudulent attempt to avail herself of the newly-passed

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("the EFA Act")—but

to date she has refused to withdraw this action. But Yost and her counsel had been placed on

notice of the documentary evidence revealing their lies long before. Throughout the Everyrealm

Defendants' Motion to Compel Arbitration filings, the Everyrealm Defendants made the falsity

of these assertions clear, but Yost and her counsel nonetheless pressed forward with her

malicious campaign to publicly smear the Everyrealm Defendants and fraudulently invoke the

EFA Act.

Yost's SAC is nothing more than a web of fabricated allegations of inconsequential

sexual chatter that either never occurred at all or that have been distorted beyond recognition.

And these lies have been leveled only for the purposes of trying to avoid arbitration and extort a

wholly unwarranted multi-million-dollar-settlement.  Yost and her counsel violated Rule 11 by

filing knowingly frivolous and false claims for an improper, malicious purpose.  Indeed, Yost's

counsel is especially culpable because he knew that he had no basis to file Yost's contrived

claims in federal court, but he did so anyway in order to stir up media attention[3] and to pressure

Everyrealm into paying a large sum in settlement.

Rule 11 was designed for exactly this type of case. Instead of asserting good-faith claims,

Yost and her counsel have abused the court system in an attempt to coerce a settlement and to

smear a young company on the forefront of groundbreaking technology with false and frivolous

claims under the cloak of litigation privilege. Sanctions are particularly appropriate here given

---

[3] In fact, Yost's counsel has spoken to the press approximately ten times since his original filing, including eliciting two feature-length articles in industry publications (including one at which another of his clients has a byline). *See* https://seppinnilaw.com/#press. The reputational damage caused by these fabrications now lives forever on the internet and has had an impact on Everyrealm's business and future prospects.

Yost and her counsel's manipulation of the EFA Act. Indeed, *Amicus Curiae* Public Justice – a

self-described expert in the passage and application of the legislation – stated that Rule 11

sanctions are the appropriate remedy for a plaintiff's attempted misapplication of the legislation.[4]

To address this misconduct and deter it in the future, sanctions are appropriate.

## BACKGROUND

### I.  Yost's Initial Demand Letter Setting Forth Her Claims Against The Everyrealm Defendants And Her Sworn Allegations Against Them Did Not Involve Sexual Harassment.

Everyrealm engaged Yost, a Maryland-based remote employee, as a part-time

independent contractor beginning on December 16, 2021 and hired her full-time on January 31,

2022.  Yost voluntarily resigned in writing on June 20, 2022, and so she was thus engaged and/or

employed for roughly twenty-five weeks. During her five months of full-time employment,

Everyrealm paid Yost approximately $58,000.

Yost was employed as a Director of Human Resources. (See Mrs. Yorio Decl. at ¶ 2).  In

her role, Yost focused on onboarding, offboarding, and personnel policies. (See Mrs. Yorio Decl.

at ¶ 3).  Notably, Yost authored Everyrealm's anti-harassment policy, as well as the reporting

protocol for employees who believe they have experienced harassment. (See Mrs. Yorio Decl. at

¶ 4).

Following her resignation, Yost engaged in a series of written communications with

Everyrealm, none of which referenced sexual harassment. Immediately following her

---

[4] (See doc. 71 at p. 13 ("Defendants contend that interpreting the Act in this manner will result in plaintiffs rushing to add frivolous sexual harassment claims to their other employment claims to invoke EFASASHA. However, this concern is misplaced given that Federal Rule of Civil Procedure 11 and other ethical restraints on lawyers' practice will serve to strongly discourage those who are so inclined from adding frivolous allegations to a complaint." *See* 168 Cong. Rec. S627 (daily ed. Feb. 10, 2022) (statement of Sen. Kirsten Gillibrand) ("Victims here must follow the rules and plead a case correctly, and then they must also affirm to the Court that they have a good-faith basis for doing so. Attorneys must do the same thing. If victims and attorneys break those rules, they can be sanctioned in court . . . .")).

