**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KATHERINE YOST,

                Plaintiff,

     v.

EVERYREALM INC., REPUBLIC, REPUBLIC
CRYPTO LLC, OPERATIONS LLC, OPENDEAL
INC., OPENDEAL PORTAL LLC, JANINE YORIO,
in her individual and professional capacities,
WILLIAM KERR, in his individual and professional
capacities, and ZACH HUNGATE, in his individual
and professional capacities,

                Defendants.

Index No.: 1:22-cv-06549(PAE)

<u>**ORAL ARGUMENT REQUESTED**</u>

---

<u>**PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO**
**DEFENDANTS' MOTION TO COMPEL ARBITRATION**</u>

**SEPPINNI LLP**
Shane Seppinni
43 W. 43rd St., Suite 256
New York, NY 10036

*Counsel for Plaintiff*

## <u>CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 1

I.    ARBITRATION AGREEMENTS ARE NOT ENTITLED TO "SPECIAL" TREATMENT .............. 2

II.   DEFENDANTS IGNORED THIS COURT'S ORDER AND PROCEEDED WITH THEIR
      ARBITRATION AGAINST YOST BY UNILATERALLY APPOINTING HER ARBITRATOR
      DURING A STAY OF THE PROCEEDINGS ......................................................................... 3

III.  THE DETERMINATION OF UNCONSCIONABILITY MUST BE MADE BY THE COURT
      BECAUSE NO UNMISTAKABLE DELEGATION CLAUSE EXISTS .......................................... 9

IV.   THE UNCONSCIONABLE COST-SPLITTING PROVISION IN THE EMPLOYMENT
      AGREEMENT HAS NOT BEEN OVERTAKEN BY THE WORKSITE EMPLOYMENT
      AGREEMENT, WHOSE ARBITRATION CLAUSE DOES NOT CONTAIN SUCH A PROVISION,
      BECAUSE THE WORKSITE AGREEMENT WAS NOT SIGNED BY THE PARTIES TO THE
      EMPLOYMENT AGREEMENT .......................................................................................... 13

V.    EVEN IF A COST-SPLITTING PROVISION DOES NOT APPLY THERE ARE STILL
      EXORBITANT COSTS YOST WILL FACE IN ARBITRATION BUT NOT IN COURT .............. 16

      A. Excessive Stenographic Costs that Ms. Yost Cannot Afford and that are not
         Covered by the Cost-Splitting Provision will Apply in Arbitration .................... 16

      B. Defendants Cannot Show that Ms. Yost will not be subject to Exorbitant Costs
         Regardless of if the Cost-Splitting Provision is Severed ..................................... 19

VI.   THE PROPER REMEDY IS FINDING THE ENTIRE AGREEMENT UNENFORCEABLE RATHER
      THAN SEVERING THE COST SPLITTING PROVISION ........................................................ 22

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ......................................................................................... 2

*Andresen v. IntePros Fed., Inc.*,
    240 F. Supp. 3d 143 (D.D.C. 2017) ............................................................... 18

*Bensadoun v. Jobe-Riat*,
    316 F.3d 171 (2d Cir. 2003) .......................................................................... 14

*Bradford v. Rockwell Semiconductor Sys., Inc*,
    258 F.3d 549 (4th Cir. 2000) ......................................................................... 16

*Bradford v. Rockwell Semiconductor Systems, Inc*,
    238 F.3d 549 (4th Cir. 2001) ......................................................................... 17

*Cap Gemini Ernst & Young, U.S., LLC v. Nackel*,
    346 F.3d 360 (2d Cir. 2003) ............................................................................ 9

*Castellanos v. Raymours Furniture Co*,
    291 F. Supp. 3d 294 (E.D.N.Y. 2018) ........................................................... 22

*CMH Homes, Inc. v. Sexton*,
    441 F. Supp. 3d 1202 (D.N.M. 2020) ............................................................ 19

*Cole v. Burns Intern. Sec. Services*,
    105 F. 3d 1465 (D.C. Cir. 1997) ..................................................................... 8

*Contec Corp. v. Remote Sol., Co., Ltd*,
    398 F.3d 205 (2d Cir. 2005) ...................................................................... 9, 10

*De Jesus v. Gregorys Coffee Mgmt., LLC*,
    2021 WL 5591026 (E.D.N.Y. Nov. 29, 2021) ................................................ 3

*Doctor's Assocs., Inc. v. Casarotto*,
    517 U.S. 681 (1996) ........................................................................................ 3

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 ................................................................................................... 9

*Gillman v. Chase Manhattan Bank N.A.*,
    73 N.Y.2d 1 (1988) ......................................................................................... 3

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ............................................................................................................... 2

*Goodwin v. Branch Banking & Tr. Co.*,
    699 F. App'x 274 (4th Cir. 2017) ...................................................................................... 24

*Green Tree*,
    531 U.S. 92 ............................................................................................................................ 16

*Haro v. NCR Corp.*,
    2006 WL 2990386 (S.D. Ohio Oct. 18, 2006) .................................................................. 19

*Hooters of Am. Inc. v. Phillips*,
    173 F. 3d 933 (4th Cir. 1999) .......................................................................................... 5, 6

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ............................................................................................................. 13

*In re Currency Conversion Fee Antitrust Litig*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003) .............................................................................. 17

*In re Salomon Inc. Shareholders' Derivative Litig.*,
    68 F.3d 554 (2d Cir. 1995) .................................................................................................. 8

*Kosson v. Algaze*,
    610 N.Y.S.2d 227 (1st Dep't 1994) ..................................................................................... 3

*KPA Promotion & Awards, Inc. v. JPMorgan Chase & Co.*,
    2021 WL 1317163 (S.D.N.Y. Apr. 8, 2021) .................................................................... 13

*Moss v. Rent-A-Center, Inc*,
    2007 WL 2362207 (E.D.N.Y. Aug. 15, 2007) ................................................................. 17

*Nesbitt v. FCNH, Inc.*,
    811 F.3d 371 ......................................................................................................................... 19

*Nino v. Jewelry Exch., Inc.*,
    609 F.3d 191 (3d Cir. 2010) ............................................................................................... 24

