UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X
KATHERINE YOST,

               Plaintiff,

  -against-

EVERYREALM INC., COMPOUND ASSET
MANAGEMENT LLC, REALM METAVERSE
REAL ESTATE INC., REPUBLIC, REPUBLIC
CRYPTO LLC, REPUBLIC REALM MANAGER
LLC, REPUBLIC REALM INC., REPUBLIC
OPERATIONS LLC, OPENDEAL INC.,
OPENDEAL PORTAL LLC, JANINE YORIO in
her individual and professional capacities,
WILLIAM KERR in his individual and
professional capacities, and ZACH HUNGATE in
his individual and professional capacities.

               Defendants.
------------------------------------ X

Case No. 1:22-cv-06549(PAE)(SLC)

## EVERYREALM INC. (f/k/a REPUBLIC REALM INC.), JANINE YORIO, WILLIAM KERR, AND ZACH HUNGATE'S SUPPLEMENTAL REPLY IN SUPPORT OF THEIR ORDER TO SHOW CAUSE TO COMPEL ARBITRATION

PROSKAUER ROSE LLP

Lloyd B. Chinn, Esq.
Eleven Times Square
New York, NY 10036
(212) 969-3000
(212) 969-2900 (Fax)
lchinn@proskauer.com
*Attorneys for Everyrealm Inc. (f/k/a Republic Realm Inc.), Janine Yorio, William Kerr, and Zach Hungate*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

I.   Yost's Non-Responsive and Baseless Attacks on Everyrealm………………...……….. 2

II.  Questions Posed By The Court……………………………………………………………4

ARGUMENT ..................................................................................................................................5

    I.   The Arbitration Provision Contained Within The Worksite Employee Acknowledgement Superseded The Prior Arbitration Agreements.............................6

    II.  Questions of Unconscionability Are Arbitrable, And To The Extent They Are Not, Yost Cannot Establish Unconscionability Or, If Necessary, Avoid Severability ......................................................................................................................8

        a.  Then Arbitration Agreements Contain Clear and Unmistakeable Delegation Clauses…………………………………………………………………………….8

        b.  Yost's Unconscionability And Severability Arguments Are Meritless…………..9

CONCLUSION...............................................................................................................................12

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Badinelli v. The Tuxedo Club*,
 183 F. Supp. 3d 450 (S.D.N.Y. 2016) ........................................................................................10

*First Options of Chi. v. Kaplan*,
 514 U.S. 938 (1995) .....................................................................................................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 139 S. Ct. 524 (2019) ...................................................................................................................8

*Karel v. Clark*,
 129 A.D.2d 773 (2d Dep't 1987) .................................................................................................7

*N.Y. Internet Co. v. Jobdiva Inc. (In re N.Y. Internet Co.)*,
 No. 17-10326(SHL), 2018 WL 1792235 (Bankr. S.D.N.Y. Apr. 13, 2018) .................................7

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
 770 F.3d 1010 (2d Cir. 2014) ..................................................................................................8, 9

*Nicholas v. Wayfair Inc.*,
 410 F. Supp. 3d 448 (E.D.N.Y. 2019) ........................................................................................10

*PaineWebber Inc. v. Bybyk*,
 81 F.3d 1193 (2d Cir. 1996) ........................................................................................................9

*Sutherland v. Ernst & Young LLP*,
 726 F.3d 290 (2d Cir. 2013) ......................................................................................................10

*United States v. Twenty MILJAM-350 IED Jammers*,
 669 F.3d 78 (2d Cir. 2011) ..........................................................................................................7

*Valle v. ATM Nat'l, LLC*,
 No. 14 Civ. 7993 (KBF), 2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) ......................................12

*VKK Corp. v. NFL*,
 244 F.3d 114 (2d Cir. 2001) ........................................................................................................7

**STATUTES**

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act,
 9 U.S.C. §§ 401, 402 ...................................................................................................................1

Federal Arbitration Act, 9 U.S.C. § 12 ........................................................................................8

**OTHER AUTHORITIES**

*Practice Areas: Employment, Costs,* Am. Arb. Assoc., https://www.adr.org/employment (last visited Mar. 24, 2023)..................................................................................................................9

**PRELIMINARY STATEMENT**

Despite having attempted every trick in the book, Yost and her Counsel's final effort to avoid arbitration fares no better than her previous forays. The Court should reject Yost's unconscionability and other arguments, and compel arbitration of this Action.

