UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KATHERINE YOST,

Plaintiff,

-v-

EVERYREALM, INC., REPUBLIC, REPUBLIC
OPERATIONS LLC, OPENDEAL INC., OPENDEAL
PORTAL LLC, JANINE YORIO, ZACH HUNGATE,
AND WILLIAM KERR,

Defendants.

---

22 Civ. 6549 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This decision resolves a pending motion to compel the arbitration of the claims of

plaintiff Katherine Yost against her former employer, Everyrealm, Inc. ("Everyrealm"); its

officers, Janine Yorio, Zach Hungate, and William Kerr (with Everyrealm, the "Everyrealm

defendants"); and its affiliates Republic Realm Inc., Republic, Republic Operations LLC,

OpenDeal Inc., and OpenDeal Portal LLC (the "affiliate defendants"). *See* Dkt. 35 ("Second

Amended Complaint" or "SAC"). These claims centrally allege discrimination and retaliation,

under federal, state, and local law, based on Yost's gender, sexual orientation, disability, and

marital status.[1] The motion, by the Everyrealm defendants, is based on three successive

agreements between Yost and Everyrealm containing broad mandatory arbitration provisions.

Dkt. 10. These were: (1) the "Independent Contractor Agreement" or "Contractor Agreement,"

---

[1] Yost initially brought identical claims against four other corporate entities: Compound Asset
Management LLC, Realm Metaverse Real Estate Inc., Republic Realm Manager LLC, and
Republic Crypto LLC. On February 15, 2023, Yost moved, Dkt. 87, and on February 16, 2023,
the Court granted, Dkt. 89, Yost's unopposed motion to voluntarily dismiss these defendants.

Dkt. 20-1; (2) the "Employee Agreement," Dkt. 12-2; and (3) the "Worksite Employment

Agreement," Dkt. 79, Ex. A. *See* Dkt. 90 ("February 24 Decision") at 4 n.2.

The Court significantly narrowed the issues relevant to this motion in its February 24

decision.  There, the Court dismissed Yost's sexual harassment claims as implausibly pled.  The

Court therefore held that the Ending Forced Arbitration of Sexual Assault and Sexual

Harassment Act of 2021 (the "EFAA"), Pub. L. No. 117-90, 135 Stat. 25, codified at 9 U.S.C. §§

401–02, did not apply and could not be invoked by Yost to block arbitration. *See id.* at 40.  The

Court also noted that Yost's remaining claims fell within the scope of the three arbitration

agreements.  The Court, however, deferred resolving the motion to compel arbitration, and

directed the parties to address, in supplemental briefs, three interrelated issues that the initial

briefing had not adequately addressed: (1) which arbitration agreement controls; (2) whether

Yost's claims against the affiliate defendants fall within the operative arbitration agreement, and,

if so, whether these defendants move to compel arbitration; and (3) whether Yost's challenge on

the grounds of unconscionability to a cost-shifting provision in the first two agreements, but not

the third, is moot; if not, whether that challenge is meritorious; and if so, what remedy is proper.

*See id.* at 21–22; *see also id.* at 43–44.

On March 10, 2023, Yost filed a supplemental opposition to the motion to compel

arbitration, Dkt. 91 ("Supp. Opp."), and a supporting declaration, Dkt. 92 ("Seppinni Decl.").

On March 24, 2023, the Everyrealm defendants submitted a supplemental reply, Dkt. 94 ("Supp.

Reply"), and a supporting declaration, Dkt. 95 ("Chinn Decl.").  The same day, the affiliate

defendants submitted a supplemental letter brief.  Dkt. 93 ("Affiliate Supp. Ltr.").

For the foregoing reasons, the Court grants the Everyrealm defendants' motion to compel

arbitration as to the claims against them.  The Court does not compel arbitration of Yost's claims

against the affiliate defendants, solely because these defendants have not invoked their right to arbitration. The Court stays this action in its entirety pending the outcome of the arbitration. The Court denies all pending motions to dismiss, including that of the affiliate defendants, without prejudice to renewal of such motions following completion of the arbitration between Yost and the Everyrealm defendants.

## I.   Background: Yost's Three Employment Agreements

The Court incorporates the February 24 decision, including its account of the SAC and the procedural history of this case, *see* February 24 Decision at 4–21, and recounts here only the facts necessary to the issues at hand.

For the first six weeks of her work, Yost worked on a contractor basis, as Everyrealm's external chief Human Resources ("HR") officer. SAC ¶ 53. On December 21, 2021, Yost signed the first of her three employment agreements: the Contractor Agreement, as to which Yost's counterparty was Everyrealm's predecessor, Republic Realm, Inc. *See* Dkt. 20-1.

On January 21, 2022, Yost transitioned from an independent contractor to a full-time employee, and entered a second agreement: the Employee Agreement. *See* Dkt. 12-2.[2] It was also with Republic Realm, Inc. As to the issues relevant here, the Employee Agreement and the Contractor Agreement are functionally identical.

As to arbitration, the Contractor Agreement provides:

Arbitration. . . . Contractor agrees that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in the State of New York, in accordance with the rules then in effect of the American Arbitration Association ["AAA"]. The arbitrator [sic] shall be final, conclusive, and binding on both Realm and Contractor. Judgment may be entered on the arbitrator's decision in any court

---

[2] Although the SAC does not allege the date on which Yost was hired as a full-time employee, the Employee Agreement is dated January 21, 2022. *See also* Dkt. 20 ¶ 3 (Kerr Declaration: Yost worked as an independent contractor from December 16, 2021 to January 2, 2022).

having jurisdiction. Realm and Contractor shall each pay one-half of the costs and
expenses of such arbitration, and each of Realm and Contractor shall separately pay
counsel fees and expenses.

Dkt. 20-1 § 13.5.1. The Employee Agreement contains a substantively identical provision; it

differs only in that it uses "you" in place of "Contractor." Dkt. 12-2 § 13(e)(i).

As to severability, the Contractor Agreement provides:

Severability. If one or more of the provisions in this Agreement is deemed **void** or
unenforceable to any extent in any context, such provisions shall nevertheless be
enforced to the fullest extent allowed by law in that and other contexts, and the
validity and force of the remainder of this Agreement shall not be affected.

Dkt. 20-1 § 13.3 (emphasis in original). The Employee Agreement again contains a

substantively identical provision; it differs only in that it uses "are deemed void" in place of "is

deemed void." Dkt. 12-2 § 13(c). Yorio and Yost signed both the Contractor and Employee

Agreements. *See* Dkt. 20-1 at 13; Dkt. 12-2 at 6.