resignation, at 11:30 PM on June 25, 2022, Yost indicated that her resignation had been due to a potential change in the Company's vacation policy, but never referenced purported sexual harassment. As Yost wrote to Mr. Kerr: "I let Janine know I won't be staying on board. So whatever she decides that means I'm happy to help find someone new to take over. I'm really sorry this didn't work . . . I've also alerted [Mrs. Yorio] to the discriminatory nature of the draft [vacation] policy and language within it and advised her not to use it." (See Declaration of William Kerr ("Kerr Decl.") at Exh. A). Yost said nothing to Kerr about sexual harassment. (Id.). As the consequences of Yost's decision to resign dawned on her, she wrote three additional email messages to Mr. Kerr over the course of June 26, 2022 and June 29, 2022, and although those messages became ever more strident, she made not one mention of any alleged sexual harassment perpetrated by Everyrealm against her.  (Kerr Decl. at Exh. B).

On July 11, 2022, Yost (through counsel) served Everyrealm with a demand letter setting forth her claims against the Company. (See doc. 38-2). In the Demand Letter, Yost said not a single word about sexual harassment. (See doc. 38-2). In response to the Demand Letter, Everyrealm, via counsel, notified Yost's counsel of her obligation to arbitrate and even produced Yost's employment agreement (which contained an arbitration provision).[5] (See doc. 11-1).

Nevertheless, Yost filed her initial Complaint with this Court less than a month later on August 2, 2022. (See doc. 1). In her initial and First Amended Complaints,[6] as to any possible sexual harassment claim, Yost merely asserted that she was subjected to inquiries regarding certain employees' sex lives. (See doc. 4 at ¶¶ 95–105). On August 4, 2022, Yost, submitted her sworn Charge of Discrimination to the Equal Employment Opportunity Commission. (See doc.

---

[5] More recently, the Everyrealm Defendants located a third arbitration agreement, and produced it to this Court. (See docs. 79–80).

[6] Yost filed her Amended Complaint on August 4, 2022. (See doc. 4).

38-1). In her Charge, Yost "sw[ore] or affirm[ed] that [she] [] read the above charge and that it [wa]s true to the best of [her] knowledge, information and belief." <u>Yost's sworn Charge mirrored her First Amended Complaint</u>. At that time, Yost's frivolous sexual harassment claim was based on a few isolated inquiries by Mrs. Yorio regarding the sexuality (or the lack thereof) of <u>other</u> employees. (See doc. 35 at ¶ 61). As is discussed below, these assertions on their face do not constitute sexual harassment and, when considered in conjunction with contemporaneous writings by Yost, plainly were not viewed as such.

Notwithstanding the foregoing, on September 1, 2022 Yost demanded Everyrealm pay her $1.95 million to settle this action, which is equal to roughly thirty-three times the full-time salary paid to her by Everyrealm.

## II.   Yost's Claims Of Sexual Harassment First Appeared After The Everyrealm Defendants Notified Her Counsel Of Their Intent To Compel Arbitration.

As explained above, it was not until after Everyrealm notified Yost of its intent to enforce its right to arbitrate that Yost first asserted she had been subjected to purported sexual harassment in a transparent attempt to fraudulently avail herself of the protections of the EFA Act. Moreover, the most recent allegations of sexual harassment appearing in Yost's SAC were completely absent from Yost's Demand Letter, Complaint, sworn Charge of Discrimination, Opposition to the Defendants' Motion to Compel Arbitration, Declaration in Support of her Opposition to the Defendants' Motion to Compel Arbitration, Sur-reply to Defendants' Reply in Support of its Motion to Compel Arbitration, Declaration in Support of her Sur-reply to the Defendants' Reply in Support of its Motion to Compel Arbitration or Motion for a Temporary Restraining Order and Preliminary Injunction. This is so even though: (i) the Defendants made it plain from their earliest filing that they challenged the sufficiency of any claim purportedly based on sexual misconduct (See doc. 10 at n. 1), (ii) the Court itself issued a September 16, 2022

6

Order providing in relevant part that, "it will evaluate the motion to compel arbitration under similar standards to a motion for summary judgment . . . and that Plaintiff should attach such materials as are necessary for the Court to resolve the Motion." (See doc. 23); and (iii) Yost used these prior filings to assert and continually expand on her allegations in an effort to avoid arbitration. (See doc. 24 at pp. 9–10 & 25 at ¶ 3).