*Opals on Ice Lingerie v. Body Lines Inc.*,
    320 F.3d 362 (2d Cir. 2003) ................................................................................................. 3

*Pokorny v. Quixtar, Inc.*,
    601 F. 3d 987 (9th Cir. 2010) .............................................................................................. 8

iv

*Raga v. Howard*,
   841 F.3d 1134 (10th Cir. 2016) ..................................................................... 14

*Ragone v. Atl. Video at Manhattan Ctr.*,
   595 F.3d 115 (2d Cir. 2010) .................................................................. 3, 8, 22

*Relevent Sports, LLC v. United States Soccer Fed'n, Inc.*,
   2020 WL 4194962 (S.D.N.Y. July 20, 2020) ................................................. 8

*Rent–A–Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010) ................................................................................. 2, 9, 11

*Reynolds* v. de Silva,
   *2010 WL 743510*, at *5 (S.D.N.Y. Feb. 24, *2010*) ................................... 17

*Robinson v. Entm't One U.S. LP*,
   2015 14-cv-1203 (S.D.N.Y. June 2, 2015) ................................................... 9

*Saizhang Guan v. Uber Techs.*,
   236 F. Supp. 3d 711 (E.D.N.Y. 2017) ........................................................... 3

*Shankle v. B-G Maint. Mgmt. of Col., Inc.*,
   163 F.3d 1230 (10th Cir. 1999) ................................................................... 18

*Silent Gliss Inc. v. Silent Cliss Int'l*,
   22-CV-522 (EK)(MMH) (E.D.N.Y. Feb. 9, 2023) ..............**Error! Bookmark not defined.**

*Similarly, in McMullen v. Meijer, Inc.*,
   355 F.3d 485 (6th Cir. 2004) ........................................................................ 7

*State v. Wolowitz*,
   468 N.Y.S.2d 131 (1983) ............................................................................... 3

*Stewart v. Paul, Hastings, Janofsky & Walker, LLP*,
   201 F. Supp. 2d 291 (S.D.N.Y. 2002) ................................................... 16, 17

*Valle v. Atm Nat'l, LLC*,
   2015 14-cv-7993 (S.D.N.Y. Jan. 30, 2015) ................................................. 23

*Zambra, LLC*,
   2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016) ............................................. 17

**STATUTES**

9 U.S.C.

    § 4 ............................................................................................................................... 14, 16

    § 2 ...................................................................................................................................... 3

**OTHER AUTHORITIES**

Szalai, Imre S., A New Legal Framework for Employee and Consumer Arbitration
    Agreements (August 8, 2018). 19 Cardozo J. Conflict Resol. 653, 699 (2018), Loyola
    University New Orleans College of Law Research Paper No. 2018-09, Available at
    SSRN: https://ssrn.com/abstract=3228773 ........................................................................ 24

Plaintiff Kathy Yost submits this brief in further opposition to Defendants' Order to Show Cause to Compel Forced Arbitration and in response to the Court's February 24, 2023, Order (dkt. no. 90).

## PRELIMINARY STATEMENT

In violation of this Court's Order (dkt. no. 34), Defendants went ahead with unilaterally selecting the arbitrator in their arbitration against Ms. Yost, (Seppinni Decl., Ex. A) and in so doing, violated this Court's Order and exhibited bad faith and procedural unconscionability that, alone, and especially combined with the forced arbitration agreement's substantively unconscionable costs, renders the arbitration clause unenforceable in its entirety. Defendants' assurances that they will comply with its directives in arbitration can no longer be trusted. Therefore, severance of any unconscionable provision or instruction from this Court on the selection of a new arbitrator for Ms. Yost is insufficient. This dispute requires direct Federal District Court oversight of Defendants to ensure that Ms. Yost's rights—and this Court's will—are adhered to.

The Court should deny Defendants' motion to compel arbitration of the rest of this dispute and proceed to discovery promptly.

## ARGUMENT

Defendants have failed to meet their burden to force this dispute into arbitration because:

1. Defendants and the AAA violated this Court's Order, Ms. Yost's rights, and any reasonable notion of fairness when they pushed ahead with unilaterally selecting the arbitrator in the arbitration proceeding while the arbitration was stayed without providing Yost the opportunity to rank and strike arbitrators;

1

2.  The arbitration clauses at issue lacks a clear and unmistakable delegation clause and therefore this Court, not an arbitrator, must make the determination of unconscionability;

3. The cost-splitting provision has not been overtaken by the Worksite Agreement because the Worksite Agreement ignores the procedure for replacing the Employment Agreement, or, in the alternative, triable issues of fact as to the operative agreement exists which must be resolved at a summary trial under Section 4 of the FAA;

4. The arbitration agreement is unconscionable regardless of the cost-splitting provision because Yost has shown that she cannot afford the additional costs and fees present in arbitration, with or without cost-splitting;

5. And, finally, the contract cannot be rescued by severing the unconscionable provision because severance would conflict with law in this scenario, and, regardless, Defendants and the AAA have already shown unwillingness to comply with this Court's clear Orders.

## I.   ARBITRATION AGREEMENTS ARE NOT ENTITLED TO "SPECIAL" TREATMENT

It is a "fundamental principle that arbitration is a matter of contract." *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *see also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (The Federal Arbitration Act ("FAA") "reflects the overarching principle that arbitration is a matter of contract."). The FAA does not put arbitration agreements on a "pedestal" or give them any "special footing." *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) (the FAA "place[d] arbitration agreements on the same footing as other

2

contracts."); *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (observing that arbitration agreements are "as enforceable as other contracts, but not more so.").

The FAA expressly states that arbitration agreements are not enforceable "upon such grounds as exist at law or in equity for the revocation of any contract[,]" without mentioning severability as an exception.  9 U.S.C.A. §2; *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (agreements "may be invalidated by generally applicable contract defenses, such as . . . unconscionability.").  Whether a valid and enforceable arbitration agreement exists is a question of state contract law.  *See, e.g., Saizhang Guan v. Uber Techs.*, Inc., 236 F. Supp. 3d 711, 729 (E.D.N.Y. 2017).  The burden rests on the party seeking to compel arbitration.  *See, e.g., Kosson v. Algaze*, 610 N.Y.S.2d 227, 228 (1st Dep't 1994) ("[i]t is black letter law that the burden of proving the existence, terms and validity of a contract rests on the party seeking to enforce it").