On February 24, 2023, this Court entered an Order dismissing Yost's sexual harassment claim and, consequently, cast aside her theory that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("the EFA") precludes arbitration of her "case." (See doc. 90). However, the Court requested supplemental briefing on a very narrow set of questions. Those questions were:

1. Which arbitration agreement controls, and why?

2. Do the SAC's claims against the affiliate defendants fall within the scope of the governing arbitration agreement? If so, do the affiliate defendants move to compel arbitration of these claims?[1]

3. Insofar as Yost has argued that, given her financial circumstances, it would be unconscionable to apply a cost-splitting provision in the Employment Agreement to her . . . , (a) is the determination of unconscionability to be made by the Court or an arbitrator; (b) has the cost-splitting provision in the Employment Agreement . . . been overtaken by the Workplace Employment Agreement . . .; (c) if that provision does apply in arbitration, what costs are implicated by that provision, and on what concrete basis would it be unconscionable to apply a cost- (not fee-) splitting agreement to Yost . . . ; and (d) if it

---

[1] Yost offered no answer to this inquiry.

1

>were found unconscionable to compel Yost to split costs with defendants, is the proper remedy pursuant to the severance provisions in the Independent Contractor and Employment Agreements to sever that provision and otherwise proceed with the arbitration pursuant to the parties' agreement . . . .

(See doc. 44 at pp. 43–44).

Instead of focusing on these questions, Yost elected to devote approximately half of her brief to arguing that the Everyrealm Defendants had somehow violated the Court's Order directing a cessation of the arbitration pending against her. The Everyrealm Defendants are compelled to address these dishonest and baseless accusations.

I.      **Yost's Non-Responsive and Baseless Attacks on Everyrealm.**

Yost's assertions about Everyrealm's conduct in the arbitration are outright lies, and the documentary record indisputably establishes as much. Indeed, the very day this Court issued its Order directing Everyrealm to take no further action in arbitration as to Yost, Counsel for Everyrealm sent an email to the American Arbitration Association ("the AAA") stating – "[B]ased on a court conference today in the Yost and Johnson pending court cases, no action is to be taken by the AAA as to those Respondents until the completion of further proceedings before the Court and the rendering of a decision by the Court as to the propriety of arbitration as to these two individuals." (See Declaration of Lloyd Chinn ("Chinn Decl.") at Exh. A).[2] In response, on October 11, 2022, the AAA wrote, "This will confirm that the claims against Respondents Jost [sic] and Johnson have been stayed in accordance

---

[2] As the Court knows, Counsel for Yost, Shane Sepppinni, represents three other individuals with regard to their claims against Everyrealm (and vice versa) – including two in a currently pending arbitration. These two individuals are referred to herein as "the non-Yost/Johnson Respondents."

with the court's [sic] instructions." (Chinn Decl. at Exh. B).[3]

Subsequently, after Yost's counsel's attempts to stonewall the arbitration against the Non-Yost/Johnson respondents – who were not subject to *any* court order – the AAA ultimately determined that the non-Yost/Johnson respondents had waived their right to rank/strike arbitrators because they had elected to ignore the AAA's original and extended deadlines for doing so. (See Chinn Decl. at Exh. C, doc. 92-1).[4] Indeed, Yost's reference to "Respondents" missing said deadline is a calculated misrepresentation in an attempt to dupe the Court into believing the AAA had pushed ahead requiring Yost's participation – when, in fact, "Respondents" clearly referred only to the individuals who were not subject to any stay. (See Chinn Decl. at Exh. C, doc. 92-1). The Scheduling Order issued by the Arbitrator expressly references that opposing counsel appeared on behalf of the non-Yost/Johnson respondents only – and not Yost. (Chinn Decl. at Exh. D).[5]