Finally, as to modifications, the Contractor Agreement provides:

Entire Agreement; Modifications. This Agreement, together with its schedules and
exhibits attached hereto and thereto, sets forth the entire agreement and
understanding between Realm and Contractor relating to its subject matter and
merges all prior discussions between the Parties. No amendment to this Agreement
will be effective unless in writing signed by both Parties to this Agreement. Realm
shall not be deemed to have waived any rights or remedies it may have in law or
equity, nor to have given any authorizations or waived any of its rights under this
Agreement, unless, and only to the extent, it does so by a specific writing signed
by a duly authorized officer of Realm, it being understood that, even if Contractor
is (or any of Contractor's Representatives is) an officer of Realm, he/she will not
have authority to give any such authorizations or waivers for Realm without
specific approval by its board of directors (or similar governance body in the case
that Realm is not a corporation). Any subsequent change or changes in Contractor's
duties, obligations, rights or compensation will not affect the validity or scope of
this Agreement.

Dkt. 20-1 § 13.2. The Employment Agreement again contains a substantively identical

provision; it differs only in that it uses "you" in place of "Contractor." Dkt. 12-2 § 13(b).

The third arbitration agreement is contained in the January 24, 2022 Worksite

Employment Agreement, between Yost, Republic Realm, Inc., and Justworks.  *See* Dkt. 79, Ex.

A.  It includes a lengthy arbitration provision that "supersedes any and all prior agreements

regarding [arbitration]."  *Id.* ¶ 10.  This agreement, which refers to Republic Realm, Inc., as

Yost's "Worksite Employer," provides that the parties

> agree to use binding arbitration as the sole and exclusive means to resolve all
> disputes that may arise between you and Worksite Employer and/or you and
> Justworks, including, but not limited to, disputes regarding termination of
> employment and compensation.  You specifically waive and relinquish your right
> to bring a claim against Worksite Employer and/or Justworks, in a court of law,
> and this waiver shall be equally binding on any person who represents or seeks to
> represent you in a lawsuit against Worksite Employer or Justworks in a court of
> law.    Similarly, Worksite Employer and Justworks specifically waive and
> relinquish their respective rights to bring a claim against you in a court of law, and
> this waiver shall be equally binding on any person who represents or seeks to
> represent Worksite Employer or Justworks in a lawsuit against you in a court of
> law.

*Id.*  The arbitration provision extends to all claims by Yost against the "Worksite Employer (or

its owners, directors, officers, managers, employees or agents)" and the same for Justworks.  *Id.*

It

> include[s] within [its] scope . . . all disputes, whether based on tort, contract, statute
> (including, but not limited to, any claims brought under the Fair Labor Standards
> Act or any other similar state or local law or regulation, or claims of discrimination,
> harassment and/or retaliation, whether they be based on the Title VII of the Civil
> Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the
> American with Disabilities Act . . . or other similar local, state, or federal law or
> regulation), equitable law, or otherwise.

*Id.*  Unlike the Contractor and Employee Agreements, the Worksite Employment Agreement's

arbitration provision does not include a provision for cost-splitting.  *Id.*

Finally, as to prior agreements, the Worksite Employment Agreement provides:

> <u>General Terms</u>.  This Worksite Employee Acknowledgment (including exhibits -
> State Specific Provisions and Working Owners Not Receiving W-2 Wages) is the
> entire agreement between you and Justworks with respect to the subjects addressed

in this Worksite Employee Acknowledgment, and this Worksite Employee Acknowledgment takes the place of all prior and contemporaneous agreements, representations, and understandings regarding the subjects addressed herein. Oral representations made before or after you accepted this Worksite Employee Acknowledgment do not alter this Agreement. Should any term or provision of this Worksite Employee Acknowledgment, or portion thereof, be declared void or unenforceable it shall be severed and the remainder of this Worksite Employee Acknowledgment shall be enforceable. The terms of this Worksite Employee Acknowledgment may only be changed in writing, signed by an authorized representative of Justworks.

*Id.* ¶ 11. Yost signed the Worksite Employment Agreement. There is no evidence of a signature being affixed on behalf of Republic Realm, Inc., or Justworks. *Id.* at 9.

The parties agree that New York law governs. Supp. Reply at 6; *see, e.g.*, Supp. Opp. at 3 (applying New York law); Supp. Reply at 4–5, 7–8 (same).

## II.    Discussion

### A.    Which of the Three Agreements Controls?

The Court first considers which of the three arbitration agreements governs Yost's claims.[3] This matters because, although the agreements are largely coextensive, the first two contain a cost-sharing provision that Yost contends is unconscionable as applied to her, but the third, the Worksite Employment Agreement, contains no such provision.

Seeking to enable this argument, Yost contends that the Worksite Employment Agreement is invalid, because the earlier two agreements state that "[n]o amendment to th[ese]

---

[3] In evaluating the Everyrealm defendants' motion to compel arbitration under the FAA, the Court applies a standard similar to that applicable to a motion for summary judgment, and therefore considers materials outside the Complaint. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (considering, in resolving motion to compel arbitration, "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . the affidavits"); *Ventoso v. Shihara*, No. 19 Civ. 3589 (PAE), 2019 WL 9045083, at *1 n.2 (S.D.N.Y. June 26, 2019) (same). The Court accordingly considers: the SAC, the three agreements, the parties' memoranda of law, and the declarations and accompanying exhibits submitted by Yost, Dkts. 16, 66, Yost's counsel, Dkt. 92, and counsel for the Everyrealm defendants, Dkt. 95.