Furthermore, Yost and her counsel initially conspired to manipulate Yost's claims to evade the arbitration agreement itself, and later, to circumvent the effective date of the EFA Act. On September 6, 2022 Yost asserted that "Ms. Yorio's sexually harassing and discriminatory comments regarding male employees being 'castrated' and Ms. Yost's pay indicate a discriminatory motive towards all of Defendants' pay decisions, not just those made once Ms. Yost became a W-2 employee. These claims and others (e.g., state and local pay discrimination and aiding and abetting claims) predate the [January 31, 2021] employment agreement." (See docs. 15 at p. 16; 18 at pp. 9–10). When confronted with the admission and its repercussions – that these claims predate the EFA Act's effective date, Yost changed her story and declared under the penalty of perjury that "[n]one of the sexually harassing misconduct I allege occurred prior to March 3, 2022." (See doc. 25 at ¶ 3). It is impossible for both of these positions to be true.

## III.   Yost's Claims Of Sexual Harassment Are Contradicted By Her Own Contemporaneous Writings.

In addition to the foregoing, Yost's claims are contradicted by her own contemporaneous writings.  Just as the alleged "sexual harassment" was purportedly concluding (See doc. 25 at ¶ 1(a)), Yost wrote to Mrs. Yorio:

> You continue to astound me with your tremendous resilience and desire to keep getting better. I am truly humbled to be a part of your journey. Thank you for reminding me of my own blindspots in

> comparing male/female executive relationships and the double
> standards even I still carry. Having you as a mirror in that respect is
> so valuable and helps me grow and I appreciate the way we've
> adopted (always maintained?) this authentic relationship. Letting me
> show up as I am - it means a lot.

(See doc. 39-1).  Further, in respect to Mrs. Yorio's purported inappropriate inquiry into Teyo

Johnson's sex life and girlfriend, Yost wrote to Mrs. Yorio via text message: "Look at you

blaming yourself for Teyo['s] misogyny like you encouraged [it]. All you did was engage about

a friend he introduced. We've been gaslit to believe we bring this all on. And it's horseshit." (See

doc. 39-2).  Moreover, in another conversation, Yost and Mrs. Yorio discussed Teyo Johnson's

inappropriate commentary via Everyrealm's Slack Instant Messenger application.  In the

messages, Yost wrote, "[Johnson] is a misogynist that's evident." (See doc. 39-3).  Mrs. Yorio

responded by stating, "when [Johnson] told everybody in the office (with disgust) that the girl

who he was crashing with had her period (insinuating that he couldn't sleep with her as a result)

that really put me off . . .that's across the line . . . ." (*Id.*) Yost replied, "I would have walked him

out into the hall and slammed him . . . I don't care how big anyone is." (*Id.*) Yorio then stated,

"maybe I started it . . . I was calling [Johnson's date] 'dog in a bag.'" (*Id.*) Yost then stated,

"[j]oking about a dog in a purse is not asking for sexual updates . . . It's gross and most people

(humans) know not to do this . . . ." (*Id.*)

Finally, Yost alleges that Mrs. Yorio "in no way related to Ms. Yost's duties, told Ms.

Yost that there was a rumor that employees named Rachel and Michael were sleeping together."

(See doc. 35 at ¶ 73). According to her Complaint, "Ms. Yost responded by saying that this

rumor is none of her concern if it is 'not affecting their work.' . . . The only reason Ms. Yorio

shared this rumor with Ms. Yost was to engage in sexually harassing and inappropriate gossip at

work." (Id. at ¶¶ 74–75).  These passages are complete and total fabrications, as is demonstrated by the written record of the referenced exchange.

Mrs. Yorio wrote to Yost concerning a potential interoffice romance, and their exchange proceeded as follows:

Mrs. Yorio:    we already have an interoffice romance…

                    i meant to talk to you about that

Yost:           omg who

Mrs. Yorio:    do we need a policy?