## II.   DEFENDANTS IGNORED THIS COURT'S ORDER AND PROCEEDED WITH THEIR ARBITRATION AGAINST YOST BY UNILATERALLY APPOINTING HER ARBITRATOR DURING A STAY OF THE PROCEEDINGS

Under New York law, a contract is unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable."  *See, e.g., De Jesus v. Gregorys Coffee Mgmt., LLC*, No. 20 Civ. 6305 (MKB), 2021 WL 5591026, at *4 (E.D.N.Y. Nov. 29, 2021) (quoting *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010)).[1]

---

[1] For the reasons described herein, the Arbitration Agreements are procedurally and substantively unconscionable.  However, the Second Circuit and New York courts have held that while "determinations of unconscionability are ordinarily based on [a] conclusion that both the procedural and substantive components are present . . . there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone."  *Ragone*, 595 F.3d at 122 (quoting *Gillman v. Chase Manhattan Bank N.A.*, 73 N.Y.2d 1, 12 (1988)); *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 574 (1st Dep't 1998) ("substantive element alone may be sufficient to render the terms of the provision at issue

3

On October 6, 2022, this Court Ordered that:

> "Insofar as Everyrealm and the affiliated defendants have initiated an arbitration to take up Yost's claims, and insofar as it is improper to require Yost to participate in that arbitration while her motion to enjoin the arbitration as precluded by the EFA and Everyrealm's motion to compel that arbitration is pending, the Court directed defense counsel- and defense counsel independently agreed- to notify the American Arbitration Association that no further action is [to] be taken in the arbitral proceeding, unless and until the Court has held that arbitration may proceed consistent with the EFA. Yost shall not be required to appear in or respond in the arbitral proceeding while these motions are pending before this Court."

Dkt. no. 34.

Ignoring this Order, on November 16, 2022, Defendants and the AAA pushed ahead with unilaterally appointing the arbitrator in the case they brought against Yost without her or any of her co-Respondents ranking or striking arbitrators. Sepp. Decl., Ex. A (Notice of Appointment of Arbitrator). While the initial attempt to appoint an arbitrator had been framed to Yost's counsel as relating only to Respondent Frimpong,  the AAA later clarified, on letterhead with a caption including Yost's name as a Respondent: "This will confirm that we have determined to proceed with Claimants' arbitrator rank list, as the rank list for Respondents was received after the deadline." *Id*. But there should have been no deadline for Yost to miss, as the proceeding against her had been ordered stayed by this Court.

---

unenforceable."); *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (1983) ("it can be said that procedural and substantive unconscionability operate on a 'sliding scale' . . . a contractual term [may be] so outrageous and oppressive as to warrant a finding of unconscionability irrespective of the contract formation process").

4

Worse still, after the arbitrator's premature appointment, Defense counsel, when asked by the arbitrator if the proceedings against Yost, Johnson, Frimpong, and another individual should proceed as one action or separate actions stated, with disregard for the Court's Order, that the arbitration should proceed as one action, under one arbitrator, which Defendants had selected without Yost's say-so, conveying—wrongly—that the stay only applied to her responsive pleading and discovery obligations. *See* Sepp. Decl. ¶10.

There is perhaps no societal convention more critical to fundamental fairness than the requirement that legal disputes—particularly those regarding violations of important statutory rights like the anti-discrimination laws—be resolved in a fair and impartial forum and by a neutral that both parties had an equal say in selecting. But Defendants selected the arbitrator in their retaliatory arbitration against Yost in contradiction to this Court's order and without Yost having the chance to rank and strike neutrals—that alone renders the entire Arbitration Agreement unconscionable.

The case law addressing this precise issue is understandably limited—few Defendants have had the temerity to ignore a court Order and push ahead with unilaterally appointing an arbitrator in defiance. Yet the case law is rife with courts invalidating arbitration agreements as unconscionable when the arbitration proceedings lack appropriate fairness.  Even in the cases cited below, the unfairness is "tame" to what occurred here.

In *Hooters of Am. Inc. v. Phillips*, 173 F. 3d 933 (4th Cir. 1999) the court invalidated an arbitration agreement that did not provide a "system whereby disputes are fairly resolved by an impartial third party."  Id. at 940 ("We hold that the promulgation of so many biased rules— **especially the scheme whereby one party to the proceeding so controls the arbitral panel—**

breaches the contract entered into by the parties") (emphasis added).   Under the arbitration agreement, "[t]he employee and Hooters each select an arbitrator, and the two arbitrators in turn select a third" with the arbitrators all "selected from a list of arbitrators created exclusively by Hooters." *Id.* at 938-939.  The court appropriately found even this unacceptable:

> Under the rules, Hooters is free to devise lists of partial arbitrators
> who have existing relationships, financial or familial, with Hooters
> and its management. In fact, the rules do not even prohibit Hooters
> from placing its managers themselves on the list. Further, nothing
> in the rules restricts Hooters from punishing arbitrators who rule
> against the company by removing them from the list. Given the
> unrestricted control that one party (Hooters) has over the panel, the
> selection of an impartial decision maker would be surprising.

Id. at 939 (emphasis added).

The *Phillips* court was appropriately concerned over this procedure undermining the ability of the plaintiff to obtain a fair hearing and refused to compel arbitration.  The arbitrator selection here is far more concerning than the selection process at issue in *Phillips*.  Here, there was no panel of arbitrators at all for Yost to choose from, whether first selected by the employer or not.  Rather, the AAA listed arbitrators that Ms. Yost was not given the opportunity to rank nor strike. In fact, because one of her co-Respondents missed a AAA-imposed deadline to rank and strike arbitrators, the AAA determined that not even any of Ms. Yost's co-respondents would get to rank and strike potential arbitrators. *See* Sepp. Decl. Ex. A at 1. Instead, Defendants controlled the entire arbitrator selection process and pre-maturely selected the arbitrator in the dispute against Yost, in contradiction of this Court's clear Order.