What's more, until Yost filed her supplemental briefing on March 10, 2023, her Counsel had uttered not a word on this score to the Everyrealm Defendants, much less to the Court. Indeed, Counsel for Yost's assertion that Everyrealm "convey[ed] – wrongly – that the stay only applied to her responsive pleading and discovery obligations" is not only false, there was in fact no disagreement between counsel on the procedural status of the matters during that call. At the Initial Case Management Conference, Counsel for Everyrealm's first substantive statement to the arbitrator was that this Court held the arbitration could not move forward with respect to Johnson or Yost, but there

---

[3] Counsel for Yost was carbon copied on both the October 6 and 11 emails.

[4] Counsel for the Non-Yost/Johnson respondents attempted to argue that he did not waive his clients' ability to rank/strike arbitrators, but never once mentioned Yost. (Chinn Decl. at Exh. C).

[5] That the AAA and the parties use a case caption including Yost's name (which was created prior to this Court's October 6 Order) is immaterial. Counsel for Yost continues to use such case caption, including as recently as March 21, 2022, without any objection.

was no such stay as to the non-Yost/Johnson respondents. (Chinn Decl. at ¶¶ 10–11). The next question from the arbitrator came in response to the Everyrealm Defendants having previously filed two separate Statements of Claim against the non-Yost/Johnson respondents. Specifically, the Arbitrator inquired whether the parties viewed the pending arbitration as to the non-Yost/Johnson respondents as consolidated or as separate proceedings. (Id. at ¶¶ 12–13). Counsel for the Everyrealm Defendants explained that the two separate statements of claim were submitted in order to clearly articulate the facts and claims against each respective respondent, and proffered that the proceeding should continue as one given the overlap in the non-Yost/Johnson respondents' employment, timing, and threatened claims. (Id. at ¶ 14). Counsel for the Non-Yost/Johnson respondents replied, "I agree with most of what Mr. Chinn said," with the caveat that he did not understand how the arbitrations against the non-Yost/Johnson respondents could proceed "when they rely on facts in Yost and Johnson." (Id. at 15).[6] There was never any mention of proceeding as to Yost, nor was there any objection to a consolidated arbitration.[7] Yost's argument is not only baseless, but it is an intentional misrepresentation by her Counsel.

## II.     Questions Posed By The Court.

As explained in detail herein, under binding New York precedent, the Worksite Employee

---

[6] Counsel for the non-Yost/Johnson respondents also wrongly asserted that the arbitrations as to the non-Yost/Johnson respondents should be stayed because (on some date uncertain) these individuals would file claims in federal court and seek an injunction as to the pending arbitration. One of these respondents, Gatsby Frimpong, did file such a claim. And despite on-point authority from the United States Supreme Court making clear the frivolity of his position, he forced the Everyrealm defendants to expend substantial resources on extensive briefing, only to drop his opposition to arbitration when his brief was due. (See doc. 45 *in Frimpong v. Everyrealm et al.*, Case no. 1:22-cv-10487-GHW-RWL in the Southern District of New York ("On March 9, 2023, the due date for Plaintiff to file his opposition to the motions, Plaintiff did not file any opposition. Instead, despite previously and repeatedly opposing arbitration, Plaintiff wrote to the Court advising that Plaintiff consents to arbitration and 'does not oppose' the Everyrealm Defendants' request to stay in favor of arbitration.")).

[7] After Counsel for the Everyrealm Defendants notified the AAA that Frimpong consented to arbitrate his claims in the pending arbitration, Counsel for Frimpong offered no objection to the appointed arbitrator – nor could he, as he was a party to the arbitration and failed to timely rank/strike. Moreover, Frimpong never objected to the cost-splitting provision as unconscionable, despite the fact he executed the same agreement as Yost.

Acknowledgment is the controlling arbitration agreement, and Yost offers no argument that Everyrealm has somehow repudiated it or otherwise sought to avoid its accompanying contractual duties.