Agreement[s] will be effective unless in writing signed by both Parties to th[ese] Agreement[s]," and the Worksite Employment Agreement was signed only by Yost. *See* Supp. Opp. at 13–16. The Everyrealm defendants counter that the Worksite Employment Agreement binds Yost because it was signed by the party against whom enforcement is sought (Yost), and controls over its predecessors because its merger clause provides: "This is the entire agreement between you, on the one hand, and Worksite Employer and/or Justworks, on the other hand, regarding dispute resolution, and this arbitration agreement supersedes any and all prior agreements regarding these issues." Supp. Reply at 6 n.8 (quoting Dkt. 79, Ex. A ¶ 10); *see id.* at 6–8.[4]

The Everyrealm defendants are correct. Under New York law, if a modification of an agreement is signed by the party against whom enforcement is sought, "[t]he fact that the original agreement requires that amendments or modifications be signed by all of the parties to the original agreement is not dispositive if the evidence, taken as a whole, shows that the amendment was authentic or was otherwise ratified by the parties' conduct." *Woodard v. Reliance Worldwide Corp.*, No. 18 Civ. 9058 (RA), 2019 WL 3288152, at *4 (S.D.N.Y. July 22, 2019) (quoting *Karel v. Clark*, 514 N.Y.S. 2d 766, 767 (2d Dep't 1987)), *aff'd*, 819 F. App'x 48 (2d Cir. 2020); *see also In re N.Y. Internet Co., Inc.*, No. 17-10326 (SHL), 2018 WL 1792235, at *8 (Bankr. S.D.N.Y. Apr. 13, 2018); *Janover v. Bernan Foods, Inc.*, 901 F. Supp. 695, 701 (S.D.N.Y. 1995). *But see BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 411 (S.D.N.Y. 2011) ("Where a contract provides a procedure for amending contract provisions, that procedure must be followed to execute a valid amendment.").

---

[4] The affiliate defendants do not address which agreement governs. They contend that, had they pursued arbitration, Yost's claims against them would have been subject to arbitration under any of the three agreements. Affiliate Supp. Ltr. at 1–2. That is correct. *See infra* note 14.

The evidence here demonstrates that such is so. The alleged modification—that is, the Worksite Employment Agreement—was in writing. It was undisputedly signed by Yost. And Yost's factual allegations support inferring that she knowingly assented to and ratified that agreement. By her own account, Yost was an experienced HR professional, with a degree in business administration and decades of HR experience. SAC ¶ 51. She personally handled all HR matters at Justworks and Everyrealm, including proposing and implementing company-wide HR policies. *Id.* ¶ 54. She later handled the transition from Justworks's employee management system. Dkt. 66 ¶ 4.

By training, experience, and position, Yost thus was unusually well-equipped to assess the various agreements and make an informed evaluation of the Worksite Employment Agreement. And, after signing the Worksite Employment Agreement, Yost continued to work for Everyrealm under its terms for approximately six more months. *See, e.g., id.* (discussing her role in overseeing new employee-management system); *see also* SAC ¶ 178 (Yost lost access to Everyrealm platforms after June 19, 2022); *see Woodard*, 2019 WL 3288152, at *4 (modification proved by conduct where plaintiff continued to work for employer after amendment to agreement); *cf. Kronick v. L.P. Thebault Co., Inc.*, 892 N.Y.S.2d 895, 895–96 (2d Dep't 2010) ("By remaining in the defendant's employ under the new compensation terms, the plaintiff is deemed to have accepted them, regardless of her failure to sign the notice advising her of the new terms." (internal citations omitted)) (collecting cases). Critically, Yost does not dispute her knowing and voluntary execution of the Worksite Employment Agreement. Her sole basis for seeking to shed it is the absence of a counterparty's signature.

### B.   Are the Terms of the Governing Worksite Employment Agreement Unconscionable?

Yost argues that the Worksite Employment Agreement is independently unconscionable. *See* Supp. Opp. at 16–19. Insofar as the Worksite Employment Agreement is controlling, Yost's challenges to the application of the cost-sharing provision in the prior two agreements are beside the point. The portion of Yost's brief arguing the Worksite Employment Agreement's unconscionability, however, largely reiterates her objections to that provision, *id.*, which the Court addresses at length *infra* Section II.C.

For three independent reasons, Yost's unconscionability challenge to the Worksite Employment Agreement fails.

First, to the extent Yost challenges the Worksite Employment Agreement specifically, that agreement puts in place cost arrangements for an arbitration that substantially track those under the Federal Rules of Civil Procedure, under which Yost brought this lawsuit. It provides that any arbitration is governed by these Rules. *See* Dkt. 79, Ex. A ¶ 10. Yost does not have a basis to claim that imposition on her of those familiar costs would be unconscionable. Federal Rule of Civil Procedure 54(d)(1) provides for the recovery by the prevailing party of certain designated costs, including certain court fees. Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."); *see Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (discussing categories of recoverable taxable costs under Rule 54(d)). And under 28 U.S.C. § 1920, which defines the term "costs" as used in Rule 54(d), *see Taniguchi*, 566 U.S. at 565, Yost, were defendants to prevail, could be accountable for "such items as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts," *id.* at 573. Insofar as the Worksite Employment Agreement picks up the standards of the Federal Rules, Yost does not coherently

9

argue why the terms of the agreement would put her in a materially different situation vis-à-vis
her potential cost exposure than if she proceeded with this lawsuit in the forum in which she filed
it, let alone why any differences would result in an unconscionable outcome as applied to her.
*See Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 733 (E.D.N.Y. 2017) (rejecting
claim of unconscionability where, *inter alia*, fee-splitting provision provided that plaintiffs
would not be required to pay any fee or expense that they would not be required to pay in a court
of law).

Second, insofar as Yost makes the separate argument that, under this or any of the three
agreements, Supp. Opp. at 13, her time working as an independent contractor for Everyrealm
"creates a likelihood that [she] will have to pay fees according to the AAA Commercial Rules,"
*id.* at 19—which govern disputes between businesses and require that the parties split the cost of
hiring an arbitrator—that assertion is sheer speculation. Yost does not dispute that she became
an employee of Everyrealm and that she was an employee at the time that she contends
Everyrealm unlawfully terminated her. *See* Dkt. 12-2. She states only that she subjectively fears
that, because she initially worked for defendants as an independent contractor before becoming
an employee, they may seek to hold her to the Commercial Dispute Rules—and that she does not
trust the Everyrealm defendants' representation not to seek to do so.[5] But as the AAA

---

[5] Yost cites a November 2019 letter to the AAA from 12 state attorneys general, in which the
attorneys general state they had "learned that," contrary to the AAA's Employment Arbitration
Rules, "some AAA arbitrators have ruled that claimant-workers must share costs and fees of
arbitration with respondent-employers," or "applied the Commercial Fee Schedule to workers
classified as independent contractors seeking to arbitrate employment-related claims." Seppinni
Decl., Ex. D ¶¶ 2–3. For a host of reasons, this three-and-a-half-year-old letter does not assist
Yost. It does not offer any specifics as to the frequency or scale of such conduct. It does not
provide a basis to infer that Yost would experience such treatment in this matter. Yost also does
not suggest that either the Everyrealm defendants, the AAA, or the arbitrator appointed to the
initiated arbitration proceedings has suggested, let alone taken steps to require, that she split the