Yost:           no

Mrs. Yorio:    I heard some rumors

Yost:           well i heard the ceo and the head of product….[7]

Mrs. Yorio:    nothing I can be certain about

                    (emoji)

Yost:           lolllll

                    As long as no one violates our anti harassment policy i don't see what

                    another policy does

                    I've been doing this a while, and policies aren't worth the token Alex is

                    minting

. . .

Mrs. Yorio:    How'd you know Rachel?

Yost:           there's only a handful of women I figure Jacqueline has her hands full,

                    Katie doesn't seem to have time for a man

---

[7] Mrs. Yorio's husband, Jesse Yorio, is and was Everyrealm's Co-Head of Product.

or woman

Julia, I don't see her involved at work like that openly but I have no clue

so that leaves rachel

I mean Virginia might have game

but she's married

and as much as I try to call out bias, I suppose it could be two men

see I mess up all the time

Mrs. Yorio:  it's Rachel

Yost:  someone who lives in nyc or no that's the only question i have then i have

a guess

Mrs. Yorio:  michael p

Yost:  adorable

Mrs. Yorio:  you can't know

and yes i totally approve

Yost:  i don't and it's so apple pie isn't it

Mrs. Yorio:  so cute

both young and new to the city and just startingout [sic]

michael p is the best

he's so sweet

Yost:  he seems like he's headed in the right direction – very smart, sweet as all

get out

Mrs. Yorio:  yes hardworking, serious

i love him

10

mom raised him right

(See Declaration of Janine Yorio ("Yorio Decl.") at Exh. A). The contemporaneous written records thus reveal that paragraphs 73–75 contain outright sanctionable lies.  Mrs. Yorio raised the possibility of a workplace relationship with the then-head of Human Resources and inquired whether a policy was needed to address such situations – a request plainly related to Yost's responsibilities.  And Yost in no way objected to that request.  She instead responded with a joke, speculation about who might be involved and her opinion regarding the need (or lack thereof) for a policy.

Yost and her counsel should be sanctioned for pursuing claims premised upon factual assertions that are demonstrably false.

## IV.    Yost's Counsel Publicized Frivolous Claims With TechCrunch.

On the same day Yost's counsel filed the SAC, he sat for an interview with the publication TechCrunch and specifically discussed, notwithstanding the facts and history of the litigation, the "several new allegations of sexual harassment."  Yost's counsel knew, from his prior appearance before this Court, that depending upon the merits of the purported sexual harassment claim, this case could be compelled to arbitration. In an effort to stoke the flames of publicity for (possibly) the final time, he sought to publicize patently false allegations (that were created to avoid arbitration in the first instance) and thereby assert pressure on the Everyrealm Defendants to settle.  And he even went as far as to attach to the SAC anonymous, irrelevant, and incomplete screenshots that were purposefully prepared to generate attention. (See doc. 35 at p. 2).

## ARGUMENT

Rule 11 prohibits pleadings that are factually frivolous, legally frivolous, or submitted for an improper purpose.  Here, Yost and her counsel violated all three rules.

First, Yost asserted claims based on knowingly false factual allegations that were directly contradicted by her own words. After the Everyrealm Defendants served their draft Rule 11 memorandum of law, she failed to cure the violation and refused to withdraw her claims of sexual harassment.

Second, Yost also violated Rule 11 by asserting legally frivolous claims. The sexually tepid statements allegedly made in no way come close to amounting to sexual harassment; even if the conversations had happened in the manner alleged (which they did not), Yost does not even suggest (because she cannot) that the conversations were severe and pervasive or unwelcome.

Third, Yost's SAC was plainly calculated to serve improper purposes: to avoid arbitration, generate publicity, defame Defendants, and coerce a settlement. This is clear not only from the contortions undertaken to attempt to improperly invoke the EFA Act, and her naming of multiple entities with no connection to her claims, but also from the timeline of the evolution of her claims.