6

Finally, the *Phillips* court said that it would be "surprising" if the selection process led to an impartial decisionmaker—an acknowledgment that while perhaps unlikely, the appointment of a neutral arbiter was at least possible.  In contrast, here it is impossible.  Put simply, the complete absence of an arbitrator selection process for Ms. Yost is more lacking in basic fairness and good faith than even the facts of *Phillips*.

Similarly, in *McMullen v. Meijer, Inc.*, 355 F.3d 485 (6th Cir. 2004), the Sixth Circuit invalidated an arbitration agreement far less than here.  In *McMullen*, the employer would first select a pool of five potential arbitrators in the first instance but it was subject to guidelines intended to safeguard against bias—each potential arbitrator selection had to be "(1) an attorney, (2) unemployed by and unaffiliated with the company, (3) generally recognized as a neutral and experienced labor and employment arbitrator, and (4) listed on the rosters of the Federal Mediation and Conciliation Services (FMCS) or the AAA, as well as other arbitration rosters." *Id.* at 488.  Thus, although the company was entitled to select the pool, these standards helped ensure every potential candidate was bound by the legal professional ethical rules, had no connection with the employer, had a level of recognition within the legal profession to be impartial and had been independently approved as impartial by recognized dispute resolution providers.  Even with these protections, the *McMullen* court held that the arbitration agreement did not provide "an effective substitute for a judicial forum" due to the "risk of bias inherent in [the arbitrator selection] procedure." *Id.* at 494.

The instant arbitration agreement and process already undertaken in violation of this Court's Order are far more lacking in fairness than *McMullen*—they contain no protections to ensure the fairness and neutrality.  Defendants have already dictated who the arbitrator will be— Yost has no say in the matter.  Sepp. Decl., Ex. A.

7

Many decisions by other courts lead to the same conclusion that lack of even perceived choice of an arbitrator invalidates the entire arbitration provision.  *See, e.g., Pokorny v. Quixtar, Inc.*, 601 F. 3d 987, 1002-3 (9th Cir. 2010) (denying motion to compel in arbitration in RICO action; arbitrator selection substantively unconscionable where plaintiff had a choice and could either (i) select from a list of neutral JAMS arbitrators who had attended a defendant-led orientation who would be paid at a fixed rate, or (ii) select from a list of neutral JAMS arbitrators who had not attended a defendant-led orientation and who would be paid at the arbitrator's presumably higher published rate); *see also Cole v. Burns Intern. Sec. Services*, 105 F. 3d 1465, 1482 (D.C. Cir. 1997) ("an employee cannot be required . . . to waive access to a neutral forum in which statutory employment discrimination claims may be heard).

Control over every aspect of this dispute without judicial oversight is why Defendants want to arbitrate. Judicial endorsement of this approach will upend the longstanding, guiding principle that arbitration must be a fair, neutral, and unbiased replacement for a judicial forum— not a one-sided effort by the employer to evade accountability, exert leverage at every chance, and side-step compliance with the law. Providing such judicial cover would be "grossly unreasonable or unconscionable in the light of the mores and business practices." *Ragone*, 595 F.3d at 121. The Court, therefore, cannot sever or reform the fact that Defendants' refusal to adhere to this Court's Order resulted in an unviable arbitrator selection process. *See, e.g., In re Salomon Inc. Shareholders' Derivative Litig.* 91 Civ. 5500 (RRP), 68 F.3d 554, 560 (2d Cir. 1995) (where a specific arbitral forum in an arbitration agreement fails, a court will not sever the failed term from the rest of the agreement and the entire arbitration provision will fail.); *Relevent Sports, LLC v. United States Soccer Fed'n, Inc.*, No. 19 Civ. 8359 (VEC), 2020 WL 4194962, at *4 (S.D.N.Y. July 20, 2020) (same).

Therefore, on this issue alone, Defendants' motion to compel arbitration must be denied.

### III.    THE DETERMINATION OF UNCONSCIONABILITY MUST BE MADE BY THE COURT BECAUSE NO UNMISTAKABLE DELEGATION CLAUSE EXISTS

Courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938*,* 944 (alterations omitted). With no a clear and unmistakable delegation clause, "questions of contract validity relating to the unconscionability of the underlying arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA." *Cap Gemini Ernst & Young, U.S., LLC v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003); *see also Robinson v. Entm't One U.S. LP*, 14-cv-1203 (AJN), at *15-16 (S.D.N.Y. June 2, 2015) ("As an initial matter, however, the Court rejects the Defendants' argument that the issue of unconscionability should be referred to the arbitrator."); *also Contec Corp. v. Remote Sol., Co., Ltd*., 398 F.3d 205, 209 (2d Cir. 2005) ("[W]e have held that 'the issue of arbitrability may only be referred to the arbitrator if there is **clear and unmistakable** evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.'") (emphasis added); *also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) (holding that where a party challenges the validity of the agreement to arbitrate, rather than the contract as a whole, the federal court "must consider the challenge before ordering compliance with that agreement[,]" and recognizing that parties can delegate gateway issues to the arbitrator if done so explicitly). Under New York law, "clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator."

9

*Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir.2005) (emphasis removed) (internal quotation marks omitted).

A "clear and unmistakable" delegation clause does not exist here. *See id.* Instead, the January 21, 2022, forced arbitration clause states only:

> <u>Arbitration.</u> Except as provided in Section 13(e)(ii) below, you agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in the State of New York, in accordance with the rules then in effect of the American Arbitration Association. The arbitrator shall be final, conclusive, and binding on both the Company and you. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The Company and you shall each pay one-half of the costs and expenses of such arbitration, and each of the Company and you shall separately pay counsel fees and expenses.

Dkt. no. 12-2, ¶ 13(e)(i).

The Jan. 21, 2022, forced arbitration clause includes broad language regarding "interpretation, construction, performance or breach," but crucially does not clearly and unmistakably mention any of enforceability, arbitrability, or unconscionability. *Id.* The instant clause's failure to specifically declare that enforceability, arbitrability, or unconscionability are within the Arbitrator's purview is decisive on this issue, and makes this case unlike the decisions by the Supreme Court and in this Circuit where courts have found that gateway questions are within an arbitrator's remit.