Regarding delegation, the Worksite Employee Acknowledgment (and the Contractor and Employment Letter Agreements) contains a clear and unmistakable delegation clause. Indeed, the broad language of the agreement provides that the parties "agree to use binding arbitration as the sole and exclusive means to resolve *all* disputes that arise between [Yost] and [Everyrealm] . . . ." (See doc. 80 at p. 4 (emphasis added)). Under New York law, the term "all disputes" encompasses disputes regarding unconscionability, *inter alia*.

Assuming *arguendo* the Court finds no delegation clause exists, though it respectfully should not, other than effectively stating that proceeding in arbitration is more expensive than in Court, Yost offers nothing to explain how the cost-splitting provision is unconscionable. Indeed, Everyrealm previously explained that a cost-splitting provision is not unconscionable, to which Yost has never responded. (See doc. 18 at pp. 12–14). And, the Worksite Employee Acknowledgment, which superseded the Contractor and Employment Letter Agreements, contains no such provision.

Finally, even if the cost-splitting provision applied **and** was unconscionable, that Court should sever the provision and enforce the remainder of the agreement. Yost's only argument otherwise is premised on the fiction that Everyrealm pushed ahead with arbitration in violation of this Court's Order, which as demonstrated above is a lie, and thus inapplicable.

The Court should reject the arguments asserted in Yost's supplemental brief, and compel this Action to arbitration.

## **ARGUMENT**

The Court should compel this Action to Arbitration, because: (i) the Worksite Employee Acknowledgment is controlling; (ii) all remaining questions, regardless of the controlling arbitration

5

agreement, have been delegated to the arbitrator; and (iii) to the extent the parties did not delegate such questions to the arbitrator, Yost has failed to establish any unconscionability, and even if she had, the cost-splitting provision should be severed from the agreement.

### I. The Arbitration Provision Contained Within The Worksite Employee Acknowledgment Superseded The Prior Arbitration Agreements.

Yost's Contractor Agreement was dated December 16, 2021, but was superseded by her Employment Letter Agreement dated January 21, 2022, and the Worksite Employee Acknowledgment dated January 24, 2022 superseded both. Thus, the arbitration provision contained in the Worksite Employee Acknowledgment is controlling.[8]  Indeed, when combining New York contract principles with the clear integration clause in the Worksite Employee Acknowledgment, there can be no doubt that Yost must arbitrate her remaining claims in the pending arbitration before the AAA.[9]

The parties agree that the Court's contract analysis is governed by New York law. (See, e.g., docs. 10 at pp. 15–16 & 91 at p. 15).  Yost, ignoring binding precedent on this subject, wrongly asserts that the following language in the Employment Letter Agreement precludes enforcement of the Worksite Employee Acknowledgment: "This Agreement sets forth the entire agreement and understanding between [Everyrealm] and [Yost] relating to its subject matter . . . No amendment to this Agreement will be effective unless in writing signed by both parties to this Agreement." (See doc. 12-2 at p. 6). However, there is a well-known exception to contract provisions prescribing that an agreement may not be superseded unless the subsequent agreement/amendment is dually executed by the parties.

---

[8] The Worksite Employee Acknowledgement contains a clear integration provision, "[t]his is the entire agreement between [Yost], on the one hand, and [Everyrealm] . . ., on the other hand, regarding dispute resolution, and this arbitration agreement supersedes any and all prior agreements regarding these issues." (See doc. 80 at p. 5).

[9] To the extent the AAA already appointed an arbitrator for the currently pending arbitration, and Yost was not a participant in the ranking/striking process, Yost may attempt to challenge his appointment with the AAA pursuant to the delegation clause contained in the Worksite Employee Acknowledgement, as discussed in Section II.a, *infra*. To be clear, Counsel for Yost only makes such an objection because, for two of his clients, he failed to timely rank/strike the list of arbitrators promulgated by the AAA.