Employment Rules—submitted by Yost—underscore, these would *not* subject Yost to the arbitration-specific costs that she laments, including the arbitrator's fees and what she terms "conference room rental fees." Supp. Opp. at 17; *see* Seppinni Decl., Exs. B–C (attaching AAA Employment Rules). On the contrary, the AAA Employment Rules provide that the employer-Company (that is, the Everyrealm defendants) pays for the case management fee in connection with the arbitration, Seppinni Decl., Ex C § 3, the arbitrator's expenses, including travel and compensation, *id.* §§ 6–7, any AAA expenses, *id.* § 6, and the hearing room rental fee, *id.* § 4. *See* Supp. Reply at 9–10 & n.11 (AAA Employment Rules cap Yost's arbitration fees at $300).

Third, even if this were not so, Yost has not substantiated her claim that sharing arbitral costs with defendants—whether pursuant to the AAA Commercial Dispute Rules, or pursuant to Yost's first two agreements with the Everyrealm defendants—would be unconscionable as applied to her personal circumstances. A litigant's "mere assertion that the costs associated with arbitration would be excessive does not alone render an arbitration agreement unenforceable." *Valdes v. Swift Transp. Co.*, 292 F. Supp. 2d 524, 534 (S.D.N.Y. 2003) (compelling arbitration where, despite detailing her financial status and inability to pay costs required under AAA rules, plaintiff failed to establish the likelihood she would have to pay those fees, given the AAA's provision providing for deferral of fees in event of extreme hardship); *see Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 n.6 (2000) (refusing to invalidate arbitration agreement where record was speculative as to what costs party challenging arbitration would incur in arbitration; statements as to fees incurred in other arbitrations and that she did not have resources

---

arbitration's fees. Indeed, the letter does not establish that applying the AAA Commercial Rules violated the AAA Rules as applied to the facts of the cases of the particular "claimant-workers." Nor does it establish that such persons are fairly equated to Yost, whom all agree became an employee of defendants. And the letter does not reveal the resolution of that controversy or whether violations of AAA rules, if such indeed were admitted or established, have persisted.

to arbitrate insufficient). Here, for the reasons reviewed in the following section, even assuming Yost were obligated to pay half of the costs of the arbitration, she has not shown that it would be unconscionable for her to bear these.

The Worksite Employment Agreement, therefore, controls, lacks a cost-splitting provision, and is enforceable.

### C.    Is the Cost-Splitting Provision of the First Two Agreements Unconscionable?

In the interest of completeness, the Court addresses Yost's unconscionability challenge to the cost-splitting provision in the first two agreements. *See* Supp. Opp. at 9–22.

To begin with, these agreements delegate that challenge to resolution by the arbitrator, as the Everyrealm defendants argue. *See* Supp. Reply at 8–9. "The question whether the parties have submitted a particular dispute to arbitration, [that is,] the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (alteration, internal quotation marks, and citations omitted); *accord NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014). "In determining whether the arbitrability of a dispute is to be resolved by the court or the arbitrator, the arbitration agreement is determinative." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318 (2d Cir. 2021). And where "the arbitration agreement is broad and expresses the intent to arbitrate all aspects of all disputes, this—coupled with incorporation of rules that expressly empower an arbitrator to decide issues of arbitrability—constitutes clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator." *Id.* at 318–19.

The first two arbitration agreements do so here. The Employee Agreement provides for the arbitration of "any dispute or controversy arising out of or relating to any interpretation [or]

construction . . . of this Agreement," in "accordance with the rules then in effect of the American Arbitration Association." Dkt. 12-2 § 13(e)(i). The Contractor Agreement contains the same language. *See* Dkt. 20-1 § 13.5.1.[6] These rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *See* Seppinni Decl., Ex. B § 6(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."). And as numerous courts have held, the AAA's Rules empower the arbitrator to resolve questions of arbitrability, including based on claims of as-applied unconscionability. *See DDK Hotels, LLC*, 6 F.4th at 318, 320–21 (identical language, under the AAA Commercial Arbitration Rule 7(a), "empower[s] an arbitrator to resolve questions of arbitrability"); *Gwathmey Siegel Kaufman & Assocs. Architects, LLC v. Rales*, 518 F. App'x 20, 21 (2d Cir. 2013) (determining arbitrability delegated to arbitrator by unambiguous agreement that incorporated AAA rules); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (same, where agreement provided "any controversy arising with respect to this Agreement" would be resolved by arbitration in accordance with AAA rules); *Mobile Real Est., LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 471 (S.D.N.Y. 2020) (same, where agreement provided "all disputes, claims, questions, or differences shall be finally settled by arbitration . . . administered by the [AAA] in accordance with the provisions of the [AAA] rules"); *Offshore Expl. & Prod. LLC v. Morgan Stanley Priv.*

---

[6] The Worksite Employment Agreement does not contain such language. Defendants argue that unconscionability challenges under that agreement are reserved for the arbitrator based on its delegation of "any" or "all" disputes to arbitration, *see* Supp. Reply at 9. They have not, however, cited case authority that such language, without more and where the agreement does not incorporate the AAA rules, achieves a "clear and unmistakable" delegation to the arbitrator to resolve unconscionability challenges.

*Bank, N.A.*, 986 F. Supp. 2d 308, 316 (S.D.N.Y. 2013) (same, where agreement provided "any dispute, controversy, or Action arising out of or relating to this agreement . . . shall be determined by arbitration administered" in accordance with AAA rules), *aff'd*, 626 F. App'x 303 (2d Cir. 2015).

In any event, even if one of these agreements governed and Yost's challenge to the cost-splitting provision in them were for the Court to resolve, Yost's challenge would fail, for several independent reasons.