These circumstances make clear that her frivolous claims were a calculated move to use false statements as a litigation and publicity ploy and to coerce Defendants into acceding to multimillion-dollar settlement demands. The Court should impose sanctions.

## I. Yost's Claims Are Factually Frivolous.

Under Rule 11(b)(3), all "factual contentions" in a pleading must "have evidentiary support" or be "likely [to] have evidentiary support after a reasonable opportunity for further investigation or discovery." This prohibits parties and their counsel from making "false, misleading, improper, or frivolous representations to the court." *Williamson v. Recovery L.P.*, 542 F.3d 43, 51 (2d Cir. 2008). As this Court has recognized, "both a represented party and his

attorney can be sanctioned under Rule 11(b)(3) for the factual insufficiency of a complaint."
*Amorosa v. Ernst & Young LLP*, No. 03 Civ. 3902(CM), 2010 WL 245553, at *4 (S.D.N.Y. Jan.
20, 2010). Sanctions are especially appropriate when a party has "actual knowledge" of the
"wrongful conduct," including when the party knows that the pleading contains "false
statements." *Salovaara v. Eckert*, 222 F.3d 19, 33 (2d Cir. 2000).

Accordingly, courts award sanctions when a plaintiff's allegations are contradicted by
publicly available evidence or evidence in the plaintiff's own possession. *See, e.g.*, *Cameau v.
Nat'l Recovery Agency*, No. 15-CV-2861, 2018 WL 4853050, at *3 (E.D.N.Y. Sept. 28, 2018)
(imposing sanctions where a call transcript in plaintiff's possession contradicted "key factual
allegations in the Complaint"); *Regents of the Univ. of Cal. ex rel. UC Davis Health Sys. v.
Stidham Trucking Inc*., No. 16-cv-02835, 2017 WL 3840259, at **2, 7-9 (E.D. Cal. Aug. 31,
2017) (imposing Rule 11 sanctions where "allegations in Plaintiff's complaint [were] directly
contradicted by email evidence in Plaintiff's possession"). And in applying Rule 11, this Court
has found it "particularly concerning" when a plaintiff "take[s] unreasonable positions," "omit[s]
crucial facts," and "make outright misrepresentations," especially for the purpose of "extort[ing]
unwarranted settlements." *Pereira v. 3072541 Can. Inc.*, No. 17-CV-6945, 2018 WL 5999636, at
*3 (S.D.N.Y. Nov. 15, 2018).

Aside from knowing falsehoods, attorneys have an "affirmative duty . . . to conduct a
reasonable inquiry into the viability of a pleading before it is signed." *Gelfman Int'l Enters. v.
Miami Sun Int'l Corp.*, No. 05-CV-3826, 2009 WL 2957849, at *4 (E.D.N.Y. Sept. 10, 2009)
(quoting *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)). The inquiry must be
"objective[ly]" reasonable. *Id*. Indeed, even after the pleading is filed, if a party is provided
evidence establishing the frivolity of their claim(s) and nonetheless refuses to withdraw them,

they may be subject to sanctions. *See Carlton Grp., Ltd. v. Tobin*, No. 02-CV-5065 (SAS), 2003 WL 21782650, at *6 (S.D.N.Y. July 31, 2003) ("Rule 11 sanctions are appropriate where an attorney or party declines to withdraw a claim 'upon an express request by his or her adversary after learning that [the claim] was groundless.'").

A Rule 11 violation is typically complete at the time when the frivolous claim or allegation is filed. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure, Civil Procedure* § 1337.1 (4th ed. 2018). After a violation occurs, the responsible party may be sanctioned if the offending claim or allegation is not "withdrawn or appropriately corrected" within the safe-harbor period. Fed. R. Civ. P. 11(c)(2). If the offending party files an amended complaint that fails to cure the original violation, then sanctions may be sought and imposed without starting a new safe-harbor period. *See Watkins v. Smith*, No. 12 CIV. 4635 DLC, 2013 WL 655085, at *7 (S.D.N.Y. Feb. 22, 2013); Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 17(A)(2)(a) (3d ed. 2000).