For example, in *Rent-a-Center*, unlike here, the arbitration clause included a clear and unambiguous delegation clause that stated, "'[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, **applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable**." *Rent-A-Ctr. v. Jackson*, 561 U.S. 63, 65-66 (2010) (emphasis added). No such clear and unmistakable language regarding delegation of "enforceability or formation . . . including . . . any claim that . . . this Agreement is void or voidable" is present here. *Id*. Therefore, the threshold question of whether the agreement is unconscionable is this Court's to answer.

Similarly, in *Brkic v. Dumbo Moving & Storage, Inc.* the court found that an agreement that included, "'disputes arising out of or relating to this Agreement or any portion of this Agreement *or its interpretation, enforceability, applicability, unconscionability, arbitrability, or formation, or whether the Agreement or any portion of it is void or voidable . . .[,]*'" presented clear and unmistakable evidence of the parties intent to delegate gateway issues such as "unconscionability" to the arbitrator. 22-CV-07029 (CM), at *8 (S.D.N.Y. Jan. 9, 2023). The delegation clause in *Brkic* is like the clause in *Rent-a*-Center but differs from the forced arbitration clause at issue because its clause states that "unconscionability" and "arbitrability" are issues for the arbitrator to consider, while the instant clause lacks any mention of arbitrability or unconscionability. *See id.* at 9 ("[A]s in *Rent-a-Centr.,* the relevant Arbitration Agreement contains a delegation provision that **unambiguously** delegates to the arbitrator disputes regarding the Arbitration Agreement's interpretation, applicability, enforceability or formation, including whether any part of the Agreement is void or voidable.") (emphasis added).

11

In *Kuehn v. Citibank*, the court found that a delegation clause that explicitly mentions enforceability "plainly delegates resolution of questions about the arbitration agreement's enforceability to an arbitrator." *Kuehn v. Citibank, N.A.*, 12 Civ. 3287 (DLC), at *8-9 (S.D.N.Y. Dec. 6, 2012). Here, the forced arbitration agreement contains no mention of "questions about the arbitration agreement's enforceability[,]" unlike the delegation clause in *Kuehn*. *Id.* Therefore, the Everyrealm Defendants have not *clearly and unmistakably* delegated questions of enforceability to the arbitrator. Rather, the arbitrator's role is limited here to "interpretation, construction, performance or breach of this Agreement," none of which are implicated by the Court's question of whether the agreement is unenforceable due to unconscionability. Dkt. no. 12-2, ¶13(e)(i).

In *Raytheon*, an arbitration agreement that specifically stated that "[t]he arbitrators . . . will have exclusive jurisdiction over the entire matter in dispute, *including any question as to its arbitrability*[,]" (emphasis added) clearly and unmistakably exhibited the parties intent to delegate issues of arbitrability to the arbitrator. *Raytheon Co. v. National Union Fire Ins. Co.*, 03 Civ. 9230 (SAS), at *5 (S.D.N.Y. Jan. 7, 2004). The arbitration clause at issue, which does not explicitly nor implicitly address questions of arbitrability, lacks the unambiguous clarity of the delegation clause in *Raytheon*.

Finally, in *Silent Gliss Inc. v. Silent Cliss Int'l*, the arbitration clause at issue provided "Any dispute, controversy or claim, arising out of or relating to this Agreement or the relationship created thereby, including the formation, interpretation, breach or termination thereof, and *whether the claims asserted are arbitrable*, will be referred to and finally determined by arbitration in accordance with the JAMS International Arbitration Rules." *Silent Gliss Inc. v. Silent Cliss Int'l*, 22-CV-522 (EK)(MMH), at *8-9 (E.D.N.Y. Feb. 9, 2023)

(emphasis in decision). The court found that "This language constitutes clear and unmistakable evidence of the parties' intent to arbitrate questions of arbitrability." *Id*; *see also, KPA Promotion & Awards, Inc. v. JPMorgan Chase & Co.*, No. 20-CV-3910, 2021 WL 1317163, at *5 (S.D.N.Y. Apr. 8, 2021) (contract language providing for arbitration of any claim "regarding the applicability of this arbitration clause" clearly and unmistakably delegated questions of arbitrability to the arbitrator). The clause at issue makes no similar mention of arbitrability being within the arbitrator's jurisdiction.

Therefore, because the agreement lacks the telltale "clear and unmistakable" evidence of the parties' intent to delegate on the issues of arbitrability or unconscionability that courts consider, this Court, not an arbitrator, must decide the threshold issue of unconscionability.

IV.    **THE UNCONSCIONABLE COST-SPLITTING PROVISION IN THE EMPLOYMENT AGREEMENT HAS NOT BEEN OVERTAKEN BY THE WORKSITE EMPLOYMENT AGREEMENT, WHOSE ARBITRATION CLAUSE DOES NOT CONTAIN SUCH A PROVISION, BECAUSE THE WORKSITE AGREEMENT WAS NOT SIGNED BY THE PARTIES TO THE EMPLOYMENT AGREEMENT**

The Employment Agreement has not been overtaken by the Worksite Employment Agreement because the latter does not comply with paragraph 13(e)(i) of the Employment Agreement. *See* dkt. no 12-2. Even so, Defendants have not met their initial burden of identifying the arbitration provision they seek to enforce. There are several issues of fact as to what agreement is operative here that create triable issues as to the arbitrability of this dispute under Section 4 of the FAA. Even so, as argued in Section V, *infra*, arbitration of this dispute is unconscionable no matter whether the Worksite Agreement or the Employment Agreement or the Independent Contractor Agreement is operative.

Because "arbitration is a matter of contract," Defendants cannot compel arbitration if no valid agreement to arbitrate exists. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83

(2002). "If undisputed facts in the record required the issue of arbitrability to be resolved against the Plaintiff as a matter of law, we could affirm the dismissal and avoid the need for further court proceedings." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). But ""[i]f there is an issue of fact as to the making of the agreement for arbitration, then a trial [on the formation issue] is necessary. 9 U.S.C. § 4." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). Nor is there any meeting of the minds on the terms of an arbitration contract if the parties have purportedly agreed to multiple contracts with inconsistent and contradictory terms. *See Raga v. Howard*, 841 F.3d 1134, 1138 (10th Cir. 2016) ("the conflicting details in the multiple arbitration provisions indicate that there was no meeting of the minds with respect to arbitration").