6

Under New York law, if a modification is "signed by the party against whom enforcement is sought, [t]he fact that the original agreement requires that amendments or modifications be signed by all of the parties to the original agreement is not dispositive if the evidence, taken as a whole, shows that the amendment was authentic **or** was otherwise ratified by the parties' conduct.'" *Karel v. Clark*, 514 129 A.D.2d 773, 773 (2d Dep't 1987) (emphasis added) (citations omitted); *see also N.Y. Internet Co. v. Jobdiva Inc. (In re N.Y. Internet Co.)*, No. 17-10326(SHL), 2018 WL 1792235, at *8 (Bankr. S.D.N.Y. Apr. 13, 2018). The Everyrealm Defendants satisfy both elements, though satisfaction of only one mandates enforcement of the Worksite Employee Acknowledgment.

Here, it is undisputed that: (i) the Worksite Employee Acknowledgment is authentic and was executed by Yost; **and** (ii) Everyrealm ratified, or failed to repudiate, the agreement. First, at no point in her scattershot twenty-five-page brief did Yost argue that she did not electronically execute the agreement or that it was inauthentic.[10] Thus, she concedes the Worksite Employee Acknowledgment superseded the arbitration provision in the Employment Letter Agreement, and is therefore enforceable. Second, Everyrealm contracted with JustWorks to provide certain human resources support, and JustWorks promulgated the agreement on behalf of Everyrealm. (See doc. 80). Additionally, Yost remained employed by Everyrealm for months after her execution of the JustWorks agreement, and at no point did/has Everyrealm attempted to revoke, repudiate or otherwise avoid its obligations under the same. Even in situations where an agreement is purportedly entered into under duress, it is deemed ratified where the party seeking to avoid its obligations remains silent for a period of time after entering into the agreement. *See VKK Corp. v. NFL*, 244 F.3d 114, 122-23 (2d Cir. 2001) ("If the releasing party does not promptly repudiate the contract or release, he will be deemed to have ratified it."); *see also*

---

[10] None of this is news to Yost. As Everyrealm's Human Resources Director, she was responsible for establishing the relationship between Everyrealm and JustWorks, thus she not only executed the agreement, she also actively participated in promulgating it to Everyrealm employees.

*United States v. Twenty-MILJAM – 350 IED Jammers*, 669 F.3d 78, 91 (2d Cir. 2011) (finding contract ratified after period of four months). Here, not only does Everyrealm seek to enforce the agreement, it did nothing to repudiate it during the fourteen months following Yost's execution. Thus, the Worksite Employee Acknowledgment superseded the Employment Letter Agreement, and contains the controlling arbitration provision.

In light of the fact that the Worksite Employee Acknowledgment is binding on both Everyrealm and Yost, and contains a valid integration clause, it is the governing arbitration agreement.

## II. Questions of Unconscionability Are Arbitrable, And To The Extent They Are Not, Yost Cannot Establish Unconscionability Or, If Necessary, Avoid Severability.

While the Worksite Employee Acknowledgment is the governing arbitration agreement, all three agreements executed by Yost contain a valid, enforceable delegation clause. Thus, her remaining claims must be decided by an arbitrator. Assuming *arguendo* that the agreements do not contain such a provision, Yost's unconscionability argument fails nonetheless.

### a. The Arbitration Agreements Contain Clear And Unmistakable Delegation Clauses.

"[A]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the [Federal Arbitration Act ("FAA")] operates on this additional arbitration agreement just as it does on any other." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (internal quotation marks omitted). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must [therefore] respect the parties' decision as embodied in the contract." *Id.* at 528. However, "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chi. V. Kaplan*, 514 U.S. 938, 944 (1995) (alterations in original) (quoting *AT&T Techs., Inc. v. CWA*, 475 U.S. 643, 649 (1986)); *see also NASDAQ OMX Grp., Inc. v. UBS Sec.,*

8

*LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014) (The party seeking to compel arbitration of arbitrability bears the burden of establishing "clear and unmistakable expression of the parties' intent to submit arbitrability disputes to arbitration."). Nevertheless, Yost's position that delegation clauses only exist where the contract specifically provides questions of arbitrability are for the arbitrator, should be rejected.