First, although the contractual cost-splitting provision in theory could be in tension with the AAA Employment Rules that make the employer responsible for covering arbitrator fees and other specified expenses, the Everyrealm defendants here have disavowed that provision in favor of the AAA Employment Rules. Under these, the Everyrealm defendants state, the fees Yost must bear, "notwithstanding which agreement applies," would be "cap[ped] at three hundred dollars ($300.00)." Supp. Reply 9–10 & n.11. Numerous courts have held defendants to similar waivers. *See, e.g., Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP*, No. 22 Civ. 5212 (JPC) (JW), 2023 WL 2138693, at *4 (S.D.N.Y. Feb. 21, 2023) (enforcing arbitration agreement where defendants waived cost- and fee-splitting provision); *Keller v. About, Inc.*, No. 21 Civ. 228 (JMF), 2021 WL 1783522, at *2 (S.D.N.Y. May 5, 2021) (same, where defendants offered not to enforce); *Galeana v. Mahasan Inc.*, No. 14 Civ. 3625 (VSB), 2019 WL 3024588, at *6 (S.D.N.Y. July 11, 2019) (enforcing arbitration clause where defendants agreed that plaintiff would pay no fees other than initial filing fee); *Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 538 (E.D.N.Y. 2016) (same, where parties agreed to strike potentially offending provisions); *Moton v. Maplebear Inc.*, No. 15 Civ. 8879 (CM), 2016 WL 616343, at *8 (S.D.N.Y. Feb. 9, 2016) (enforcing arbitration clause as a whole where defendant expressly waived fee-splitting

provision and forum-selection clauses); *see also Am. Fam. Life Assurance Co. of N.Y. v. Baker*
("*Am. Fam. Life Assurance II*"), 848 F. App'x 11, 13 (2d Cir. 2021) (New York law allows for
enforcement of arbitration agreement as modified by defendants' waivers) (citing *Ragone v. Atl.
Video at Manhattan Ctr.*, 595 F.3d 115, 124 (2d Cir. 2010)).  Yost—although resisting the
waiver so as to preserve her ostensible basis for claiming unconscionability—does not offer a
coherent reason not to hold defendants to that commitment.

 Second, even if the cost-splitting provision applied, Yost's challenge—which would
ordinarily require her to show both procedural and substantive unconscionability, *Ragone*, 595
F.3d at 121–22 (citing *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988))—
would fall very far short.

 As to procedural unconscionability, Yost does not point to any facts suggesting such at
the time Yost entered into either agreement.  "The procedural element of unconscionability
requires an examination of the contract formation process and the alleged lack of meaningful
choice." *Id.* (citation omitted).  Contrary to Yost's depiction, *see* Supp. Opp. at 3–9, this
doctrine is not triggered by any deficiency in, or misconduct during, the ensuing arbitration
proceedings. *See, e.g., Keller*, 2021 WL 1783522, at *2 ("A determination of unconscionability
generally requires a showing that the contract was both procedurally and substantively
unconscionable *when made*—[that is], some showing of an absence of meaningful choice on the
part of one of the parties together with contract terms which are unreasonably favorable to the
other party." (emphasis added)); *Doe #1 v. Coll. Bd.*, 440 F. Supp. 3d 349, 355 (S.D.N.Y. 2020)
(procedural unconscionability asks "whether a party lacked 'meaningful choice' in *entering into*

the contract" (emphasis added)).[7]   Yost has not alleged any defect in the Employee Agreement's

formation, such as the use of high-pressure tactics, a disparity in bargaining power, or her

misunderstanding of the Agreement's terms.  *See, e.g., Keller,* 2021 WL 1783522, at *2 (no

procedural unconscionability where there were no allegations of high-pressure tactics, disparity

in bargaining power, or misunderstanding).   Quite the opposite, Yost was unusually well-

equipped by background, education, and training to negotiate an employment agreement, given

her long-time experience as an HR professional, her degree in business administration, and,

before working for Everyrealm, her having owned and operated a successful HR consulting firm.

SAC ¶ 51; *see, e.g., Keller,* 2021 WL 1783522, at *2 (no procedural unconscionability in

---

[7] In this vein, Yost argues that the Everyrealm defendants violated an order of this Court by proceeding with arbitration proceedings against her. *See* Supp. Opp. 3–9. Yost's argument is highly misleading. Before the Court stayed the arbitration of Yost's claims pending resolution of the instant motion to compel, *see* Dkt. 34, these defendants had initiated an arbitration naming as respondents multiple employees, including Yost, *see, e.g.,* Dkt. 30, Ex. B. Yost, however, has not cited any evidence that, since the Court's order, defendants have sought to move that arbitration forward as to Yost. On the contrary, as the email exchanges and scheduling order provided by the Everyrealm defendants reveal, defendants promptly conveyed the Court's stay order to the arbitrator, who has stayed those proceedings as to Yost. *See* Chinn Decl., Ex. A (notifying arbitrator of stay); *id.,* Ex. B (confirming "that the claims against Respondent Jost [sic] . . . have been stayed[]"); *see also id.,* Ex. D (scheduling order only as to non-party respondents).

To the extent that Yost's beef is that her claims have been consolidated in a single action with claims of other former Everyrealm employees, *see* Supp. Opp. at 5, or with the procedures by which the arbitrator was selected, *id.* at 3, 5–9, Yost is at liberty to take up those issues with the arbitrator, pursuant to the operative agreement and/or the AAA rules. The agreement addresses the required qualifications of the arbitrator. *See* Dkt. 79, Ex. A ¶ 10 ("In addition to any other requirements imposed by law, the arbitrator selected shall be a retired federal judge or judge of the state court of general jurisdiction for the state where you work, or an otherwise qualified individual to whom the parties mutually agree, and shall be subject to disqualification on the same grounds as would apply to a judge of such court."). And the AAA rules set out procedures for this selection process, and the conduct of arbitrations more generally. *See* Dkt. 20-2 § 13.5.1; Dkt. 12-2 § 13(e)(i). In the event the arbitrator finds a breach, it would be for the arbitrator to determine the apt remedy—including restarting the arbitration. It would not be for the Court to void the underlying agreement as procedurally unconscionable.

contract formation where plaintiff was an accomplished and well-educated executive); *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 242 (S.D.N.Y. 2020) (advanced degrees and high compensation are "both indicative of sophistication for purposes of entry into contract" with an arbitration provision).