Here, Yost and her counsel violated Rule 11 by making patently false and frivolous factual allegations in the SAC. Yost not only knew her allegations were false when she made them, but they are squarely refuted by statements that she made to Mrs. Yorio and Mr. Kerr.  In her Second Amended Complaint, Yost claims that Mrs. Yorio told Yost about Teyo Johnson's sexual relations with his girlfriend, and that she stated that two Everyrealm employees were in an amorous relationship—but these very allegations are refuted by Yost's very own praise of Mrs. Yorio in handling issues surrounding workplace conduct.  Indeed, Yost and Mrs. Yorio discussed Teyo Johnson's inappropriate commentary via Everyrealm's Slack Instant Messenger application, wherein Mrs. Yorio responded to Yost's claim of Johnson being a misogynist by stating that Johnson's statements "[]cross[ed] the line."  (*See supra* at p. 5.)  Moreover, rather

than find Mrs. Yorio harassing, Yost engaged in her a conversation about Johnson, and later stated that she was "truly humbled to be a part of [Mrs. Yorio's] journey" and "[t]hanked [her] for reminding [her] of [her] own blindspots in comparing male/female executive relationships and the double standards even [she] still carr[ied]."  (See id.)  Yost went on to praise Mrs. Yorio as someone who is "so valuable" and helps her "grow" with their "authentic relationship."  (See id.)  And, Yost's assertion that Mrs. Yorio purportedly sexually harassed her by discussing an amorous relationship between "Rachel" and "Michael" is an obvious fiction based on Yost's contemporaneous writings with Mrs. Yorio. Clearly, the intimation that Mrs. Yorio forced Yost to engage in unwelcome conversations of a sexual nature is an outright lie.

## II.   Yost's Claims Are Legally Frivolous.

In addition to her false factual allegations, Yost and her counsel also violated Rule 11 by asserting legally frivolous claims. Rule 11(b)(2) requires that any "claims" or "legal contentions" asserted by a party must be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." This provision prohibits parties from filing claims when "it is patently clear that [they have] absolutely no chance of success." *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991). Thus, a violation occurs when "it should have been patently obvious to any attorney who had familiarized himself [or herself] with the law" that the claim could not succeed. *Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770, 773 (2d Cir. 1988). For example, this Court has awarded sanctions when a plaintiff's "Title VII and FLSA claims [were] wholly frivolous" because there was "no good faith basis for arguing that [the plaintiff] should have a cause of action." *LaVigna v. WABC Television, Inc.*, 159 F.R.D. 432, 435-36 (S.D.N.Y. 1995).

15

Here, it was—or should have been—obvious to Yost's counsel that her claims were legally frivolous. Indeed, Yost asserts causes of action for sexual harassment in her Third, Fifth, Eighth and Tenth counts against "All Defendants", yet there is not a single factual assertion of sexual harassment against Mr. Kerr or Mr. Hungate.[8] And, when the Everyrealm Defendants noted as much in their Motion to Dismiss (See doc. 41 p. 5 at n. 5 & p. 6 at n. 8), Yost did not raise any argument in response.

Moreover, accepting all of Yost's lies as true, her purported "sex harassment" claim is not remotely plausible, whether under state, local or federal law.  Yost was never employed in New York state or city, so those laws do not apply here, and even if they did, her allegations do not come close to reaching the standards set forth by the NYCHRL or NYSHRL, let alone the "severe and pervasive" standard under federal law.  *See Sosa v. Medstaff, Inc.*, No. 12 Civ. 8926 (NRB), 2013 WL 6569913, at *5-6 (S.D.N.Y. Dec. 13, 2013) (dismissing Title VII race-based hostile work environment claim where plaintiff's claim was "based on only two comments," including "'You look like Urckle'" and "'You're so street, Eddie'"); *see also Duff v. Pristine Servs., Inc.*, No. 19-CV-10423 (RA), 2021 WL 663981, at *2 (S.D.N.Y. Feb. 19, 2021) (graffiti plaintiff encountered at the job site which "included a racial epithet derogatory to African Americans and a reference to the KKK" insufficient to prove hostile work environment). Further, Yost's newest allegations in the SAC purposefully conflate alleged gender and pay discrimination with sexual harassment even though sexual harassment is a discrete form of gender discrimination.  *See Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 75 (1st Dep't 2009) (recognizing that sexual harassment is "one species" of gender-based discrimination, indicating