Here, Defendants rely simultaneously on the arbitration provisions in three sets of contracts, all of which conflict with one another. For example, the IC and EA agreements have cost splitting provisions, but the Worksite Agreement does not. The Worksite Agreement sets out minimum standards by which an arbitrator must be selected (which has not been complied with as it relates to Yost), but the IC and EA agreements do not. Dkt nos. 12-2, 79-1. Additionally, The IC Agreement may be governed by the AAA's Commercial Dispute Rules and Fees, but the EA Agreement and the Worksite Agreement would be governed by the AAA's Employment Dispute Rules and Fees "employer plan" or by the "individually-negotiated employment agreement or contract plan," which likely requires splitting the arbitrator's fees. *See* Sepp. Decl. Ex. B., p. 14, ¶ xvi. Because of these contradictions and factual questions about which agreement trumps, this dispute cannot be compelled to arbitration without a summary trial on this issue. 9 U.S.C. § 4.

The January 21, 2021 Employment Agreement states:

> "No amendment to this Agreement will be effective unless in writing signed by both parties to this Agreement. **The Company shall not be deemed to have waived any rights or remedies it may have in law or equity, nor to have given any authorizations or waived any of its rights under this Agreement, unless, and only to the extent, it does so by a specific writing signed by a duly authorized officer of the Company**, it being understood that, even if you are an officer of the Company, you will not have authority to give any such authorizations or waivers for the Company without specific approval by the Board of Directors of the Company. Any subsequent change or changes in your duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.

Dkt. no 12-2, ¶ 13(b) (emphasis added).

This is a specific and narrow procedure by which the Employment Agreement can be supplanted, which the Worksite Employment Agreement does not comply with. The Worksite Employment Agreement was not "signed by both parties to [the January 21, 2021] Agreement"—only Ms. Yost's digital signature is present in the document—nor was it "signed by a duly authorized officer of [Everyrealm]." Justworks is Everyrealm's "outsourced provider of certain human resources support[,]" not an Everyrealm officer. Dkt. 79-1. Because of these deficiencies, it cannot be said that by a preponderance of the evidence, the Worksite Agreement is the operative arbitration agreement between the Everyrealm Defendants and Yost.

As the Everyrealm Defendants have argued themselves, the procedure outlined in ¶ 13(b) of the January 21, 2021 Employment Agreement cannot be circumvented or waived absent strict compliance with it. But this is a factual question. Defendants will be free at a summary trial to

produce evidence somehow showing that Justworks was an "officer" of Everyrealm, or that a signed writing exists between Republic Realm Inc. and Yost in which they agreed to replace their previous Employment Agreement and IC Agreement with the Worksite Agreement. There is no factual support for this on the record before the Court nor in Yost's possession.

For circumstances such is these, Section 4 of the FAA provides that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Yost therefore requests a trial on the factual issues of the "making of the arbitration agreement" that are "in issue" to determine whether the IC Agreement, the Employment Agreement, or the Worksite Employment Agreement is operative, if any. *Id*.

**V.      EVEN IF A COST-SPLITTING PROVISION DOES NOT APPLY THERE ARE STILL EXORBITANT COSTS YOST WILL FACE IN ARBITRATION BUT NOT IN COURT**

It is unconscionable to compel Yost to pay the thousands of dollars in additional costs that she would not face if she was to vindicate her statutory rights in court, regardless of if the cost-splitting provision is in effect.

**A.      Excessive Stenographic Costs that Ms. Yost Cannot Afford and that are not Covered by the Cost-Splitting Provision will Apply in Arbitration**

When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 92. Whether arbitration is "prohibitively expensive" depends on "the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *Stewart v. Paul*, *Hastings*, *Janofsky & Walker*, *LLP*, 201 F. Supp. 2d 291, 293 (S.D.N.Y. 2002) (quoting *Bradford v. Rockwell Semiconductor*

*Sys.*, *Inc.*, 258 F.3d 549, 556 (4th Cir. 2000)). Because "[n]either the Supreme Court nor the Second Circuit has elucidated how detailed a showing of prohibitive fees must be to invalidate an arbitration agreement . . . . most courts, including most district courts in this Circuit, follow the test set forth by the Fourth Circuit in *Bradford v. Rockwell Semiconductor Systems*, *Inc.*, 238 F.3d 549, 556 (4th Cir. 2001)." *Zambrano v. Strategic Delivery Sols.*, *LLC*, No. 15-CV-8410, 2016 WL 5339552, at *7 & n.15 (S.D.N.Y. Sept. 22, 2016). That test performs a "case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *See*, *e.g.*, *Reynolds* v. de Silva, *2010 WL 743510*, at *5 (S.D.N.Y. Feb. 24, *2010*)*, at *6; *Moss v. Rent-A-Center*, *Inc.*, No. 06 Civ. 3312 (SLT), 2007 WL 2362207, at *7 (E.D.N.Y. Aug. 15, 2007); *Stewart v. Paul*, *Hastings*, *Janofsky & Walker*, *LLP*, 201 F. Supp. 2d 291, 293 (S.D.N.Y. 2002) (deeming *Bradford* "meticulously reasoned"); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 411 (S.D.N.Y. 2003) (agreeing with *Stewart)*.

As described in her Second Amended Complaint and previous briefs on this motion, Ms. Yost is a disabled single mother of three with financial difficulties that make it impossible to cover the additional costs in arbitration. *See* Second Amended Complaint ¶ 21; *see gen.* dkt. no. 16 (Yost Decl.).