There are clear and unmistakable manifestations of intent in each of the three arbitration provisions. Indeed, the Second Circuit has found the "'clear and unmistakable' provision satisfied where a broad arbitration clause expressly commits all disputes to arbitration, concluding that *all* disputes necessarily includes disputes as to arbitrability." *NASDAQ*, 770 F.3d at 1031 (citing *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996)). This Court has already noted that each arbitration provision is "broad," and each agreement unequivocally commits "any" or "all" disputes to arbitration – there can be no ambiguity. (See docs. 12-2, 19-1, and 79-1.). Each agreement therefore contains a valid and enforceable delegation clause. Yost's briefing cites only to cases where a delegation clause was found to exist under different factual circumstances than here, but completely ignores the binding Second Circuit authority squarely on point.

In light of the foregoing, the arbitrator must decide whether the terms of the arbitration agreement are unconscionable – though, as described below, they are not.

   **b.**  **Yost's Unconscionability And Severability Arguments Are Meritless.**

Yost cries foul at the cost-splitting provision in the Employment Letter Agreement, but as set forth above, that agreement was superseded by the arbitration provision in the Worksite Employee Acknowledgment – and thus Yost's argument is moot. Additionally, the arbitration against Yost is pending before the American Arbitration Association under its Employment Rules. Thus, notwithstanding which agreement applies, the AAA's Employment Rules cap Yost's arbitration fees at

9

three hundred dollars ($300.00).[11] Accordingly, even if Yost were somehow obligated to split arbitration fees with Everyrealm – her argument is meritless.[12]

Indeed, Yost's newest theory, that arbitration would subject her to "exorbitant costs" that she is not subject to in court, has not a leg to stand on. Her Counsel merely speculates as to the cost differential between proceeding in this forum versus the AAA, but fails to cite any authority establishing that – even if Yost were to incur such costs – she may avoid her contractual duty to arbitrate. Faced with a similar argument, the Southern District struck down a plaintiff's contention that arbitration was cost-prohibitive. *See Badinelli v. The Tuxedo Club*, 183 F. Supp. 3d 450, 457 (S.D.N.Y. 2016) (holding, where plaintiff claimed damages in excess of $750,000.00, "[u]nder these circumstances, plaintiff's contention that the arbitration fees would prevent him from pursuing his claims falls flat . . . The arbitration costs cited by plaintiff here, even if accurate, would not come close to dwarfing plaintiff's potential recovery.") (citing *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 298 (2d Cir. 2013) (rejecting a "vindication of statutory rights argument" where plaintiff contended the recovery she sought would be "dwarfed by the costs of individual arbitration.")). Yost demanded $1.9

---

[11] *Practice Areas: Employment, Costs,* Am. Arb. Assoc., https://www.adr.org/employment (last visited Mar. 24, 2023) ("Under the Employment/Workplace Fee Schedule, the employee's or individual's fee is capped at $300, unless the clause provides that the employee or individual pay less."). The Everyrealm Defendants filed their Demand for Arbitration against Yost (among others) pursuant to the AAA's Employment Rules on September 1, 2022, thus limiting her total potential expenditure on arbitration costs to $300. Counsel for Yost's citation to the Employment Rules is a bait-and-switch. (See doc. 91 at p. 20). Indeed, the paragraph cited provides that, at the initial Arbitration Management Conference, the parties should consider discussing "any disputes over the AAA's determination regarding whether the dispute arose from an individually-negotiated employment agreement or contract, or from an employer plan." (See doc. 92-2 at p. 15). It does not come close to providing that an employee is subject to any cost-splitting or other costs as set forth in the applicable arbitration agreement.