As to substantive unconscionability, Yost does not show it, either, let alone adduce facts so "outrageous as to warrant holding [the agreement] unenforceable on the ground of substantive unconscionability alone." *See Keller*, 2021 WL 1783522, at *2 (quoting *Gillman*, 73 N.Y.2d at 12 (describing such scenarios as "exceptional cases")).  Important in framing this analysis, the contractual provision to which Yost objects solely concerns the allocation of arbitral "costs."  It would not obligate her to split fees, such as those of counsel, as Yost claims.  *See* Supp. Opp. at 18–19.[8]

---

[8] The authorities Yost cites, all from out of Circuit, are inapposite.  They address provisions that required plaintiffs to split the fees associated with the arbitration, including the often-significant fees for the arbitrator's services.  Here, as noted, the contractual provision is limited to costs, not fees; and in any event, to the extent that Everyrealm might have asserted that "costs" embraced the arbitrator's fees, it has agreed that that provision must yield to the AAA Employment Rules that assign exclusively to the employer the responsibility for paying the arbitrator's fees.  *See, e.g., Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 & n.3, 1235 (10th Cir. 1999) (addressing fee-splitting provision); *CMH Homes, Inc. v. Sexton*, 441 F. Supp. 3d 1202, 1205 (D.N.M. 2020) (determining fee- and cost-splitting provision unconscionable); *Haro v. NCR Corp.*, No. 04 Civ. 328 (TMR), 2006 WL 2990386, at *3–4 (S.D. Ohio Oct. 18, 2006) (denying relief from earlier motion that found fee- and cost-splitting provisions, together, unenforceable); *see also, e.g., Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 375, 380–81 (10th Cir. 2016) (agreement required parties to split all fees and bear cost of their own counsel, but was ambiguous as to whether plaintiff could secure a fee award if she prevailed in arbitration); *Andresen v. IntePros Fed., Inc.*, 240 F. Supp. 3d 143, 147, 157–58 (D.D.C. 2017) (plaintiff showed agreement's authorization of arbitrator to apportion fees—including, *inter alia*, arbitrator's fees and expenses and hearing room rental fees—when she was in significant debt, would be cost-prohibitive as to her).  In any event, in most of these cases, the court—often utilizing a severability clause in the arbitration agreement, as exists here—redressed the unconscionability problem by excising the offending provision and then compelling arbitration. *See CMH Homes, Inc.*, 441 F. Supp. 3d. at 1215–16; *Andresen*, 240 F. Supp. 3d at 163; *Haro*, 2006 WL 2990386, at *1 (denying reconsideration of earlier decision that severed unenforceable

"New York courts have rejected the proposition that cost-splitting provisions are *per se* unconscionable, instead holding that the issue of a litigant's financial ability is to be resolved on a case-by-case basis." *Am. Fam. Life As. Co. of N.Y. v. Baker* ("*Am. Fam. Life Assurance I*"), 778 F. App'x 24, 27 (2d Cir. 2019) (summary order) (quoting *Brady v. Williams Cap. Grp., L.P.*, 928 N.E. 2d 383, 387–88 (2010) (addressing cost- *and fee*-splitting provision). That inquiry should consider "at minimum . . . (1) whether the litigant can pay the arbitration fees and costs; (2) what is the expected cost differential between arbitration and litigation in court; and (3 whether the cost differential is so substantial as to deter the bringing of claims in the arbitral forum." *Brady*, 928 N.E.2d at 388.[9]

Yost has not come close to making such a showing.  On September 2, 2022, she submitted a two-and-a-half page declaration, addressing the claims in the case and, briefly, addressing her finances. *See* Dkt. 16.  Yost attested that she was then unemployed, that she has been unable to pay for prescription medication, that she is unable to pay for the repair of her car, that she has "determined that she could not afford to pay the fees I would have owed under the Agreement to the American Arbitration Association," and that "[t]he AAA fees would likely have bankrupted me." *See id.* ¶¶ 6, 7, 9, 16–17.  The declaration, however, did not identify or quantify Yost's assets and liabilities; it did not quantify the "fees" that Yost imagined she would

---

clause from arbitration agreement and compelled arbitration). *Contra Nesbitt*, 811 F.3d at 376 (affirming district court's refusal to sever provision where agreement contained no savings clause).

[9] Everyrealm, Supp. Reply at 4 n.7, and the affiliate defendants, Affiliate Supp. Ltr. at 3 n.8, separately defend the cost-splitting provision on the ground that Yost's counsel consented to its application to a different client in the arbitration of another action.  That argument is quite unpersuasive.  The circumstances in that other action concerned a different plaintiff with presumably different personal economics, different claims, and different anticipated litigation costs.  Yost's as-applied challenge must be evaluated on its own terms.

be responsible for in an AAA arbitration; it did not address Yost's ability to pay the limited costs (capped, according to the Everyrealm defendants, at $300) under the AAA Employment Rules; it did not make any attempt to compare the costs for which Yost would be responsible in an arbitration with those she would have to shoulder in the lawsuit she initiated in this Court; and it did not address what if any arrangements Yost has made with her counsel as to the payment and recoupment of litigation costs.

Yost did not meaningfully fortify these claims in her submissions in response to the Court's February 24, 2023 solicitation of concrete information on Yost unconscionability claim. She, strikingly, did not attest to whether she *remains* unemployed, to her current personal economics, or to why she (or, depending on her representation agreement with counsel, her counsel) would be unable to pay the limited costs for which the employee-plaintiff would be responsible under the AAA's Employment Rules.[10]  As to the cost differential between arbitration and litigation, Yost stated only that the stenographic costs she anticipates in arbitration outstrip the costs of obtaining a transcript in this Court. *See* Seppinni Decl. ¶¶ 6–8; Supp. Opp. at 16–18.  This isolated data point, even if credited, does not address why, viewed holistically, the costs borne by Yost from an arbitration would materially exceed those of a litigation, let alone to the point where requiring Yost to bear them would be unconscionable.[11]

---

[10] Yost's legal brief states that she "cannot *currently* afford" to pay her share of the arbitration costs. *See* Supp. Opp. at 18 (emphasis added).  It, however, cites only to the September 2, 2022 declaration.