---

[8] Yost makes generic allegations of "sexual harassment" against "Defendants", but advances no factual assertions in support. (See, e.g., doc. 35 at p. 15 ("Defendants Repeatedly Sexually Harasses [sic] Ms. Yost")).

not all gender-based discrimination constitutes sexual harassment).  Yost's allegations of sexual harassment are simply not legally cognizable.

## III.    Yost And Her Counsel Advanced Her Claims For An Improper Purpose.

Yost's false allegations and improper tactics were designed to harass the Everyrealm Defendants into acceding to her approximately two-million-dollar-settlement demand. Rule 11(b)(1) prohibits claims that are "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." As the Second Circuit has noted, courts must exercise "vigilance" to ensure that litigation does not "become a vehicle for improper purposes." *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019). Because the "legal process is already susceptible to abuse," courts must ensure that "[u]nscrupulous litigants" do not "weaponize" litigation to "humiliate and embarrass their adversaries" by "defam[ing] [them] in court pleadings or depositions without fear of lawsuit and liability." *Id.*

As a general matter, "the total lack of substance" of a plaintiff's claims itself "give[s] rise to the inference that the action was filed for improper purposes." *Abner Realty, Inc. v. Adm'r of GSA*, No. 97 CIV. 3075 (RWS), 1998 WL 410958, at *7 (S.D.N.Y. July 22, 1998). That is especially true when a plaintiff asserts "baseless claims as part of a public relations campaign in order to embarrass the defendants and thereby coerce a settlement." *Galonsky v. Williams*, No. 96 CIV. 6207 (JSM), 1997 WL 759445, at *6 (S.D.N.Y. Dec. 10, 1997). Thus, using frivolous filings to "intimidate the defendant into a large settlement" is "an improper purpose under Rule 11(b)(1)." *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995).

That is exactly what Yost and her counsel did here.  Yost manufactured allegations of sexual harassment only after the Everyrealm Defendants put her on notice of their intent to compel arbitration. She did so only to attempt to fraudulently invoke the EFA Act. Her counsel

sat for an interview with TechCrunch on the same day he filed Yost's SAC for the purpose of publicizing those bogus claims, which was clearly done in an effort to generate publicity, destroy the Everyrealm Defendants' reputations, and extort a settlement.

Importantly, the frivolous nature of Yost's claims speak for themselves. As explained at length above, the core factual allegations are not only knowingly false, but easily disproved based on documentary evidence—her very own words.  If Yost and her counsel did not know her claims were frivolous at the time of filing, they should have known through the most rudimentary investigation. And they certainly knew after the Everyrealm Defendants filed their Motion to Compel Arbitration, Reply in Support of their Motion to Compel Arbitration, Motion to Dismiss, Reply in Support of their Motion to Dismiss, as well as the numerous declarations and exhibits filed therewith, and subsequently served a Rule 11 letter along with a draft of this memorandum of law. In addition, Yost's claims are also legally frivolous because the allegations of sexual harassment were not pleaded with any support sufficient to meet the requisite standards.  The total lack of legal and factual support for her claims thus "give[s] rise to the inference that the action was filed for improper purposes." *Abner Realty*, 1998 WL 410958, at *7.

Moreover, Yost's baseless claims were asserted for the improper purpose of fraudulently invoking the EFA Act because, prior to being confronted with her obligation to arbitrate, she had plainly never intended to pursue any such claim.  Yost only warped this action into one regarding sexual harassment in the hopes that she could avoid arbitration, and that public scrutiny stemming from her claims with this Court would force the Everyrealm Defendants to settle.

Separately, Yost named a host of entities who have no connection to her employment with Everyrealm – hoping that the increased pressure from these parties would leverage a quick,

eye-popping settlement. Indeed, many of these parties have also moved to dismiss the claims against them.