The important additional costs Yost faces within the cost-splitting provision include things like arbitrator fees, initiation fees, and conference room rental fees, *inter alia*. Sepp. Decl. Ex. C AAA Employment/Workplace Fee Schedule. Even, *arguendo*, if Yost is not on the hook for the costs and fees implicated by the cost-splitting provision, she will still incur thousands of dollars of new costs to vindicate her rights in arbitration that she would not in this Court. For

example, The AAA Employment rules require that "Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. **The requesting party . . . shall pay the cost of the record.**" Sepp. Decl. Ex. B, p. 18. But for hearings in Court, Yost must pay only for the final transcript. Stenographer costs in arbitration alone are likely to amount to over $10,000. Sepp. Decl. ¶ 6. Ms. Yost cannot afford this and would not have to pay these costs in this Court to simply receive a transcribed record of hearings and her trial. The court reporting service Yost's counsel uses charges over $1,1000 per day once costs like the reporter's per diem and transcription are accounted for. Sepp. Decl. ¶ 6, 7. The most Ms. Yost can expect to pay for a transcript from this court for the several hearings her case will require is $60 per transcript. Sepp. Decl. ¶ 8. Even at trial, the very most she could expect to pay is to split stenographic costs with Defendants, if not provided by the Court, but in arbitration she must pay for them entirely herself. Ms. Yost cannot currently afford the medicine she needs to treat her disabilities and the workplace trauma she experienced (dkt. no. 16, ¶ 7), let alone afford to pay over $1,000 for a transcript from each hearing with the arbitrator. *See* dkt. no. 16, ¶ 16. This is especially so concerning considering Ms. Yost's ADHD diagnosis, which makes the need for her to have transcripts available even more pressing.

Courts have found identical fee-splitting provisions to this one, and even less severe ones, unenforceable. *See, e.g., Andresen v. IntePros Fed., Inc.*, 240 F. Supp. 3d 143, 157-59 (D.D.C. 2017) (provision requiring plaintiff to pay $7,500 "is more than sufficient to demonstrate cost prohibitiveness when measured against [plaintiff's] modest financial circumstances"); *Shankle v. B-G Maint. Mgmt. of Col., Inc.*, 163 F.3d 1230, 1235 (10th Cir. 1999) (provision requiring plaintiff to pay between $1,875 to $5,000 was unenforceable because it "clearly undermines the

remedial and deterrent functions of the federal anti-discrimination laws"); *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, (10th Cir. 2016) (provision requiring plaintiff to pay between $2,320 to $12,487 was unenforceable); *CMH Homes, Inc. v. Sexton*, 441 F. Supp. 3d 1202, 1213-14 (D.N.M. 2020) (same for provision requiring plaintiff to pay between $6,000 to $12,000); *Haro v. NCR Corp.*, 2006 WL 2990386, at *3-*4 (S.D. Ohio Oct. 18, 2006) (same for provision requiring plaintiff to pay between $4,000 to $14,000). Because the fee splitting provision was intended to prevent Ms. Yost from filing an arbitration claim and would devastate her financially if enforced, this Court should find the arbitration agreement unconscionable.

**B.** **<u>Defendants Cannot Show that Ms. Yost will not be subject to Exorbitant Costs Regardless of if the Cost-Splitting Provision is Severed</u>**

Defendants have argued that the Independent Contractor Agreement, which Yost does not dispute exists but also does not remember signing, is enforceable as to the disputes that arose when she was an independent contractor. *See* Dkt. no. 19 (Kerr Decl.), 19-1 (Independent Contractor Agreement). Yost's former status as an independent contractor creates a likelihood that Ms. Yost will have to pay fees according to the AAA Commercial Rules, which unlike the AAA Employment Rules, require that participants split the cost of hiring an arbitrator. *See* Sepp. Decl., Ex. B ¶ xiv; *see also* Sepp. Decl. Ex. D (AGs' Open Letter to AAA). AAA or Defendants' promises that an Independent Contractor will not be charged under the Commercial Dispute Rules and Fees are unconvincing considering Defendants' shown propensity for ignoring this Court's orders. Similarly, Attorneys General, including New York's, wrote an open letter to the AAA questioning the AAA ignoring its own rules on these precise issues:

19

**2.    Arbitrator    Compensation    Cost-Sharing    Under    Employment Arbitration Rules.** In addition to filing fees, the Employment/Workplace Fee Schedule also sets forth the mechanism for paying the arbitrator's compensation. The Employment/Workplace Fee Schedule provides that the employer "shall pay the arbitrator's compensation unless the employee or individual, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. Arbitrator compensation . . . and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous." We have learned that, notwithstanding this provision, some AAA arbitrators have ruled that claimant-workers must share costs and fees of arbitration with respondent-employers regarding employment-related claims pursuant to agreements entered into between the parties pre-dispute. We are concerned that this practice may discourage workers in our States from proceeding through the arbitration process by imposing significant costs that conflict with the provisions of the Employment/Workplace Fee Schedule.

**3. Application of Commercial Arbitration Rules to Employment-Related Claims Filed by Independent Contractors.** We understand that AAA has also promulgated a set of rules that govern arbitrations involving business-to-business claims (the "Commercial Arbitration Rules"), which include a Commercial Fee Schedule.3 Consistent with the nature of business-to-

business claims, the filing fees and cost-sharing rules under the Commercial Fee Schedule are substantially higher than those set out for employees in the Employment/Workplace Fee Schedule. In today's labor market, however, there are occasions where, due to various factors, an employer will classify a worker as an "independent contractor" rather than an "employee." It is thus common for workers classified as independent contractors to raise employment-related claims, such as those involving wage-and-hour issues, workplace conditions, or challenges relating to employment misclassification. The Commercial Arbitration Rules recognize that independent contractors may raise employment-related claims with employers, and provide that "[b]eginning October 1, 2017, AAA will apply the Employment Fee Schedule to any dispute between an individual employee or an independent contractor (working or performing as an individual and not incorporated) and a business or organization and the dispute involves work or work-related claims, including any statutory claims and including work-related claims under independent contractor agreements."4 Notwithstanding this language, **we have learned of instances where AAA arbitrators have applied the Commercial Fee Schedule to workers classified as independent contractors seeking to arbitrate employment-related claims. Again, we are concerned that this deviation from AAA rules imposes significant costs that may discourage workers in our States from proceeding through the arbitration process to pursue employment-related claims.**

Sepp. Decl. Ex D, ¶¶ 2-3 (non-headings emphasis added).