[12] Even though the cost-splitting provision was overridden by the Worksite Employee Acknowledgement, the Everyrealm Defendants previously established that the cost-splitting provision in the Employment Letter Agreement is not unconscionable, which Yost has yet to address. (See doc. 18 at pp. 12–14). And, numerous courts within the District have held that use of the American Arbitration Association Rules does not render an arbitration agreement unconscionable. *See Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 456 (E.D.N.Y. 2019) (collecting cases).

million to settle her claims, thus by her own valuation of her allegations – her recovery would far exceed the purported costs. Moreover, she seeks "an award of reasonable attorneys' fees, costs, and expenses," thus in the highly unlikely event that she succeeds on the merits – any costs incurred by way of arbitration could potentially be recovered. The Court should reject Yost's argument accordingly.[13]

Finally, even if the cost-splitting provision was unconscionable, Yost concedes that she agreed to severability in each agreement (see Contractor Agreement §13.3, Employment Letter Agreement §13(c) and Worksite Employee Acknowledgement §11) but contends the Court should – for patently false reasons – invalidate the entire Employment Letter Agreement. (See doc. 91 at pp. 28–29).[14] This argument is meritless, and to the extent the Court finds the cost-splitting provision applies **and** is unconscionable, it should simply sever that provision and enforce the remainder. (See doc. 18 at pp. 14–15 (discussing severability)).

As described above, the arbitration initiated by the Everyrealm Defendants has been stayed since the very day of the hearing before this Court, and there is no legitimate argument that the proceeding itself is unconscionable. (Chinn Decl. at Exhs. A–D). Indeed, on October 6, 2022, Counsel for Everyrealm wrote to the AAA stating, "[B]ased on a court conference today in the Yost and Johnson pending court cases, no action is to be taken by the AAA as to those Respondents until the completion of further proceedings before the Court and the rendering of a decision by the Court as to the propriety of arbitration as to these two individuals." (Id. at Exh. A).[15] Yost's arguments on this

---

[13] Yost's argument on this score repeatedly cites to the "fees" she would incur in arbitration (See doc. 91 at pp. 22–23), but as the Court has already noted, the provision applies to the splitting of "costs" – not "fees." (See doc. 90 at p. 44).

[14] Yost conclusorily and wrongly argues the cost-splitting provision would "preclude [her] from pursuing her statutory rights." (See doc. 91 at p. 28). First, the cost-splitting provision is not unconscionable. (See doc. 18 at pp. 12–14). Second, such an argument is inapplicable, because, as discussed herein, it is based entirely on false pretenses.

[15] That the AAA and the parties use a case caption including Yost's name (which was created prior to this Court's October 6 Order) is immaterial. Counsel for Yost himself has continued to use this case caption, including as recently as March 21,

11

point are not only baseless and inapplicable, they constitute intentional misrepresentations.

Finally, even if the cost-splitting provision were unconscionable, the Court should sever it from the agreement and enforce the remainder. As the Court has noted, both the Contractor and Employment Letter Agreement contain a severability provision. (See docs. 12-2 at p. 12 & 19-1 at p. 12). In these circumstances, the Court should sever the cost-splitting provision, and enforce the remainder. S*ee, e.g., Valle v. ATM Nat'l, LLC,* No. 14 Civ. 7993 (KBF), 2015 WL 413449, at *7 (S.D.N.Y. Jan. 30, 2015) (finding unconscionability as applied, and therefore severing the challenged "loser pays" provision from an arbitration agreement.).

## **CONCLUSION**

The Court should reject Yost's newest arguments, as she has done nothing more than assert contrived and baseless theories to keep this case in the public eye for yet a moment longer. Consequently, the Court should dismiss this action, and compel it to arbitration.

Dated: New York, New York
       March 24, 2023

                            PROSKAUER ROSE LLP

                    By:    */s/ Lloyd B. Chinn*

                            Lloyd B. Chinn, Esq.
                            Eleven Times Square
                            New York, New York 10036-8299
                            Ph. (212) 969-3000
                            Fax (212) 969-2900
                            lchinn@proskauer.com
                            *Attorney for Everyrealm Inc. (f/k/a Republic Realm Inc.), Janine Yorio, William Kerr & Zach Hungate*

---

2022, without any apparent concern.