[11] Yost's counsel attested that Yost would incur more than 10 full days of costs of stenographic work, and related transcript fees, in an arbitration. *Compare* Seppinni Decl. ¶ 6 ("I estimate that stenographer costs in Yost's Arbitration will exceed $10,000."), *with id.* ¶ 7 (per diem cost of court reporter is $750 and each transcript costs $350).  But even within this category of costs, counsel's estimate did not take into account potentially offsetting factors, including the far greater availability and usage of deposition discovery in civil litigation.  Were Yost to elect, in

Yost's substantive unconscionability claim, which lacks factual support, must thus be rejected as conclusory and non-established. *See, e.g.*, *Am. Fam. Life Assurance I*, 778 F. App'x at 27 (unconscionability claim fails where appellants did not provide evidence of financial inability to pursue arbitration); *Whitt v. Prosper Funding LLC*, No. 15 Civ. 136 (GHW), 2015 WL 4254062, at *7 (S.D.N.Y. July 14, 2015) (same, where plaintiff had submitted evidence that he was impoverished, but failed to provide any evidence bearing on likely arbitration costs); *Senisi v. John Wiley & Sons, Inc.*, No. 13 Civ. 3314 (LTS) (AJP), 2015 WL 256094, at *5 (S.D.N.Y. Jan. 21, 2015) (declining to invalidate arbitration provision where plaintiff "simply speculate[d] that the costs to her [in arbitration] would be exorbitant"); *Valdes*, 292 F. Supp. 2d at 534 (same).

Finally, even if the contractual cost-splitting provision applied, were not limited by the AAA's Employment Rules, had not been waived by Everyrealm, and were unconscionable as applied, the remedy under New York law would be to excise the cost-splitting provision. It would not be, as Yost has argued, to invalidate the arbitration agreement. *See, e.g.*, *Am. Fam. Life Assurance II*, 848 F. App'x at 13 (remedy under New York law was to sever unenforceable section and enforce Agreement's remaining terms); *Ragone*, 595 F.3d at 124–25 (same); *Valle v. Atm Nat'l, LLC*, No. 14 Civ. 7993 (KBF), 2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) (citing New York law to sever unconscionable provision requiring loser of arbitration to pay all fees and costs); *see also Gordon*, 2023 WL 2138693, at *4 (waiver permissible under New York law even where no severability clause present); *Arshad v. Transp. Sys., Inc.*, 183 F. Supp. 3d 442, 449 (S.D.N.Y. 2016) ("[E]ven if an arbitration agreement contains unconscionable terms, the appropriate remedy is not to invalidate the agreement to arbitrate but to disregard the offending

---

the litigation she brought, to take depositions of Everyrealm officers and employees, and third parties, such would carry potentially substantial stenographic costs.

terms."). That approach "holds particularly true where, as here, the contract contains a severability clause directing this approach."[12] *Am. Fam. Life Assurance II*, 848 F. App'x at 13 (citing *Brady*, 64 A.D.3d at 137); *Dumitru v. Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328, 346 (S.D.N.Y. 2010). There is such a severability provision here, in both the Contractor and Employee Agreements. *See* Dkt. 12-2 § 13(c) ("If one or more of the provisions in this Agreement are deemed void or unenforceable," they "shall nevertheless be enforced to the fullest extent allowed by law in that and other contexts, and the validity and force of the remainder of this Agreement shall not be affected."); Dkt. 20-1 § 13.3 (same).

Yost, therefore, has not identified any impediment to enforcement of the arbitration agreement into which she voluntarily entered. The Court accordingly grants the Everyrealm defendants' motion to compel arbitration of Yost's claims against them.

## III. Next Steps

Effective immediately, the Court imposes a stay of this litigation, in its entirety, pending the resolution of the arbitration between Yost and the Everyrealm defendants.

The Second Circuit has held, in *Katz v. Cellco Partnership*, that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." 794 F.3d 341, 347 (2d Cir. 2015). With respect to Yost's claims against the Everyrealm defendants, the policies underlying *Katz* support

---

[12] *Morgan v. Sundance*, 142 S. Ct. 1708 (2022), does not require a different result. Contrary to Yost's argument, severing the cost-splitting provision and otherwise enforcing the arbitration agreement pursuant to the agreements' severability clauses would "hold [] part[ies] to [their] arbitration contract just as the court would to any other kind" of contract. *Id.* at 1713. Under New York law, severability clauses that expressly stipulate to the survival of a contract or provision are enforceable. *See Christian v. Christian*, 42 N.Y.2d 63, 73 (1977); *see also Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1925 (2022) (severing invalid class waiver provision and citing agreement's severability clause to hold that Viking was entitled to compel arbitration of individual claim), *reh'g denied*, 143 S. Ct. 60.

a stay of these claims, rather than their dismissal.  As the Second Circuit recognized, a stay, as

opposed to a dismissal

> is consistent with the FAA's underlying policy "to move the parties to an arbitrable
> dispute out of court and into arbitration as quickly and easily as possible."  A stay
> enables parties to proceed to arbitration directly, unencumbered by the uncertainty
> and expense of additional litigation, and generally precludes judicial interference
> until there is a final award.

*Id.* at 346 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22

(1983)).  A stay here will enable Yost's claims against the Everyrealm defendants to move

forward with dispatch in arbitration, unencumbered by potential federal court litigation,

including appellate litigation, until there is a final award.  *See Bissonnette v. LePage Bakeries*

*Park St., LLC,* 49 F.4th 655, 664 (2d Cir. 2022) (Jacobs, J., concurring) (stay in such

circumstances avoids an "appeal at once" and consequent "delay [of] the arbitration, with

associated costs and uncertainties"); *Shubin v. Slate Digital, Inc.,* No. 21 Civ. 9464 (PAE), 2022

WL 168152, at *6 (S.D.N.Y. Jan. 19, 2022) (imposing stay to avoid such consequences).[13]

      As to Yost's claims against the affiliate defendants, these defendants do not contend that

the claims against them are outside the scope of the contractual arbitration provisions.  However,

these defendants have elected not to move to compel arbitration of Yost's claims against them,

Affiliate Supp. Ltr. at 2–3 & n.6, and Yost, for her part, has not sought to arbitrate these claims,

---

[13] For avoidance of doubt, the Court stays such claims here as an exercise of its discretion.
"[W]hether a stay is required when, as here, no party requests one is less clear."  *Monk v.*
*Goldman Sachs & Co. LLC,* No. 22 Civ. 6056 (JMF), 2023 WL 22618, at *7 (S.D.N.Y. Jan. 3,
2023); *compare Bissonnette,* 49 F.4th at 664 (Jacobs, J., concurring) (noting circuit split on this
issue and opining that "the FAA mandates a stay whether or not a party requests one"), *with id.*
at 674 (Pooler, J., dissenting) (opining that when no party requests a stay, "a district court retains
the authority to dismiss the action").  But "there is no question . . . that the Court has discretion
to impose a stay pursuant to its 'inherent authority to manage [its] docket[].'"  *Monk,* 2023 WL
22618, at *7 (quoting *Katz,* 794 F.3d at 346).

either.[14]  The issue presented is, therefore, whether the Court should permit Yost's claims against the affiliate defendants to move forward in litigation while her claims against the Everyrealm defendants proceed in arbitration, or to stay the litigation pending the outcome of the arbitration. Yost has not asked for a stay of any duration as to these claims.  The affiliate defendants ask the Court to resolve their motions to dismiss and thereafter order a stay.