Further, Yost's counsel's frequent sprints to the press reveal his and his client's improper purpose. When a complaint "lack[s] foundation in law or fact," then filing it "with a view to exerting pressure on defendants through the generation of adverse and economically disadvantageous publicity reflect[s] an improper purpose." *Sussman ex rel. Guilden v. Bank of Isr.*, 56 F.3d 450, 459 (2d Cir. 1995). Accordingly, "it is appropriate to consider" the "press" generated "by counsel in assessing the issue of his good faith in filing frivolous claims." *Galonsky*, 1997 WL 759445, at *6. Here, as explained above, Yost's counsel has spoken to the press approximately ten times since filing claims against the Everyrealm Defendants.[9] The improper purpose of generating false publicity was especially evident here because Plaintiff's counsel seized on Yost's patently false and frivolous claims to secure publicity (and thereby increase the pressure for a settlement); he also used Yost's false claims in an attempt to secure a multi-million-dollar-settlement. Indeed, he sat for an interview with TechCrunch and repeated the SAC's fabrications. He thus "made good on [the] threat he had previously made to defense counsel . . . that unless defendants paid him," they would face public allegations that would "cause [them] personal embarrassment" and serious reputational harm. *Galonsky*, 1997 WL 759445, at *3.

Indeed, Yost's counsel has stated to the press that he represents a multitude of former (and possibly current) Everyrealm Employees, but that claim is apparently false as well. According to the August 8, 2022 Decrypt article, Seppinni stated that "Johnson and Yost are 'two of the *numerous clients* we represent who intend to bring claims against Everyrealm,' and

---

[9] *Recent Press*, Seppinni LLP, https://seppinnilaw.com/#press (last visited Feb. 14, 2023).

that [Yost's counsel] has spoken to about 10 total current and former Everyrealm employees that have 'shared disturbing allegations,' he said." Yost's counsel only made his statements to generate negative publicity around the Everyrealm Defendants, as no more than four claimants have surfaced to date, and all of them appear to be conspiring together to bring false claims.

Yost and her counsel have thus advanced her claims for an improper purpose.

## IV.   Dismissal And Monetary Sanctions Are Appropriate.

Rule 11 permits a sanction of dismissal "for serious misconduct when lesser sanctions would be ineffective or are unavailable." *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 418 n.8 (S.D.N.Y. 2003); *see also Murray v. Dominick Corp. of Can., Ltd.*, 117 F.R.D. 512, 516 (S.D.N.Y. 1987). The Court is likewise authorized to enter "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Such an order can encompass the fees and costs a party incurs for filing the Rule 11 motion, as well as the fees and costs of litigation that "the parties would have avoided" had the plaintiff "withdrawn [her] claims" after learning that the defendant intended to seek Rule 11 sanctions." *Galin v. Hamada*, 283 F. Supp. 3d 189, 204 (S.D.N.Y. 2017).

Here, both dismissal of the sexual harassment claim and monetary sanctions are appropriate. First, the Court should dismiss Yost's sexual harassment claim with prejudice, as the Everyrealm Defendants are seeking in their Rule 12 Motion, as that is the only way to end the Rule 11 violation by stopping her from pursuing her frivolous claims.[10] And second, the Court should require Yost and her counsel to reimburse the fees and costs that the Everyrealm

---

[10] The Everyrealm Defendants reserve the right to pursue sanctions as to the non-sexual harassment claims in the forum this Court determines to be proper.

Defendants have incurred to prepare and file this motion, and otherwise to defend themselves against Yost's malicious fabrications. Sanctions are appropriate against Yost's counsel because he participated in the Rule 11 motion by filing the frivolous SAC.

## **CONCLUSION**

For the foregoing reasons, the Court should impose Rule 11 sanctions.

Dated:  February 14, 2023

By:     _/s/ Lloyd B. Chinn_____
Lloyd B. Chinn, Esq.
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
(212) 969-3000
lchinn@proskauer.com

*Attorneys for Defendants Everyrealm Inc.,
Janine Yorio, William Kerr and Zach
Hungate*

21