The Attorneys' General concerns in their letter are just as applicable here. Defendants and AAA's promises to the contrary regarding the imposition of fees and costs on Ms. Yost are no protection against their imposition when the AAA has broken its own written rules on this exact issue before and Defendants have already ignored this Court's Order regarding a limitation on arbitration. *See* Sepp. Decl. Ex A.

Therefore, because the Arbitration Costs and Fees are cost prohibitive for Yost, with or without the cost-splitting provision, and because the Defendants and the AAA's promises that they will not impose costs on her are both contradicted by the AAA's rules on stenographic costs and individually negotiated employment contracts, and cannot be guaranteed nor trusted, the entire arbitration provision is unconscionable and should not be enforced.

## VI.   THE PROPER REMEDY IS FINDING THE ENTIRE AGREEMENT UNENFORCEABLE RATHER THAN SEVERING THE COST SPLITTING PROVISION

Defendants' disregard for this Court's previous order regarding a stay in Ms. Yost's arbitration and the certainty that Yost will face unaffordable costs regardless of if the cost-splitting provision is severed shows that severance will be ineffective to prevent the fairness and unconscionable cost concerns addressed here.

In general, when faced with a provision in an arbitration agreement "which by itself would actually preclude a plaintiff from pursuing [his] statutory rights," the appropriate remedy "is to sever the improper provision . . . rather than void the entire agreement." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 124-25 (2d Cir. 2010); *see also Castellanos v. Raymours Furniture Co.*, 291 F. Supp. 3d 294, 301-02 (E.D.N.Y. 2018). But this case is unique and readily distinguishable from *Ragone*, *Valle v. ATM Nat., LLC*, and cases like them.

First, *Valle* explicitly relied on the Second Circuit's "strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." *Valle v. Atm Nat'l, LLC*, 14-cv-7993 (KBF), at *5 (S.D.N.Y. Jan. 30, 2015) (citations and quotes omitted). The Supreme Court's decision in *Morgan v. Sundance, Inc.*, rejecting the "'strong federal policy favoring arbitration' in support of a waiver specific arbitration rule[,]" casts serious doubt as to whether *Valle* would be decided the same today given the court's specific citation to "the strong federal policy in favor of arbitration" as an underpinning for its decision. 142 S. Ct. 1708, 1712 (2022); *Valle v. Atm Nat'l, LLC*, 14-cv-7993 (KBF), at *5 (S.D.N.Y. Jan. 30, 2015).

Second, the Court in *Valle* found only that the cost-splitting provision was unconscionable; whereas here, by contrast, the arbitration proceeding in which a cost-splitting provision applies has already began without Plaintiff's participation. Additionally, the Plaintiff in *Valle* did not raise cost concerns that would not be solved by severance, unlike Yost here. *See gen. Valle v. Atm Nat'l, LLC*, 14-cv-7993 (KBF), (S.D.N.Y. Jan. 30, 2015). Severance of the cost-splitting provision here where substantial procedural unfairness has already occurred, would be like sending Yost after a train that has already left the station but whose conductor promises to give her a free ticket aboard if she can catch up. Therefore, the entire agreement must be voided.

 This view is supported by case law, the text of the FAA, and endorsed by arbitration scholars. "The core enforcement provisions of the FAA [Sections 2, 3, and 4] were drafted to operate as a simple on-off switch, either an agreement to arbitrate is fully enforceable, or it is not enforceable at all. The FAA's enforcement provisions do not expressly recognize any middle

ground."[2] This is because "the FAA was designed to promote the meaningful resolution of disputes through arbitration, not to promote claim suppression through the misuse of heavy-handed arbitration clauses as a scare tactic to frustrate the filing of any claims."[3] So, "[o]rdering severance-after prolonged litigation [, in this case nearly eight months,] as the sole penalty for drafting multiple oppressive terms would undermine the FAA's goal of supporting a quick, effective method of resolving disputes."[4]

Similar reasoning was applied by the Third Circuit in *Nino v. Jewelry Exch., Inc.* which found that ordering severance would perversely make an unconscionable arbitration agreement "the employer's opening bid in a negotiation with the employee or the court over the agreement's unconscionable terms." 609 F.3d 191, 205 (3d Cir. 2010).

The Fourth Circuit's decision in *Goodwin v. Branch Banking & Tr. Co.*, 699 F. App'x 274 (4th Cir. 2017), also casts similar doubts on the incentives severance in this context creates. In *Goodwin*, the arbitration agreement between a consumer and bank contained unconscionable terms. In affirming the lower court's decision to invalidate the entire agreement rather than sever the harsh terms, the Fourth Circuit stated:

> [A] party's offer to waive certain limitations in arbitration provisions should be
> rejected because one party cannot unilaterally alter the terms of a contract after
> it is formed and courts are not authorized to remake a contract. *State ex rel.*
> *Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265, 283-84 (2002) ("[A] court

---

[2] Szalai, Imre S., A New Legal Framework for Employee and Consumer Arbitration Agreements (August 8, 2018). 19 Cardozo J. Conflict Resol. 653, 699 (2018), Loyola University New Orleans College of Law Research Paper No. 2018-09, Available at SSRN: https://ssrn.com/abstract=3228773

[3] *Id*. at 687.

[4] *Id.*

doing equity should not undertake to sanitize any aspect of the unconscionable contractual attempt.").

Merely "fixing" and enforcing this unconscionable agreement creates an incentive for Defendants to continue to impose unconscionable conditions on employees, in the hope that these terms may never be challenged, and, in any event, they will emerge with the most oppressive agreement the courts can be convinced to accept.

Severance is inappropriate here. The court should strike the entire arbitration agreement as unconscionable.

## **CONCLUSION**

The Court should therefore deny Defendants' motion to compel arbitration and move promptly to begin discovery.

**Dated:** March 10, 2023
New York, New York

Respectfully submitted,

/s/ Shane Seppinni

Shane Seppinni
Seppinni LLP
43 W 43rd St., Suite 256
New York, NY 10036
212-849-7000
shane@seppinnilaw.com

*Counsel for Plaintiff*

26