The Court here exercises its discretion to stay, effective immediately, litigation as to Yost's claims against the affiliate defendants, through to the conclusion of the forthcoming arbitration of Yost's parallel claims against the Everyrealm defendants.  Such a stay will conserve resources, insofar as developments in, and the outcome of, the arbitration will have obvious potential to moot, narrow, or inspire the settlement of claims in this litigation.[15]

---

[14] That the affiliate defendants were not signatories to these agreements would not have barred them from moving to compel.  "[A] non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed and the issues that had arisen among them" clarifies that "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Ragone*, 595 F.3d at 127 (internal alterations and quotation marks omitted).  Here, the claims against the affiliate defendants are "undeniably intertwined" with—if not fully derivative of—Yost's claims against the Everyrealm defendants. *Cf. JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) ("[T]he party attempting to resist arbitration was estopped from doing so because it had treated arguably non-signatory companies and their signatory assignees as a single unit in its complaint in a related lawsuit." (citation and internal quotation marks omitted)).

[15] The arbitration has the potential to give rise to issue preclusion. *See, e.g.*, *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017) ("It is settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration"; "[a]n arbitration decision may effect issue preclusion in later litigation . . . if the proponent can show with clarity and certainty that the same issues were resolved" in the arbitration. (internal quotation marks and alterations omitted)); *cf. Legal Recovery Assocs. LLC v. Brenes L. Grp., P.C.*, No. 22 Civ. 1778 (ER) (BCM), 2023 WL 1382134, at *6 (S.D.N.Y. Jan. 31, 2023) (noting that, although premature to decide because arbitration was pending, collateral estoppel principles would prevent counterclaim plaintiffs from pursuing identical claims against affiliate entities); *N.Y. Bay Cap., LLC v. Cobalt Holdings, Inc.*, 456 F. Supp. 3d 564, 574 (S.D.N.Y. 2020) (enjoining arbitration where substantial overlap between it and federal litigation, and "the Court

Moreover, allowing litigation over the claims against the affiliate defendants to move forward,

even if just through the resolution of motions to dismiss, would invariably implicate issues

common to the claims against the Everyrealm defendants and affect those defendants' interests.

As such, litigation of the claims against the affiliate defendants may effectively force the

Everyrealm defendants to participate in this litigation, overtly or behind the scenes.  For

example, such defendants may feel impelled to be heard on motions to dismiss that implicate

issues of relevance to all defendants.  Such would be in derogation of the presumed goal of the

parties to the arbitration agreements to avoid being drawn into needless litigation.  *See, e.g.*,

*Frimpong v. Everyrealm, Inc., et al.*, No. 22 Civ. 10487 (GWG) (RWL) (S.D.N.Y. Mar. 21,

2023) (Dkt. 45) (staying entire action pending arbitration proceeding involving claims against

subset of defendants); *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 110–11 (S.D.N.Y. 2017)

(staying entire case, even as to non-arbitrable claims, because of "significant factual overlap

between" claims against defendants who were, and defendants who were not, proceeding in

arbitration); *Winter Invs., LLC v. Panzer*, No. 14 Civ. 6852 (KPF), 2015 WL 5052563, at *12

(S.D.N.Y. Aug. 27, 2015) (staying entire case, including as to non-signatories, where claims

decided in arbitration "overlap significantly (if not entirely) with issues that th[e] [c]ourt would

---

might be expected to give preclusive effect to the arbitrator's findings").  The arbitral decision
also has potential to carry weight on a summary judgment motion. *See, e.g., Alexander v.
Gardner-Denver Co.*, 415 U.S. 36, 60 & n.21 (1974) (arbitral decision may be admitted as
evidence at summary judgment and accorded such weight as court deems appropriate, and may
be given "great weight" where arbitral determination gave full consideration to parties' rights);
*Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002) (citing arbitral award under
collective bargaining agreement as "highly probative of the absence of discriminatory intent" in
evaluating Title VII claim); *Necci v. Long Island R.R. Co.*, No. 16 Civ. 3250 (JS) (ARL), 2019
WL 1298523, at *14 (E.D.N.Y. Mar. 21, 2019) (arbitral body's decision attenuated causal
connection between protected activity and defendants' decision to discipline plaintiff); *see also
Morel v. Am. Bldg. Maint. Co.*, 124 F. App'x 671, 672 (2d Cir. 2005) (arbitral award not
preclusive, but under *Collins* could be highly probative of absence of discriminatory intent;
remanding for consideration in first instance).

need to reach to adjudicate Non-Signatory Claims"); *Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 489 (S.D.N.Y. 2011) (staying case in its entirety, including as to non-arbitrable issues, because "[a] stay is usually appropriate where arbitrable and non-arbitrable claims arise out of the same set of facts and arbitration may decide the same facts at issue in the litigation"); *cf. Camferdam v. Ernst & Young Int'l, Inc.*, No. 02 Civ. 10100 (BSJ), 2004 WL 307292, at *7 (S.D.N.Y Feb. 13, 2004) (noting possible estoppel consequences of ongoing litigation, and compelling arbitration of plaintiffs' claims against non-signatories to arbitration agreement because "[i]f this Court were to force the [non-signatory defendants] to engage in litigation on the very same issues that will be arbitrated by the Plaintiffs and the [signatory defendants], the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted" (internal quotation marks omitted)).

The Court therefore grants the Everyrealm defendants' motion to compel arbitration, but denies the motion of those defendants to dismiss, rather than to stay, Yost's claims. The Court also denies the affiliate defendants' motions to dismiss, without prejudice to their right to renew such motions, or to make similar ones, after the arbitration is completed and the stay has lifted.

## CONCLUSION

For the foregoing reasons, the Court grants the Everyrealm defendants' motion to compel arbitration at docket 10 and stays this action in its entirety. The Court denies all other pending

motions, without prejudice, including all defendants' motions.  The Court respectfully directs the

Clerk of the Court to terminate all pending motions and stay this case.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: April 10, 2023
       New York, New York

.